1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  ROBERT L. MUKAI
   Senior Assistant Attorney General
3  SARA J. DRAKE
   Supervising Deputy Attorney General
4  RANDALL A. PINAL
   Deputy Attorney General
5  PETER H. KAUFMAN, State Bar No. 52038
   Deputy Attorney General
6    110 West A Street, Suite 1100
     San Diego, CA 92101
7    P.O. Box 85266
     San Diego, CA 92186-5266
8    Telephone: (619) 645-2020
     Fax: (619) 645-2012
9    Email: peter.kaufman@doj.ca.gov

10 Attorneys for Defendant the California Gambling
   Control Commission

11

12              IN THE UNITED STATES DISTRICT COURT

13           FOR THE SOUTHERN DISTRICT OF CALIFORNIA

14

| | |
|---|---|
| 15  **CALIFORNIA VALLEY MIWOK TRIBE,** | No. 08-CV-0120 BEN AJB |
| 16                              Plaintiff, | **DEFENDANT CALIFORNIA GAMBLING CONTROL COMMISSION'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF, BREACH OF COMPACT AND FIDUCIARY DUTY AND INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE OR STAY PROCEEDINGS** |
| 17         v. | |
| 18  **THE CALIFORNIA GAMBLING CONTROL COMMISSION; and DOES 1 THROUGH 50, Inclusive,** | |
| 19 | |
| 20                              Defendants. | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | Date:    March 10, 2008 |
| 26 | Time:    10:30 a.m.<br>Courtroom: 3 |
| 27 | Judge: The Hon. Roger T. Benitez |
| 28 | |

# I.

## INTRODUCTION

The California Valley Miwok Tribe (formerly known as the Sheep Ranch Rancheria of Me-Wuk Indians of California) ("Miwok") is listed in the Federal Register as a federally-recognized tribe.  (72 Fed. Reg. 13648; Compl. ¶ 1.)  The complaint in this case alleges that an individual by the name of "Silva (sp) Burley" ("Burley") is recognized by the federal government as a Miwok "person of authority" and that because of this status, Burley is authorized to act for and receive money on behalf of the Miwok.  (Compl., ¶¶ 24, 36.)  As a result, the complaint seeks an order compelling defendant California Gambling Control Commission ("Commission") to pay to Burley certain monies it asserts are due and owing the Miwok on the basis of the tribe's status as a third-party beneficiary under the terms of sixty-one essentially identical tribal-state class III gaming compacts entered into between sixty-one federally-recognized tribes and the State of California ("Compacts") pursuant to the provisions of the Indian Gaming Regulatory Act, 25 U.S.C. § 2701 et seq. ("IGRA").  It also seeks compensatory damages from the Commission as a result of the alleged failure to provide the money it asserts is due under the Compacts.  (Compl. at 12.)

Under the terms of the Compacts, a California federally-recognized tribe that does not operate slot machines or operates less than 350 slot machines is designated as a "Non-Compact Tribe" and is entitled to receive a disbursement of up to $1.1 million each year from a fund entitled the Revenue Sharing Trust Fund ("RSTF").   All sixty-one tribal signatories to the Compacts contribute a portion of their gaming revenues into that fund.  If the RSTF should lack sufficient monies to pay $1.1 million to eligible tribes, California law provides that monies from another fund, the Special Distribution Fund ("SDF"), may be utilized for the purpose of making up any deficiency.  The SDF is funded by sixteen of the sixty-one signatory tribes and by statue is designed primarily to provide monies to fund programs that mitigate the off-reservation impacts of tribal gaming.  The Compacts designate the Commission as the trustee of the RSTF with the duty to distribute the RSTF to the Non-Compact Tribes through their authorized officials or agencies.

**SUMMARY OF ARGUMENT**

This action should be dismissed without leave to amend for the following reasons:

First, the United States Department of the Interior, Bureau of Indian Affairs ("federal government" or "United States") recognizes no individual or entity authorized to act on behalf of the Miwok. Thus, there is no one with standing to sue for the right to collect any monies that might be due and owing the Miwok. In this regard, the complaint alleges that a leadership dispute exists within the Miwok. (Compl., ¶¶ 9, 13) It also asserts that the federal government has declared the Miwok to be unorganized (*Id.* ¶ 12) - that the Miwok are without a government, a constitution or a federally-acknowledged membership. Indeed, it is a judicially noticeable fact that the federal government, in furtherance of its trust responsibilities to Indians, does not recognize any Miwok governing body and that its official position is that no individual, including Burley, can act in the name of or on behalf of the Miwok. (See, Ex. 1 to Commission Req. For Judicial Not., filed concurrently herewith.) As noted by the court in *California Valley Miwok Tribe v. United States,* 424 F. Supp. 2d 197 (D.C.D.C. 2006), in upholding the federal government's refusal, over Burley's objection, to approve a Miwok constitution, the federal government's trust responsibility to Indians precludes its recognition of a tribal government it has determined to be unrepresentative of the Miwok.

Second, even if Burley were entitled to proceed with this case despite her dispute with the federal government over her authority to represent the Miwok, this suit cannot proceed without joinder of the United States. This Court lacks jurisdiction either to overturn the federal government's determination that Burley is not authorized to represent the Miwok, or to independently determine who is authorized to represent the Miwok in the absence of the United States. The federal government is plainly necessary and indispensable to any judicial order involving or affecting the validity of its decision on the status of the Miwok and who might be authorized to represent that group. The validity of the United States' determination regarding Burley's status, however, has been upheld in *California Valley Miwok Tribe v. United States, supra,* 424 F. Supp. 2d 197, and is now pending on appeal (Compl., ¶ 17). Thus, this suit should either be dismissed because Burley presently has no standing to sue on behalf of the Miwok, or

1    stayed pending resolution of Burley's appeal of the district court's decision.

2         Third, this Court lacks jurisdiction because Burley has failed to join the other parties to the

3    "leadership dispute" the complaint asserts exists within the Miwok, as well as the "other putative

4    members" of the Miwok described in the complaint.  These individuals are necessary parties

5    because of their direct interest in the outcome of this proceeding, given that an order forcing the

6    Commission to pay monies to Burley could deprive those individuals of money to which they

7    might otherwise might be entitled.  Alternatively, they are necessary parties because an order

8    granting Burley's requested relief could lead to a multiplicity of suits against the Commission

9    and the possibility of inconsistent judgments.  For example, these individuals could claim that

10   they were the authorized representatives of the Tribe and seek money from the Commission on

11   the same basis Burley has.

12        Fourth, even if Burley were entitled to file suit on behalf of the Miwok, she lacks standing

13   and cannot state a claim upon which relief may be granted because the Compacts specifically

14   provide that no third-party beneficiary, such as the suit asserts the Miwok is, may seek to enforce

15   the terms of the Compacts.

16        Fifth, though the State of California, in California Government Code section 98005, has

17   waived its Eleventh Amendment immunity for suits for breach of compact, it has not waived its

18   immunity to any suit that is not authorized by a compact.  As a consequence, because the

19   Compacts preclude suits by third-party beneficiaries, Burley's suit is barred by both the

20   Compacts and California's Eleventh Amendment immunity.

21        Sixth, to the extent the suit seeks compensatory damages rather than money due and owing

22   under the Compacts, it is barred by the express terms of the Compacts and by the Eleventh

23   Amendment because the Compacts reserve the parties' immunity from suits for damages.

24                                   **RELEVANT FACTS**

25        The following facts are either alleged in the Complaint or are subject to judicial notice.

26   **A.  History of the Compacts**

27        In September 1999, pursuant to IGRA's compacting requirements (25 U.S.C. § 2710(d)(3)),

28   the State and three tribal negotiating groups reached a final agreement upon the terms of class III

No.  08-CV-0120 BEN AJB

3

gaming compacts.  Cal. Gov. Code, § 12012.25.  On September 10, 1999, the State executed the Compacts with 57 tribes. 65 Fed.Reg. 31189 (May 16, 2000).  Subsequently, four additional tribes executed the Compacts with the State.   65 Fed.Reg. 41721 (July 6, 2000); 65 Fed. Reg. 62749-02 (Oct. 19, 2000).   Under the terms of the Compacts, their effectiveness was conditioned upon the completion of three events: State legislative ratification; United States Secretary of the Interior approval; and passage of Constitutional Amendment 11 ("Proposition 1A"), which amended article IV, section 19, of the California Constitution to permit limited forms of class III gaming by Indian tribes, on Indian lands.  (Compl., Ex. A, § 11.1.)  These conditions were all met, and the Compacts became effective on May 16, 2000.  Notice of Approved Tribal-State Compacts, 65 Fed.Reg. 31,189 (May 16, 2000).

**B.    The Compacts' Revenue Sharing Trust Fund Provisions**

The preamble to the Compacts recites that the "State has an interest in promoting the purposes of IGRA for all federally-recognized Indian tribes in California, whether gaming or Non-Compact." (Compl., Ex. A, Preamble, § F.)  The RSTF was established in furtherance of this interest, as a means of redistributing the wealth accumulated from tribal gaming among all federally recognized tribes–including those that are not in a position to conduct gaming operations of their own.  *In re Indian Gaming Related Cases,* 331 F.3d 1094, 1105 (9th Cir. 2003) *("Coyote Valley")*.  The general intent of section 4.3.2.2 of the Compacts, is to have Compact Tribes fund the RSTF by purchasing "licenses" to acquire and maintain gaming devices.  *Coyote Valley*, *supra*, 331 F.3d at 1105.  The Compacts provide that "Non-Compact Tribes shall be deemed third party beneficiaries of this and other compacts identical in all material respects" (Compl., Ex. A, § 4.3.2, (a)(i)), and establishes that Non-Compact Tribes are to receive $1.1 Million annually, provided funds are available within the RSTF.  While it is clear that Non-Compact Tribes are the appropriate recipients of distributions from the RSTF, the Compacts expressly preclude third parties from bringing legal action to enforce the terms of the Compacts:

1
2
3

Third Party Beneficiaries.  Except to the extent expressly provided under this Gaming Compact, this Gaming Compact is not intended to, and shall not be construed to, create any right on the part of a third party to bring an action to enforce any of its terms.

4    (Compl., Ex. A, § 15.1.)  Moreover, the waivers of sovereign immunity contained in the

5    Compacts are limited to civil actions between the State and the signatory tribe not involving

6    monetary damages, "provided that nothing herein shall be construed to constitute a waiver of the

7    sovereign immunity of either the Tribe or the State in respect to any such third party."  (Compl.,

8    Ex. A, § 9.4, (a)(3), (b).)

9    **C.  Miwok Status**

10        On June 25, 1999, the federal government recognized Burley as tribal chairperson of the

11    Miwok.  *California Valley Miwok v. United States, supra,* 424 F. Supp. 2d at 198.  Late in 1999,

12    a leadership dispute developed within the Miwok.  *Id.* at 199.  During this dispute, in March

13    2000, Burley submitted a proposed constitution to the federal government and requested a

14    Secretarial election so that the Miwok could become an organized tribe.  *Id.*  On June 7, 2001,

15    because the federal government had not held the requested election, Burley withdrew the

16    proposed constitution.  *Id.*  In September 2001, Burley submitted a new proposed constitution to

17    the United States which the federal government did not approve.  *Id.*  In November 2003, the

18    United States did acknowledge, however, the existence of a government-to-government

19    relationship with an "interim" tribal council chaired by Burley.  *Id.* at 200.  On March 26, 2004,

20    the United States advised Burley that the Miwok was considered an unorganized tribe and that

21    no governing documents would be approved until such time as the Miwok membership base and

22    membership criteria were identified.  *Id.*  On February 25, 2005, the federal government stated

23    that it had rejected the Burley's proposed constitution, that it did not recognize Burley as the

24    Miwok chairperson, and that no one would be recognized as the Miwok chairperson until the

25    Miwok had been organized.  *Id.*  The United States did, however, recognize Burley as a "person

26    of authority" within the Miwok.  *Id.*  In March 2005, the federal government convened a series

27    of meetings designed to facilitate the organization of the Miwok.  *Id.*  At those meetings

28    concerns were raised over Burley's use of federal government contract funds designated for

1    tribal organization as well as her use of RSTF monies that the Commission had distributed to

2    Burley on the Miwok's behalf. *Id.* Subsequent to those meetings and the concerns raised, on

3    July 19, 2005, the United States suspended the contract providing organizational funds to Burley.

4    *Id.* at 201. On October 26, 2005, the federal government informed Burley that there was no

5    government-to-government relationship between the United States and the Miwok. *Id.* That

6    position was re-affirmed on December 4, 2005. *Id.* On December 14, 2007, the United States

7    rejected an application by Burley for a contract to provide funds for tribal organization on the

8    basis that the Miwok were unorganized and without a governing body. (Ex. 2 to Commission

9    Req. for Jud. Not.) On December 19, 2007, the Pacific Regional Director of the Bureau of

10   Indian Affairs filed a brief in an administrative proceeding before the Interior Board of Indian

11   Appeals stating the Bureau "no longer contracts with Silvia Burley as a person of authority on

12   behalf of the Tribe [and that] Burley lacks authority to act on the Tribe's behalf." *Id.*

13        **D.   Commission Actions Regarding the Miwok**

14        Because the Miwok had been placed on the federal government's list of federally-

15   recognized tribes and because the federal government had recognized Burley first as the

16   chairperson of that tribe and then a "person of authority" within the Miwok authorized to act on

17   behalf of the Miwok, the Commission not only made quarterly distributions of RSTF funds to

18   Burley, it also defended that determination against a suit seeking to prohibit the payment of

19   RSTF funds to Burley by an individual claiming to be the rightful chairperson of the Miwok.

20   (Ex. 3 to  Commission Req. for Judicial Not., Commission Memo. of P. & A. In Supp. of Opp. to

21   TRO, at 3.)   When, however, the federal government stopped providing funds to Burley, the

22   Commission, on August 4, 2005, informed Burley that it would no longer issue RSTF funds to

23   her on behalf of the Miwok. *California Valley Miwok v. United States, supra,* 424 F.Supp. 2d at

24   201.  The Commission based its action on its understanding that the federal government no

25   longer considered Burley to be authorized to act on behalf of or receive funds for the Miwok.

26   Subsequent actions by the federal government on October 26, 2005, and December 5, 2005,

27   stating that there was no longer a government-to-government relationship between the United

28   States and the Miwok confirmed the Commission's understanding. On December 5, 2005, the

1    Commission filed an interpleader action in the Superior Court for the State of California for the

2    County of Sacramento seeking an order determining to whom it should distribute RSTF funds on

3    behalf of the Miwok.  *California Valley Miwok v. United States, supra,* 424 F. Supp. 2d at 201.

4    When that action was dismissed on the basis of the Court's lack of subject matter jurisdiction,

5    the Commission began depositing the Miwok RSTF funds into a separate interest bearing

6    account pending the federal government's resolution of the questions surrounding the Miwok's

7    status and the identity of its membership, government and leadership.

8                                                    **ARGUMENT**

9                                                          **I.**

10   **BECAUSE THE UNITED STATES RECOGNIZES NO MIWOK CONSTITUTION,**
     **GOVERNMENT, MEMBERSHIP OR CHAIRPERSON, NO ONE, INCLUDING**
11   **BURLEY, HAS THE CAPACITY TO FILE SUIT ON BEHALF OF THE MIWOK**

12         The federal government's position is that it has no government-to-government relationship

13   with the Miwok because it recognizes no Miwok membership, constitution, or officers.

14   *California Valley Miwok v. United States, supra,* 424 F. Supp. 2d at 201.  It has also stated that

15   Burley has no authority to act on behalf of the Miwok.  (Commission Req. for Judicial Not., Ex.

16   2.)  It is well established that a government that is not recognized by the United States has no

17   capacity to sue in the courts of this country.  *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-*

18   *Gestione,* 937 F.2d 44, 48 (2nd Cir.1991) (unrecognized regimes are generally precluded from

19   appearing as plaintiffs in an official capacity without the Executive Branch's consent); *Banco*

20   *Nacional de Cuba v. Sabbatino,* 376 U.S. 398, 410-11 (1964).  As the United States Supreme

21   Court put it in *Sabbatino*, non-recognition "signifies this country's unwillingness to

22   acknowledge that the government in question speaks as the sovereign authority for the territory it

23   purports to control."  *Id.* at 410.[1/]  In this case, the federal government has stated its

24   unwillingness to have a government-to-government relationship with the Miwok because the

25   _____

26         1.  This rule does not, of course, preclude a group from asserting in federal court that it
     should be a federally-recognized tribe or should be restored to that status.  *Miami Nation of Indians*
27   *of Indiana, Inc. v. U.S. Dept. of the Interior,* 255 F.3d 342 (7th Cir. 2001).  It does, however,
     preclude a group from filing suit in federal court on the basis of that status before it has, in fact, been
28   recognized as such by the federal government.

                                                                              No.  08-CV-0120 BEN AJB

1   Burley "government" does not represent the putative Miwok membership. *California Valley*

2   *Miwok v. United States, supra,* 424 F. Supp. 2d at 201.  Moreover, because the Miwok's

3   entitlement to RSTF funds is premised on federal recognition, it follows that the Commission is

4   not required to distribute RSTF monies to a Miwok government the United States does not

5   recognize.

6                                            **II.**

7   **THIS COURT LACKS JURISDICTION TO DETERMINE A TRIBE'S STATUS IN**
    **THE FEDERAL GOVERNMENT'S ABSENCE AND BECAUSE THE ISSUE OF**
8   **BURLEY'S CAPACITY TO FILE SUIT ON BEHALF OF THE MIWOK IS**
    **ALREADY IN LITIGATION, THIS COURT SHOULD EITHER DISMISS OR**
9   **STAY THIS SUIT**

10          Although Burley may be entitled to challenge the federal government's refusal to

11  recognize her government, her status as Miwok chairperson, and her authority to act on behalf of

12  the Miwok, she cannot do so, without joining the federal government as a party because the

13  United States is plainly a necessary and indispensable party to the resolution of those questions.

14  Tribal status and recognition are within the exclusive purview of the executive branch (*Miami*

15  *Nation of Indians of Indiana, Inc. v. U.S. Dept. of the Interior, supra,* 255 F.3d at 346) and

16  judicial authority to render decisions on tribal status and recognition can only be brought in the

17  context of prior federal action and only where the federal government's action can be said to

18  have failed to have met legal criteria that a court has the capacity to apply in making a reasoned

19  judicial decision.  (*Miami Nation of Indians of Indiana, Inc. v. U.S. Dept. of the Interior, supra,*

20  255 F.3d at 348-49.)

21          Burley, however, as conceded in the complaint (Compl., ¶ 17), is presently in litigation

22  with the federal government over her authority to represent the Miwok.  In *California Valley*

23  *Miwok v. United States, supra,* 424 F. Supp. 2d 197, the district court upheld the federal

24  government's determination that Burley and her government did not represent the Miwok and

25  that ruling is now on appeal.  (Compl., ¶17.)

26          A decision in that case will have res judicata effect on issues regarding the status of

27  Burley's government and her capacity to represent the Miwok because res judicata bars re-

28  litigation in a subsequent proceeding of all issues that were raised or that could have been raised

1    in a prior proceeding between the parties. *Troutt v. Colorado Western Ins. Co.*, 246 F.3d 1150,

2    1156 (9th Cir. 2001). As a result, pursuant to its inherent power to control the disposition of

3    causes before it, the Court should either dismiss this case because Burley and her government do

4    not presently possess the federal recognition essential to her capacity to file suit on behalf of the

5    Miwok, or stay these proceedings until there is a final judgment in that proceeding. Such a result

6    would serve the interests of judicial economy by saving the time and effort of the Court, counsel,

7    and the parties. *Landis v. North American Co.*, 299 U.S. 248, 254 (1936).

8                                            **III.**

9    **NEITHER STATE LAW NOR THE COMPACTS PERMIT A NON-PARTY
     TO ENFORCE THE TERMS OF THE COMPACTS**

10

11    Even if Burley had the capacity to file suit on behalf of the Miwok, the Miwok has no

12    standing to sue for a breach of the Compacts. The complaint asserts that state law (Cal. Gov.

13    Code §§ 12012.75 and 12012.90(d)) has created a private right of action under California's

14    Indian gaming regime and that the Compacts have made the Miwok third-party beneficiaries

15    entitled to sue the Commission for an alleged failure to distribute RSTF monies to the Miwok on

16    the basis of the Miwok's alleged status as a Non-Compact Tribe. (Compl., ¶¶ 25, 33, 39, 47.)

17    Nothing in the Compacts entitles a Non-Compact tribe or the Miwok, assuming it is one, to sue

18    the Commission to enforce any term of the Compacts. Indeed, the Compacts specifically provide

19    in section 9.4(3) and 15.1 (Compl, Ex. A, at 33, 42) that third parties including third party

20    beneficiaries, have no right to enforce any of the Compacts' terms.

21    In drafting the Compacts, therefore, the State and signatory tribes did not intend to

22    provide Non-Compact tribes with the rights that might otherwise accrue to a third-party

23    beneficiary such as the right to insist on continued performance of an agreement-even if the

24    agreement were abrogated. See, e.g. Cal. Civ. Code §§ 1559; *Principal Mutual Life Insurance*

25    *Company v. Vars, Pave, McCord & Freedman,* 65 Cal. App. 4th 1469, 1486; third party

26    beneficiary may enforce a contract for his benefit, if he has acted in reliance upon the promised

27    benefits, even if it has been terminated for reasons other than recission). As sovereigns, neither

28    the State nor the signatory tribes intended to allow a Non-Compact Tribe, as a third-party

No. 08-CV-0120 BEN AJB

9

1  beneficiary, to be able to file suit to prevent the State and signatory tribes (should they determine

2  it to be in their sovereign interests) from acting to change the RSTF or the amount of any future

3  distributions from it.

4  **A.    No Private Right of Action Exists Under State Law**

5      Nothing in California law suggests that third-party actions were intended as part of

6  California's Indian gaming regime.  Proposition 1A established broad authority in the Governor

7  to negotiate and the Legislature to ratify compacts with Indian tribes "[n]otwithstanding . . . any

8  other provision of state law," neither mandating nor limiting the subject matter of negotiations,

9  but leaving such determinations to the discretion of the Governor as ratified by the California

10 Legislature.  Thus, under California law, the State's duties and obligations vis a vis gaming are

11 established by the compacts negotiated by the Governor and ratified by the State's legislature.

12 California Government Code sections 12012.75 and 12012.90, therefore, were not enacted to

13 create State obligations, duties or responsibilities to any individual or entity beyond those set

14 forth in the Compacts, or to grant any right to an individual or entity beyond those set forth in

15 those agreements, but rather to provide funding sources and mechanisms by which the

16 Commission could carry out its existing obligations under the Compacts.

17     In this regard, section 12012.75 merely establishes the RSTF as a fund in the State

18 Treasury and permits the Commission to draw upon that fund to make distributions as required

19 by the Compacts.  It provides:

20         There is hereby created in the State Treasury a special fund called
           the "Indian Gaming Revenue Sharing Trust Fund" for the receipt
21         and deposit of moneys derived from gaming device license fees
           that are paid into the fund pursuant to the terms of tribal-state
22         gaming compacts for the purpose of making distributions to
           noncompact tribes. Moneys in the Indian Gaming Revenue Sharing
23         Trust Fund shall be available to the California Gambling Control
           Commission, upon appropriation by the Legislature, for the
24         purpose of making distributions to noncompact tribes, in
           accordance with distribution plans specified in tribal-state gaming
25         compacts.

26 Cal. Gov't Code § 12012.75.

27     Likewise, section 12012.90(d) is part of a process whereby the State legislature has

28 agreed to appropriate funds from one State treasury account (the SDF) to another State treasury

1  account  (the RSTF) for the purpose of making up any account shortfalls in the RSTF.

2  California Government Code section 12012.90(d) merely instructs the Commission to make

3  distributions to eligible tribes upon the deposit of the SDF monies into the RSTF when it

4  provides:

5

6  > Upon a transfer of moneys from the Indian Gaming Special
   > Distribution Fund to the Indian Gaming Revenue Sharing Trust
   > Fund and appropriation from the trust fund, the California

7  > Gambling Control Commission shall distribute the moneys without
   > delay to eligible recipient Indian tribes for each quarter that a tribe

8  > was eligible to receive a distribution during the fiscal year
   > immediately preceding.

9

10  Tribal eligibility, however, is a function of a tribe's rights under the Compacts and nothing in

11  these Government Code sections creates any greater right to enforce the terms of the Compacts

12  than are set forth in the Compacts themselves.

13  **B.     The Compacts Specifically Preclude Suits by Third-Party Beneficiaries To
          Enforce Any Terms of the Compacts**

14

15  It is true the Compacts deem Non-Compact Tribes "third party beneficiaries" in section

16  4.3.2(a) (Compl., Ex. A, at 7).  It is also correct that the Compacts, in section 4.3.2.1(a), provide

17  that all signatory tribes agree that each Non-Compact Tribe shall receive up to $1.1 million per

18  year from the RSTF.  Likewise, there is no dispute that the Compacts, in section 4.3.2.1(b),

19  declare that the Commission shall serve as the trustee of the RSTF and disburse funds from the

20  RSTF to Non-Compact Tribes (Compl., Ex. A, at 7-8).  The Compacts, however, also expressly

21  preclude actions by third-party beneficiaries to enforce any provisions of the Compact.  Section

22  9.4 of the Compacts provides a limited waiver of sovereign immunity by the signatory tribes and

23  the State for the purpose of allowing suit by the State or the tribe to enforce the Compacts'

24  dispute resolution provisions.  (*Id.* at 33.)  This waiver is generally conditioned upon the notion

25  that "[n]o person or entity other than the Tribe and the State is party to [such] action." (*Id.*)

26  Compact section 15.1 makes matters even more clear.  It states that:

27  > Except to the extent expressly provided under this Gaming
   > Compact, this Gaming Compact is not intended to, and shall not be

28  > construed to, create any right on the part of a third party to bring
   > an action to enforce any of its terms.

1    (*Id.* at 44.)  No other provision of the Compacts expressly creates a right on the part of a third

2    party beneficiary to sue either the Commission or the signatory tribes for any breach of the

3    Compacts.

4         It is certainly true that under California Civil Code section 1559: "a contract, made

5    expressly for the benefit of a third person, may be enforced by him at any time before the parties

6    thereto rescind it."  It is also true, however, that an individual or entity's status as a third party

7    beneficiary is completely dependent upon the intent of the parties in privity with one another as

8    well as with the entirety of the circumstances surrounding formation of the contract at issue.

9    *Martinez v. Socoma Companies, Inc.*, 11 Cal.3d 394, 401-02 (1974).  As the court held in

10   *Marina Tenants Assn. v. Deauville Marina Development,* 181 Cal. App.3d 122, 129 (1986), in

11   relying upon the holding in *Martinez, supra,* "standing to sue as a third-party beneficiary to a

12   government contract depends on the intent of the parties as manifested by the terms of the

13   contract, and the circumstances surrounding the formation of the agreement."  *Marina Tenants*

14   *Assn. v. Deauville Marina Development*, *supra,* 181 Cal. App.3d at 129.

15        In *Martinez,* the California Supreme Court construed a government contract intended to

16   benefit certain individuals as part of a government program.  The program was to be

17   administered by a private party.  The private party failed to carry out its obligations under the

18   contract and the intended beneficiaries filed suit to enforce the agreement.  The court found,

19   however, that

20           The present contracts manifest no intent that the defendants pay
             damages to compensate plaintiffs or other members of the public
21           for their nonperformance. To the contrary, the contracts' provisions
             for retaining the Government's control over determination of
22           contractual disputes and for limiting defendants' financial risks
             indicate a governmental purpose to exclude the direct rights
23           against defendants claimed here.

24   *Martinez v. Socoma Companies, Inc.*, *supra*, 11 Cal.3d at 402.  Thus, even though the plaintiffs

25   in that case were the intended beneficiaries of the contract, the court found plaintiffs had no

26   standing to sue because the contract did not provide for suit against the party that was obligated,

27   under that agreement, to provide benefits to the plaintiff.  Such a result is consistent with the

28   Restatement (Second) of Contracts § 304(b) which provides that:

1
2
3

> The parties to a contract have the power, if they so intend, to create a right in a third person.  The requirements for formation of a contract must of course be met, and the right of the beneficiary, like that of the promisee, may be conditional, voidable, or *unenforceable*.

4  (Emphasis added.)

5      In this case, the signatory tribes and the State determined not to provide third-party

6  beneficiary Non-Compact Tribes with a right to judicially enforce the terms of the Compacts.

7  Thus, the Miwok has no standing to sue the Commission for a breach of the Compacts.  As

8  contracts between sovereigns, the State and the signatory tribes while desirous of providing

9  economic assistance to Non-Compact Tribes were, nonetheless, no doubt wary of granting the

10  Non-Compact Tribes the ability to judicially compel State or tribal action.  For example, in some

11  cases under California law, a third party beneficiary that has acted in reliance upon benefits

12  conferred by a contract may enforce that contract even if it has been terminated for reasons other

13  than recission. *Principal Mutual Life Insurance Company v. Vars, Pave, McCord & Freedman,*

14  *supra,* 65 Cal. App. 4th at 1486.  If that rule were applied to the Compacts, the State and

15  signatory tribes could be subject to an action seeking to preclude new compacts between them

16  that might alter the benefits presently available to Non-Compact Tribes.  Such an impact on the

17  State and signatory tribes' police power authority to execute agreements between them, even if

18  highly unlikely under other principles of law, would plainly justify the elimination of any such

19  risk through the insertion of a provision such as section 15.1 of the Compacts, which precludes

20  third-party beneficiary enforcement of any terms of the Compacts.

21                                          **IV.**

22  **THE COURT LACKS JURISDICTION TO CONSIDER THIS COMPLAINT**
23  **BECAUSE THE OTHER PARTIES TO THE MIWOK LEADERSHIP DISPUTE ARE NECESSARY PARTIES THAT HAVE NOT BEEN JOINED**

24      Under Rule 19(a) of the Federal Rules of Civil Procedure, a party is necessary if:

25
26
27
28

> (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject

1    to a substantial risk of incurring double, multiple or otherwise
     inconsistent obligations by reason of the claimed interest.

2

3  Fed.R.Civ.Proc. 19(a).

4          In this case, the complaint alleges that there is a leadership dispute within the Miwok and

5  that other parties claim a right to represent the Miwok and, hence claim a right to distributions

6  from the RSTF.  (Compl., ¶¶ 7, 50.)  As a result, these individuals definitely have an interest in

7  the subject matter of this action.  Second, the disposition of this action unquestionably impairs

8  those individuals' ability to protect that interest.  If Burley were to prevail in this suit and obtain

9  the monies held for the Miwok by the Commission, those funds could be lost to them.  Third, the

10  Commission cannot protect the individuals' interest because it has taken the position that the

11  Miwok is not entitled to file suit to compel distribution of RSTF funds.  Finally, the failure to

12  join these individuals in this action could subject the Commission to multiple or inconsistent

13  obligations.  For example, these individuals could claim that they were the authorized

14  representatives of the Miwok and seek money from the Commission on the same basis Burley

15  has.  The Commission would then be faced with both tribal factions seeking payment to them of

16  more than $3 million.

17          From the decision in *California Valley Miwok v. United States, supra,* 424 F. Supp. 2d at

18  200, it appears that an individual by the name of Yakima Dixie should be joined in this action as

19  he has claimed leadership of the Miwok.  Indeed, Mr. Dixie has previously filed suit against the

20  Commission over RSTF distributions.  (Ex. 1 to Commission Req. for Jud. Not.)   Moreover, the

21  complaint alleges that certain DOE defendants have also claimed leadership of the Miwok.  The

22  Commission is informed and believes that Burley is presently aware of the names of those

23  individuals and should be compelled to identify them and join them in this action.

24                                    **V.**

25  **PLAINTIFF'S CLAIM FOR COMPENSATORY DAMAGES IS BARRED BY
    THE STATE'S ELEVENTH AMENDMENT IMMUNITY**

26

27          In the complaint's Third Claim for Relief, Miwok alleges that it has "suffered damages,

28  including, but not limited to the loss of RSTF money and interest thereon."  (Compl., ¶ 43.)  In

1    addition, in the complaint's prayer for relief, Miwok asks for compensatory damages as a result

2    of the withholding of RSTF funds.  (Compl,. at ¶ 12.)  These claims are barred by the State's

3    sovereign immunity under the Eleventh Amendment to the United States Constitution because

4    the State has not waived its immunity from suits for damages.

5          Though the State waived its immunity from suit for a breach of the Compacts in

6    California Government Code section 98005, that waiver extends only to suits for specific

7    performance, injunctive, declaratory relief and compact interpretation.  Section 98005 provides

8    in part as follows:

9              California also submits to the jurisdiction of the courts of the
              United States in any action brought against the state by any
10             federally recognized California Indian tribe asserting any cause of
              action arising from the state's refusal to enter into negotiations
11             with that tribe for the purpose of entering into a different Tribal-
              State compact pursuant to IGRA or to conduct those negotiations
12             in good faith, the state's refusal to enter into negotiations
              concerning the amendment of a Tribal-State compact to which the
13             state is a party, or to negotiate in good faith concerning that
              amendment, or the state's violation of the terms of any Tribal-State
14             compact to which the state is or may become a party.

15         Nothing in this section specifically waives the State's sovereign immunity against suits

16    for monetary damages.  Under the rule enunciated in *Atascadero State Hosp. v. Scanlon,* 473

17    U.S. 234, 241 (1985), such a waiver can only be found where it has been stated by the most

18    express language or by such overwhelming implication from the text as will leave no room for

19    any other reasonable construction.  California Government Code section 98005 was enacted

20    through Proposition 5 on the California Ballot, and was subsequently struck down by the

21    California Supreme Court in *Hotel Employees & Restaurant Employees Int'l Union v. Davis,* 21

22    Cal. 4th 585 (1999).  In that case, the court struck down all of Proposition 5 with the exception

23    of the portion of  California Government Code section 98005 quoted above.  *Id.* at 615.  The

24    purpose of this section was to make the State amenable to suits for a violation of the provisions

25    of IGRA, or for the compacts that IGRA authorizes in the aftermath of the United States

26    Supreme Court's decision in *Seminole Tribe of Florida v. Florida,*  517 U.S. 44, 55-56 (1996)

27    which struck down IGRA's abrogation of state sovereign immunity.  *Hotel Employees &*

28    *Restaurant Employees Int'l Union v. Davis*, *supra,* 21 Cal. 4th at 614-15.  Because nothing in

1   IGRA authorized a suit for damages against a state, it follows that nothing in California

2   Government Code section 98005 would authorize it either, since that section was only intended

3   to allow what the United States Supreme Court had disallowed.

4       In any event, the Compacts themselves specifically provide that the State has not waived

5   its sovereign immunity with respect to suits for damages arising under the Compacts.  Section

6   9.4(a)(2) expressly provides with respect to claims for monetary damages:

> The State and the Tribe expressly consent to be sued therein and
> waive any immunity therefrom that they may have provided
> that . . . (2) Neither side makes any claim for monetary damages
> (that is only injunctive, specific performance, including
> enforcement of a provision of this Compact requiring payment of
> money to one or another of the parties, or declaratory relief is
> sought.

11   (Compl., Ex. A, at 33.)  As a result, plaintiff's suit for compensatory damages is barred by the

12   Eleventh Amendment.

No.  08-CV-0120 BEN AJB

1

**CONCLUSION**

2          For these reasons, the Commission respectfully requests that the claims against the

3   Commission set forth in the First, Second, Third and Fourth Claims for relief be dismissed

4   without leave to amend as each of them is precluded by Burley's lack of capacity to file suit on

5   behalf of the Miwok as well as upon the Miwok's lack of standing to enforce the provisions of

6   the Compact, and the Commission's Eleventh Amendment immunity to suits not authorized by

7   the Compacts, including suits for damages.  In the alternative, the Commission requests that this

8   proceeding be stayed until such time as a final judgment is entered in *California Valley Miwok v.*

9   *United States, supra,* 424 F. Supp.2d 197.

10   Dated:  January 31, 2008

11                              Respectfully submitted,

12                              EDMUND G. BROWN JR.
                               Attorney General of the State of California

13                              ROBERT L. MUKAI
                               Senior Assistant Attorney General

14
                               SARA J. DRAKE
15                              Supervising Deputy Attorney General

16                              RANDALL A. PINAL

                               Deputy Attorney General
17

18
                               /s/Peter H. Kaufman
19                              PETER H. KAUFMAN
                               Deputy Attorney General
20                              Attorneys for Defendant California Gambling Control
                               Commission
21

22   P's and A's.wpd

23

24

25

26

27

28

                                                      No.  08-CV-0120 BEN AJB

1

**TABLE OF CONTENTS**

2

**Page**

3

INTRODUCTION                                                                                          **1**

4

SUMMARY OF ARGUMENT                                                                      **2**

5

RELEVANT FACTS                                                                                    **3**

6

     **A.  History of the Compacts**                                                       **3**

7

     **B.  The Compacts' Revenue Sharing Trust Fund Provisions**        **4**

8

     **C.  Miwok Status**                                                                        **5**

9

     **D.  Commission Actions Regarding the Miwok**                              **6**

10

ARGUMENT                                                                                               **7**

11
12
13

     **I.    BECAUSE THE UNITED STATES RECOGNIZES NO MIWOK CONSTITUTION, GOVERNMENT, MEMBERSHIP OR CHAIRPERSON, NO ONE, INCLUDING BURLEY, HAS THE CAPACITY TO FILE SUIT ON BEHALF OF THE MIWOK**                                                                               **7**

14
15
16
17

     **II.   THIS COURT LACKS JURISDICTION TO DETERMINE A TRIBE'S STATUS IN THE FEDERAL GOVERNMENT'S ABSENCE AND BECAUSE THE ISSUE OF BURLEY'S CAPACITY TO FILE SUIT ON BEHALF OF THE MIWOK IS ALREADY IN LITIGATION, THIS COURT SHOULD EITHER DISMISS OR STAY THIS SUIT**                                                 **8**

18
19

     **III.  NEITHER STATE LAW NOR THE COMPACTS PERMIT A NON-PARTY TO ENFORCE THE TERMS OF THE COMPACTS**                                                                                **9**

20

          **A.  No Private Right of Action Exists Under State Law**          **10**

21

          **B.  The Compacts Specifically Preclude Suits by Third-Party Beneficiaries To Enforce Any Terms of the Compacts**

22

                                                        **11**

23
24

     **IV.  THE COURT LACKS JURISDICTION TO CONSIDER THIS COMPLAINT BECAUSE THE OTHER PARTIES TO THE MIWOK LEADERSHIP DISPUTE ARE NECESSARY PARTIES THAT HAVE NOT BEEN JOINED**                                   **13**

25
26

     **V.   PLAINTIFF'S CLAIM FOR COMPENSATORY DAMAGES IS BARRED BY THE STATE'S ELEVENTH AMENDMENT IMMUNITY**                                                                          **14**

27

CONCLUSION                                                                                          **17**

28

1

**TABLE OF AUTHORITIES**

2

**Page**

3  **Cases**

4

5  *Atascadero State Hosp. v. Scanlon*
        473 U.S. 234 (1985) .......................................................................... 15

6  *Banco Nacional de Cuba v. Sabbatino*
        376 U.S. 398 (1964) ............................................................................ 7

7

8  *California Valley Miwok Tribe v. United States*
        424 F. Supp. 2d 197 (D.C.D.C. 2006) ........................... 2, 5-8, 14, 17

9  *Hotel Employees & Restaurant Employees Int'l Union v. Davis*
        21 Cal. 4th 585 (1999) ..................................................................... 15

10

11  *In re Indian Gaming Related Cases*
        331 F.3d 1094 (9th Cir. 2003)
        ("Coyote Valley") ........................................................................... 4-6

12

13  *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione*
        937 F.2d 44 (2nd Cir.1991) ................................................................ 7

14  *Landis v. North American Co.*
        299 U.S. 248 (1936) ............................................................................ 9

15

16  *Marina Tenants Assn. v. Deauville Marina Development*
        181 Cal. App.3d 122 (1986) ............................................................ 12

17  *Martinez v. Socoma Companies, Inc.*
        11 Cal.3d  394 (1974) ...................................................................... 12

18

19  *Miami Nation of Indians of Indiana, Inc. v. U.S. Dept. of the Interior*
        255 F.3d 342 (7th Cir. 2001) .......................................................... 7, 8

20  *Principal Mutual Life Insurance Company v. Vars, Pave, McCord & Freedman*
        65 Cal. App. 4th 1469 ................................................................... 9, 13

21

22  *Seminole Tribe of Florida v. Florida*
        517 U.S. 44 (1996) ........................................................................... 15

23  *Troutt v. Colorado Western Ins. Co.*
        246 F.3d 1150 (9th Cir. 2001) ........................................................... 8

24

25

26

27

28

**Constitutional Provisions**

California Constitution
    Article IV, section 19      4

Constitutional Amendment 11
    ("Proposition 1A")      4, 10

Eleventh Amendment      3, 16, 17

**Statutes**

California Civil Code
    § 1559      9

California Government Code
    § 12012.90(d)      9-11
    § 12012.75      9, 10
    § 12012.25      4
    § 98005      3, 15, 16

25 United States Code
    § 2701 et seq. (Indian Gaming Regulatory Act)      1, 3, 4, 15, 16
    § 2710(d)(3)      3

**Court Rules**

Federal Rules of Civil Procedure
    Rule 19(a)      13, 14

**Other Authorities**

Proposition 5      15

65 Federal Register 31189 (May 16, 2000)      4

65 Federal Register 41721 (July 6, 2000)      4

65 Federal Register 62749-02 (Oct. 19, 2000)      4

65 Federal Register 31,189 (May 16, 2000)      4

72 Federal Register 13648      1

Restatement Second of Contracts
    § 304(b)      12