1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  ROBERT L. MUKAI
   Senior Assistant Attorney General
3  SARA J. DRAKE
   Supervising Deputy Attorney General
4  RANDALL PINAL
   Deputy Attorney General
5  PETER H. KAUFMAN, State Bar No. 52038
   Deputy Attorney General
6    110 West A Street, Suite 1100
     San Diego, CA 92101
7    P.O. Box 85266
     San Diego, CA 92186-5266
8    Telephone:  (619) 645-2020
     Fax:  (619) 645-2012
9    Email:  peter.kaufman@doj.ca.gov

10  Attorneys for Defendant California Gambling Control
    Commission

11

12                   IN THE UNITED STATES DISTRICT COURT

13                FOR THE SOUTHERN DISTRICT OF CALIFORNIA

14

15  | CALIFORNIA VALLEY MIWOK TRIBE, | NO. 08-CV-0120 BEN AJB |
    |---|---|
16  | Plaintiff, | **DEFENDANT CALIFORNIA GAMBLING CONTROL COMMISSION'S REQUEST FOR JUDICIAL NOTICE** |
17  | v. | |
18  | THE CALIFORNIA GAMBLING CONTROL COMMISSION; and DOES 1 THROUGH 50, Inclusive, | Hearing:  March 10, 2008 |
19  | | Time:      10:30 a.m. |
20  | Defendants. | Courtroom:  3 |
    | | Judge:  The Hon. Roger T. Benitez |
21

22          Defendant California Gambling Control Commission ("Commission") hereby

23  respectfully requests that the Court take judicial notice of the following records:

24          1. A true and correct copy of a pleading filed with the United States Department of the

25  Interior, Interior Board of Indian Appeals, in the matter of California Valley Miwok Tribe vs.

26  Pacific Regional Director, Docket No. IBIA 07-100-A, entitled APPELLEE'S SUPPLEMENT

27  TO ITS OPPOSITION TO APPELLANT'S MOTION TO ENFORCE STAY filed by the Pacific

28  Regional Director and dated December 19, 2007.  It is attached hereto and incorporated by

1  reference herein as Exhibit 1.

2      2. A true and correct copy of a letter dated December 14, 2007, from Troy Burdick,

3  Superintendent of the Central California Agency of the Bureau of Indian Affairs to Silvia Burley

4  that was attached as an exhibit to the above pleading.   It is attached hereto and incorporated by

5  reference herein as Exhibit 2.

6      3.  A true and correct copy of a memorandum of points and authorities filed on October 22,

7  2004, by the Commission in the Superior Court of the State of California for the County of

8  Sacramento in Case No. 04AS04205, entitled Yakima Dixie v. State of California, California

9  Gambling Control Commission.  It is attached hereto and incorporated by reference herein as

10 Exhibit 3.

11     This request is based upon Federal Rule of Evidence 201(b)(2) in that the matters set forth

12 in pleadings filed in administrative proceedings such as those before the Interior Board of Indian

13 Appeals as well as pleadings filed in a court of competent jurisdiction constitute facts that are

14 capable of accurate and ready determination by resort to sources whose accuracy cannot

15 reasonably be questioned.  See, *Jimenez v. Domino's Pizza, Inc.*,  238 F.R.D. 241 (C.D. Cal.

16 2006); contents of an administrative agency decision; *Santos v. County of Los Angeles*

17 *Department of Children and Family Services,*  299 F.Supp. 2d 1070 (C.D. Cal. 2004); records in

18 a state court case file.

19 Dated:  January 30, 2008          Respectfully submitted,

20                                   EDMUND G. BROWN JR.
                                     Attorney General of the State of California

21                                   ROBERT L. MUKAI
22                                   Senior Assistant Attorney General

                                     SARA J. DRAKE
23                                   Supervising Deputy Attorney General

24

25                                   /s/Peter H. Kaufman
                                     PETER H. KAUFMAN
26                                   Deputy Attorney General
                                     Attorneys for Defendants
27                                   California Gambling Control Commission

28

# Table of Contents

| Exhibit No. | Document | Pages |
|---|---|---|
| 1<br>5-6 | A true and correct copy of a pleading filed with the<br><br>United States Department of the Interior, Interior Board of Indian Appeals, in the matter of California Valley Miwok Tribe vs. Pacific Regional Director, Docket No. IBIA 07-100-A, entitled APPELLEE'S SUPPLEMENT TO ITS OPPOSITION TO APPELLANT'S MOTION TO ENFORCE STAY filed by the Pacific Regional Director and dated December 19, 2007. | |
| 2 | A true and correct copy of a letter dated December 14, 2007, from Troy Burdick, Superintendent of the Central California Agency of the Bureau of Indian Affairs to Silvia Burley that was attached as an exhibit to the above pleading. | 8-9 |
| 3 | A true and correct copy of a memorandum of points and authorities filed on October 22, 2004, by the Commission in the Superior Court of the State of California for the County of Sacramento in Case No. 04AS04205, entitled Yakima Dixie v. State of California, California Gambling Control Commission | 11-29 |

# EXHIBIT "1"

000004

INTERIOR BOARD OF INDIAN APPEALS

California Valley Miwok Tribe                    )
                                                 )
                    Appellant,                   )        Docket No.: IBIA 07-100-A
                                                 )
        vs.                                      )
                                                 )
Pacific Regional Director,                       )
                                                 )
                    Appellee.                    )
                                                 )

### APPELLEE'S SUPPLEMENT TO ITS OPPOSITION TO APPELLANT'S MOTION TO ENFORCE STAY

Appellee Regional Director hereby submits the attached letter in support of its Opposition to Appellants Motion to Enforce Stay. This letter makes clear that Silvia Burley cannot act in the name of the California Valley Miwok Tribe because the Bureau of Indian Affairs does not recognize that the Tribe has a governing body and no longer contracts with Silvia Burley as a person of authority on behalf of the Tribe. Because Ms. Burley lacks authority to act on the Tribe's behalf, the Board should deny her motion to enforce stay.

Submitted December 19, 2007

Jane M. Smith
Attorney Advisor

## CERTIFICATE OF SERVICE

I hereby certify that on December 18, 2007 I caused to be served on Phillip E.

Thompson and Chad Everone a copy of the Appellee's Supplement to Its Opposition to

Appellant's Motion to Enforce Stay by regular first-class mail at the following addresses:

Phillip E. Thompson, Esq.
9450 Pennsylvania Avenue, Suite 4
Upper Marlboro, MD 20772

Chad Everone
2140 Shattuch Ave., # 602
Berkley, CA 94704

Dated: December 19, 2007

Jane M. Smith
Counsel for Appellee

# EXHIBIT "2"



# United States Department of the Interior

BUREAU OF INDIAN AFFAIRS
Central California Agency
650 Capitol Mall, Suite S-500
Sacramento, CA  95814-4710

IN REPLY REFER TO

### DEC 1 4 2007

**CERTIFIED MAIL NO. 7001 2510 0009 4494 1906**
**RETURN RECEIPT REQUESTED**

Silvia Burley
10601 Escondido Place
Stockton, California  95212

Dear Ms. Burley:

In accordance with 25 CFR Part 900.6, Subpart B, Definitions, we are returning your application to contract FY 2008 funding from the Bureau of Indian Affairs, under P.L. 93-638, as amended as it does not meet the definition stated below:

> "Tribal Organization means the recognized governing body of any Indian tribe; any legally established organization of Indians which is controlled, sanctioned, or chartered by such governing body or which is democratically elected by the adult members of the Indian community to be served by such organization and which included the maximum participation of Indians in all phases of its activities: provided, that , in any case where a contract is let or a grant made to an organization to perform services benefiting more than one Indian tribe, the approval of each such Indian tribe shall be a prerequisite to the letting or making of such contract of grant."

Under this Part, consideration to contract federal funds to operate Bureau of Indian authorized programs will only be given to an application submitted by federally recognized tribe with a recognized governing body. The Department of the Interior does not recognize that the California Valley Miwok Tribe has a governing body. The District Court for the District of Columbia has upheld that determination, California Valley Miwok Tribe v. United States, 424 F Supp. 2d 197 (D.C.D.C. 2006). That decision is now on appeal.

Because we do not recognize any current governing body for the California Valley Miwok Tribe, we are unable to accept the proposal for the above stated reason. We are hereby returning the proposal.

11 17 2007 10:01 FAX 916 930 3780          BIA CENTRAL CAL AGENCY                             @005

Should you wish to appeal any portion of this letter, you are advised that you may do so by complying with the following:

This decision may be appealed to the Regional Director, Pacific Regional Office, Bureau of Indian Affairs, 2800 Cottage Way, W-2820, Sacramento, California 95825. In accordance with the regulations in 25 CFR Part 2 (copy enclosed), your notice of appeal must be filed in this office within 30 days of the date you receive this decision. The date of filing your notice of appeal is the date it is postmarked or the date it is personally delivered to this office. Your notice of appeal must include you name, address and telephone number. It should clearly identify the decision to be appealed. If possible attach a copy of the decision. The notice of appeal and the envelope which it is mailed, should be clearly labeled "NOTICE OF APPEAL." The notice of appeal must list the names and addresses of the interested parties known to you and certify that you have sent them copies of the notice.

You must also send a copy of your notice to the Regional Director, at the address given above.

If no timely appeal is filed, this decision will become final for the Department of the Interior at the expiration of the appeal period. No extension of time may be granted for filing a notice of appeal.

Sincerely,

Troy Burdick
Superintendent

Enclosure

EXHIBIT "3"

000010

1  BILL LOCKYER
   Attorney General of the State of California
2  ROBERT L. MUKAI
   Senior Assistant Attorney General
3  SARA J. DRAKE
   Supervising Deputy Attorney General
4  MARC A. LE FORESTIER, State Bar No. 178188
   Deputy Attorney General
5  1300 I Street, Suite 125
   P.O. Box 944255
6  Sacramento, CA 94244-2550
   Telephone: (916) 322-5452
7  Fax: (916) 322-5609

8  **Attorneys for Defendants State of California and
   the California Gambling Control Commission**

9

10                    SUPERIOR COURT OF CALIFORNIA

11                       COUNTY OF SACRAMENTO

12

13

14

15  YAKIMA DIXIE, an individual; and,          CASE NO. 04AS04205
    CALIFORNIA VALLEY MIWOK TRIBE fka
16  SHEEP RANCH RANCHERIA OF ME-WUK            **MEMORANDUM OF POINTS
    INDIANS OF CALIFORNIA, an unorganized tribe,   AND AUTHORITIES IN
17                                              OPPOSITION TO THE
                                    Plaintiffs,  APPLICATION FOR
18                                              TEMPORARY
         v.                                     RESTRAINING ORDER
19                                              AND/OR ORDER TO SHOW
    STATE OF CALIFORNIA, CALIFORNIA             CAUSE RE PRELIMINARY
20  GAMBLING CONTROL COMMISSION, an             INJUNCTION**
    Agency of the State of California, and DOES 1
21  through 10, inclusive,                      Date:    October 27, 2004
                                                Time:    2:00 p.m.
22                                  Defendants.  Dept:    53
                                                Judge:   The Honorable Loren E.
23                                                       McMaster
                                                Trial Date:   Not Set
24                                              Action Filed:  October 18, 2004

25

26

27

28

                                                                    000011

**INTRODUCTION**

Plaintiff Yakima Dixie ("Dixie") seeks to enjoin the defendants California Gambling Control Commission ("the Commission") and the State of California ("the State") from issuing a disbursement check to the California Valley Miwok Tribe that would be drawn on the Revenue Sharing Trust Fund ("RSTF") established by the 1999 tribal-state gaming compacts entered into between the State of California and sixty-one signatory Indian tribes. Because the defendants have no substantial interest in this litigation, or the subject funds, other than ensuring that the Commission meets its obligations under the 1999 Compacts, this response to the pending application for a temporary restraining order is limited to the identification of issues that may be of importance to this Court, and which may not be emphasized by Dixie, or by the real party in interest, the California Valley Miwok Tribe,[1] which may or may not be represented at the October 27, 2004, hearing. This memorandum will explain the Commission's role with respect to the RSTF and its current practice with respect to the distribution of funds to Indian tribes in the midst of leadership disputes.

**DISCUSSION**

In September 1999, the State of California entered into a series of tribal-state class III gaming compacts ("1999 Compacts"), the core of which provided that the State granted the tribes the exclusive right to conduct lucrative Las Vegas-style class III gaming, free from non-tribal competition in the State. (*In re Indian Gaming Related Cases (Coyote Valley)* (9th Cir. 2003) 331 F.3d 1094, 1104.) These compacts established the Revenue Sharing Trust Fund that is at the heart of this litigation.

---

1. The California Valley Miwok Tribe ("the Tribe") is named as a plaintiff in this lawsuit. However, as is discussed below, the Tribe is apparently represented by Silvia Burley, and her legal counsel, not by Dixie. Accordingly, if the Court determines that the Tribe is absent from this litigation, Code of Civil Procedure section 389 is implicated. Section 389 requires a plaintiff to join as parties to an action all whose interests are so directly involved that the court cannot render a fair adjudication in their absence. (Code Civ. Proc., § 389, subd. (a); see *Olszewski v. Scripps Health* (2003) 30 Cal.4th 798, 808-809.) If such a party cannot be joined, a court must then determine whether "in equity and good conscience," the action should proceed among the parties before it, or should be dismissed. (Code Civ. Proc., § 389, subd. (b); see also *Quileute Indian Tribe v. Babbitt* (9th Cir. 1994) 18 F.3d 1456, 1458.)

1

000012

1    The preamble to the 1999 Compacts[2] recite that the "State has an interest in promoting the

2    purposes of IGRA for all federally-recognized Indian tribes in California, whether gaming or

3    non-gaming."  In furtherance of this interest, Section 4.3.2.1 of the 1999 Compact creates the

4    RSTF, which grants a maximum of $1.1 million dollars annually to each of the State's Non-

5    Compact tribes, as defined by the 1999 Compacts.  (1999 Compact, § 4.3.2.1, subd. (a); *see also*

6    *Coyote Valley*, *supra*, 331 F.3d at 1105.)  Under Section 4.3.2.2 of the 1999 Compacts, gaming

7    tribes fund the RSTF by purchasing "licenses" on a graduated fee schedule to acquire and

8    maintain gaming devices beyond the number they are authorized to use under Section 4.3.1.

9    (*Coyote Valley*, *supra*, 331 F.3d at 1105.)

10    Under the 1999 Compacts, the Commission has a ministerial duty to distribute the corpus of

11    the RSTF to "Non-Compact Tribes,"[3] on the following terms.

12    (b) Payments made to Non-Compact Tribes shall be made quarterly and in
       equal shares out of the Revenue Sharing Trust Fund. The Commission shall
13    serve as the trustee of the fund. *The Commission shall have no discretion*
       *with respect to the use or disbursement of the trust funds. Its sole authority*
14    *shall be to serve as a depository of the trust funds and to disburse them on a*
       *quarterly basis to Non-Compact Tribes.* In no event shall the State's General
15    Fund be obligated to make up any shortfall or pay any unpaid claims.

16    (1999 Compact, § 4.3.2.1, subd. (b), emphasis added; see also Qualset Decl.[4], ¶¶ 2-5.)  This

17    provision of the 1999 Compacts was designed to ensure prompt disbursement of RSTF assets to

18    those tribes in most desperate need of funding–tribes with small or no gaming operation.  The

19    granting of the relief sought by Dixie here would subvert this important objective of the 1999

20    Compacts.

21    _____

22    2.  Relevant provisions of the 1999 Compacts are appended to this memorandum.

23    3.  The 1999 Compacts define a "Non-Compact Tribe as follows:

24    Federally-recognized tribes that are operating fewer than 350 Gaming
       Devices are "Non-Compact Tribes." Non-Compact Tribes shall be
25    deemed third party beneficiaries of this and other compacts identical
       in all material respects.
26

27    (1999 Compacts, § 4.3.2, subd. (a)(i).)  Notably, a Non-Compact Tribe must be federally-recognized,
       as is the California Valley Miwok Tribe.  (68 Fed. Reg. 68180-01 (Dec. 5, 2003).)
28

    4.  The Declaration of Gary Qualset is submitted with this memorandum.

2

_____

1    . The Commission has been faced on more than one occasion with the prospect of making a

2    RSTF disbursement to a tribe in the midst of a leadership dispute. In the past, it has been the

3    practice of the Commission to refrain from disbursing the RSTF funds until the resolution of the

4    tribal leadership dispute, in order to ensure that the funds were submitted to the proper party and

5    address. (Qualset Decl., ¶¶ 6-10.) However, the Commission has recently determined that it

6    should change this practice, in conformity with the practice of the Bureau of Indian Affairs, by

7    disbursing funds to the tribal representative with which the federal government carries on its

8    government-to-government relationship with the Tribe. (Qualset Decl., ¶¶ 11-14.) It appears to

9    the State that the Tribe's representative for such purposes remains Silvia Burley ("Burley"),

10    notwithstanding what may or may not be a meritorious challenge to her leadership. In a March

11    26, 2004, letter, the Bureau of Indian Affairs' Superintendent for the California Central District,

12    Dale Risling, wrote to Burley as follows:

13        As you know, the BIA's Central California Agency (CCA) has a
        responsibility to develop and maintain a government-to-government

14        relationship with each of the 54 federally recognized tribes situated within
        CCA's jurisdiction. This relationship, includes among other things, the

15        responsibility of working with the person or persons from each tribe who
        either are rightfully elected to a position of authority within the tribe or who

16        otherwise occupy a position of authority within an unorganized tribe. *To that
        end, the BIA has recognized you, as a person of authority within the*

17        *California Valley Miwok Tribe.*

18    (Risling-Burley Letter, Mar. 26, 2004, emphasis added, Everone Decl.[5], Ex. 7.) The BIA has

19    also indicated that Burley is the proper representative of the Tribe on other occasions. (Qualset

20    Decl., ¶¶ 15-17.) The Commission's determination that it should issue a RSTF disbursement

21    check to Burley is rooted in the practice of the federal government to continue the government-

22    to-government relationship, notwithstanding the existence of a leadership dispute, and in the

23    BIA's representations that at this time, Burley is the proper representative of the Tribe.

24    **CONCLUSION**

25        The defendants contend that the Commission's determination to issue a RSTF disbursement

26    check to Burley is correct and that the application for a temporary restraining order ought to be

27    _____

28        5.  The Declaration of Chadd Everone has been submitted by Dixie in support of his
    application.

3

P's and A's Opposing TRO Application

1  denied because granting the application would not serve the interests of the Tribe, and because

2  the Court should refuse to exercise jurisdiction over this action because the Tribe, whose

3  interests are most affected, is likely absent from the litigation.

4          Dated:  October 22, 2004

5                                              Respectfully submitted,

6                                              BILL LOCKYER
                                               Attorney General of the State of California

7                                              ROBERT L. MUKAI
                                               Senior Assistant Attorney General

8                                              SARA J. DRAKE
                                               Supervising Deputy Attorney General

9

10

11

12                                             MARC A. LE FORESTIER
                                               Deputy Attorney General
13                                             Attorneys for Defendants State of California,
                                               California Gambling Control Commission

14

15

16  10093928.wpd

17

18

19

20

21

22

23

24

25

26

27

28

4

000015

# APPENDIX

# TRIBAL-STATE GAMING COMPACT
## Between the *1, a federally recognized Indian Tribe,
## and the
## STATE OF CALIFORNIA

This Tribal-State Gaming Compact is entered into on a government-to-government basis by and between the *1, a federally-recognized sovereign Indian tribe (hereafter "Tribe"), and the State of California, a sovereign State of the United States (hereafter "State"), pursuant to the Indian Gaming Regulatory Act of 1988 (P.L. 100-497, codified at 18 U.S.C. Sec. 1166 et seq. and 25 U.S.C. Sec. 2701 et seq.) (hereafter "IGRA"), and any successor statute or amendments.

PREAMBLE

A. In 1988, Congress enacted IGRA as the federal statute governing Indian gaming in the United States. The purposes of IGRA are to provide a statutory basis for the operation of gaming by Indian tribes as a means of promoting tribal economic development, self-sufficiency, and strong tribal governments; to provide a statutory basis for regulation of Indian gaming adequate to shield it from organized crime and other corrupting influences; to ensure that the Indian tribe is the primary beneficiary of the gaming operation; to ensure that gaming is conducted fairly and honestly by both the operator and players; and to declare that the establishment of an independent federal regulatory authority for gaming on Indian lands, federal standards for gaming on Indian lands, and a National Indian Gaming Commission are necessary to meet congressional concerns.

B. The system of regulation of Indian gaming fashioned by Congress in IGRA rests on an allocation of regulatory jurisdiction among the three sovereigns involved: the federal government, the state in which a tribe has land, and the tribe itself. IGRA makes Class III gaming activities lawful on the lands of federally-recognized Indian tribes only if such activities are: (1) authorized by a tribal ordinance, (2) located in a state that permits such gaming for any purpose by any person, organization or entity, and (3) conducted in conformity with a gaming compact entered into between the Indian tribe and the state and approved by the Secretary of the Interior.

C-1. The Tribe is currently operating a tribal gaming casino offering Class III gaming activities on its land. On September 1, 1999, the largest number of Gaming Devices operated by the Tribe was *2.

C-2. [ALTERNATE PARAGRAPH] The Tribe does not currently operate a gaming facility that offers Class III gaming activities. However, on or after the effective date of this Compact, the Tribe intends to develop and operate a gaming facility offering Class III gaming activities on its reservation land, which is located in *3 County of California.

D. The State enters into this Compact out of respect for the sovereignty of the Tribe; in recognition of the historical fact that Indian gaming has become the single largest revenue-producing activity for Indian tribes in the United States; out of a desire to terminate pending "bad faith" litigation between the Tribe and the State; to initiate a new era of tribal-state cooperation in areas of mutual concern; out of a respect for the sentiment of the voters of California who, in approving Proposition 5, expressed their belief that the forms of gaming authorized herein should be allowed; and in anticipation of voter approval of SCA 11 as passed by the California legislature.

E. The exclusive rights that Indian tribes in California, including the Tribe, will enjoy under this Compact create a unique opportunity for the Tribe to operate its Gaming Facility in an economic environment free of competition from the Class III gaming referred to in Section 4.0 of this Compact on non-Indian lands in California. The parties are mindful that this unique environment

is of great economic value to the Tribe and the fact that income from Gaming Devices represents a substantial portion of the tribes' gaming revenues. In consideration for the exclusive rights enjoyed by the tribes, and in further consideration for the State's willingness to enter into this Compact, the tribes have agreed to provide to the State, on a sovereign-to-sovereign basis, a portion of its revenue from Gaming Devices.

F. The State has a legitimate interest in promoting the purposes of IGRA for all federally-recognized Indian tribes in California, whether gaming or non-gaming. The State contends that it has an equally legitimate sovereign interest in regulating the growth of Class III gaming activities in California. The Tribe and the State share a joint sovereign interest in ensuring that tribal gaming activities are free from criminal and other undesirable elements.

Section 1.0. PURPOSES AND OBJECTIVES.

The terms of this Gaming Compact are designed and intended to:

(a) Evidence the goodwill and cooperation of the Tribe and State in fostering a mutually respectful government-to-government relationship that will serve the mutual interests of the parties.

(b) Develop and implement a means of regulating Class III gaming, and only Class III gaming, on the Tribe's Indian lands to ensure its fair and honest operation in accordance with IGRA, and through that regulated Class III gaming, enable the Tribe to develop self-sufficiency, promote tribal economic development, and generate jobs and revenues to support the Tribe's government and governmental services and programs.

(c) Promote ethical practices in conjunction with that gaming, through the licensing and control of persons and entities employed in, or providing goods and services to, the Tribe's Gaming Operation and protecting against the presence or participation of persons whose criminal backgrounds, reputations, character, or associations make them unsuitable for participation in gaming, thereby maintaining a high level of integrity in tribal government gaming.

Sec. 2.0. DEFINITIONS.

Sec. 2.1. "Applicant" means an individual or entity that applies for a Tribal license or State certification.

Sec. 2.2. "Association" means an association of California tribal and state gaming regulators, the membership of which comprises up to two representatives from each tribal gaming agency of those tribes with whom the State has a gaming compact under IGRA, and up to two delegates each from the state Division of Gambling Control and the state Gambling Control Commission.

Sec. 2.3. "Class III gaming" means the forms of Class III gaming defined as such in 25 U.S.C. Sec. 2703(8) and by regulations of the National Indian Gaming Commission.

Sec. 2.4. "Gaming Activities" means the Class III gaming activities authorized under this Gaming Compact.

Sec. 2.5. "Gaming Compact" or "Compact" means this compact.

Sec. 2.6. "Gaming Device" means a slot machine, including an electronic, electromechanical, electrical, or video device that, for consideration, permits: individual play with or against that device or the participation in any electronic, electromechanical, electrical, or video system to which that device is connected; the playing of games thereon or therewith, including, but not limited to, the playing of facsimiles of games of chance or skill; the possible delivery of, or entitlement by the player to, a prize or something of value as a result of the application of an element of chance; and a method for viewing the outcome, prize won, and other information regarding the playing of games thereon or therewith.

Sec. 2.7. "Gaming Employee" means any person who (a) operates, maintains, repairs, assists in any Class III gaming activity, or is in any way responsible for supervising such gaming activities or persons who conduct, operate, account for, or supervise any such gaming activity, (b) is in a category under federal or tribal gaming law requiring licensing, (c) is an employee of the Tribal Gaming Agency with access to confidential information, or (d) is a person whose employment duties require or authorize access to areas of the Gaming Facility that are not open to the public.

Sec. 2.8. "Gaming Facility" or "Facility" means any building in which Class III gaming activities or gaming operations occur, or in which the business records, receipts, or other funds of the gaming operation are maintained (but excluding offsite facilities primarily dedicated to storage of those records, and financial institutions), and all rooms, buildings, and areas, including parking lots and walkways, a principal purpose of which is to serve the activities of the Gaming Operation, provided that nothing herein prevents the conduct of Class II gaming (as defined under IGRA) therein.

Sec. 2.9. "Gaming Operation" means the business enterprise that offers and operates Class III Gaming Activities, whether exclusively or otherwise.

Sec. 2.10. "Gaming Ordinance" means a tribal ordinance or resolution duly authorizing the conduct of Class III Gaming Activities on the Tribe's Indian lands and approved under IGRA.

Sec. 2.11. "Gaming Resources" means any goods or services provided or used in connection with Class III Gaming Activities, whether exclusively or otherwise, including, but not limited to, equipment, furniture, gambling devices and ancillary equipment, implements of gaming activities such as playing cards and dice, furniture designed primarily for Class III gaming activities, maintenance or security equipment and services, and Class III gaming consulting services. "Gaming Resources" does not include professional accounting and legal services.

Sec. 2.12. "Gaming Resource Supplier" means any person or entity who, directly or indirectly, manufactures, distributes, supplies, vends, leases, or otherwise purveys Gaming Resources to the Gaming Operation or Gaming Facility, provided that the Tribal Gaming Agency may exclude a purveyor of equipment or furniture that is not specifically designed for, and is distributed generally for use other than in connection with, Gaming Activities, if the purveyor is not otherwise a Gaming Resource Supplier as described by of Section 6.4.5, the compensation received by the purveyor is not grossly disproportionate to the value of the goods or services provided, and the purveyor is not otherwise a person who exercises a significant influence over the Gambling Operation.

Sec. 2.13. "IGRA" means the Indian Gaming Regulatory Act of 1988 (P.L. 100-497, 18 U.S.C. Sec. 1166 et seq. and 25 U.S.C. Sec. 2701 et seq.) any amendments thereto, and all regulations promulgated thereunder.

Sec. 2.14. "Management Contractor" means any Gaming Resource Supplier with whom the Tribe has contracted for the management of any Gaming Activity or Gaming Facility, including, but not limited to, any person who would be regarded as a management contractor under IGRA.

Sec. 2.15. "Net Win" means "net win" as defined by American Institute of Certified Public Accountants.

Sec. 2.16. "NIGC" means the National Indian Gaming Commission.

Sec. 2.17. "State" means the State of California or an authorized official or agency thereof.

Sec. 2.18. "State Gaming Agency" means the entities authorized to investigate, approve, and regulate gaming licenses pursuant to the Gambling Control Act (Chapter 5 (commencing with Section 19800) of Division 8 of the Business and Professions Code).

Sec. 2.19. "Tribal Chairperson" means the person duly elected or selected under the Tribe's organic documents, customs, or traditions to serve as the primary spokesperson for the Tribe.

Sec. 2.20. "Tribal Gaming Agency" means the person, agency, board, committee, commission, or council designated under tribal law, including, but not limited to, an intertribal gaming regulatory agency approved to fulfill those functions by the National Indian Gaming Commission, as primarily responsible for carrying out the Tribe's regulatory responsibilities under IGRA and the Tribal Gaming Ordinance. No person employed in, or in connection with, the management, supervision, or conduct of any gaming activity may be a member or employee of the Tribal Gaming Agency.

Sec. 2.21. "Tribe" means the Dry Creek Rancheria, a federally-recognized Indian tribe, or an authorized official or agency thereof.

Sec. 3.0 CLASS III GAMING AUTHORIZED AND PERMITTED. The Tribe is hereby authorized and permitted to engage in only the Class III Gaming Activities expressly referred to in Section 4.0 and shall not engage in Class III gaming that is not expressly authorized in that Section.

Sec. 4.0. SCOPE OF CLASS III GAMING.

Sec. 4.1. Authorized and Permitted Class III gaming. The Tribe is hereby authorized and permitted to operate the following Gaming Activities under the terms and conditions set forth in this Gaming Compact:

(a) The operation of Gaming Devices.

(b) Any banking or percentage card game.

(c) The operation of any devices or games that are authorized under state law to the California State Lottery, provided that the Tribe will not offer such games through use of the Internet unless others in the state are permitted to do so under state and federal law.

(e) Nothing herein shall be construed to preclude negotiation of a separate compact governing the conduct of off-track wagering at the Tribe's Gaming Facility.

Sec. 4.2. Authorized Gaming Facilities. The Tribe may establish and operate not more than two Gaming Facilities, and only on those Indian lands on which gaming may lawfully be conducted under the Indian Gaming Regulatory Act. The Tribe may combine and operate in each Gaming Facility any forms and kinds of gaming permitted under law, except to the extent limited under IGRA, this Compact, or the Tribe's Gaming Ordinance.

Sec. 4.3. Sec. 4.3. Authorized number of Gaming Devices

Sec. 4.3.1 The Tribe may operate no more Gaming Devices than the larger of the following:

(a) A number of terminals equal to the number of Gaming Devices operated by the Tribe on September 1, 1999; or

(b) Three hundred fifty (350) Gaming Devices.

Sec. 4.3.2. Revenue Sharing with Non-Gaming Tribes.

(a) For the purposes of this Section 4.3.2 and Section 5.0, the following definitions apply:

(i) A "Compact Tribe" is a tribe having a compact with the State that authorizes the Gaming Activities authorized by this Compact. Federally-recognized tribes that are operating fewer than 350 Gaming Devices are "Non-Compact Tribes." Non-Compact Tribes shall be deemed third party beneficiaries of this and other compacts identical in all material respects. A Compact Tribe that becomes a Non-Compact Tribe may not thereafter return to the status of a Compact Tribe for a period of two years becoming a Non-Compact Tribe.

(ii) The Revenue Sharing Trust Fund is a fund created by the Legislature and administered by the

California Gambling Control Commission, as Trustee, for the receipt, deposit, and distribution of monies paid pursuant to this Section 4.3.2.

(iii) The Special Distribution Fund is a fund created by the Legislature for the receipt, deposit, and distribution of monies paid pursuant to Section 5.0.

Sec. 4.3.2.1. Revenue Sharing Trust Fund.

(a) The Tribe agrees with all other Compact Tribes that are parties to compacts having this Section 4.3.2, that each Non-Compact Tribe in the State shall receive the sum of $1.1 million per year. In the event there are insufficient monies in the Revenue Sharing Trust Fund to pay $1.1 million per year to each Non-Compact Tribe, any available monies in that Fund shall be distributed to Non-Compact Tribes in equal shares. Monies in excess of the amount necessary to $1.1 million to each Non-Compact Tribe shall remain in the Revenue Sharing Trust Fund available for disbursement in future years.

(b) Payments made to Non-Compact Tribes shall be made quarterly and in equal shares out of the Revenue Sharing Trust Fund. The Commission shall serve as the trustee of the fund. The Commission shall have no discretion with respect to the use or disbursement of the trust funds. Its sole authority shall be to serve as a depository of the trust funds and to disburse them on a quarterly basis to Non-Compact Tribes. In no event shall the State's General Fund be obligated to make up any shortfall or pay any unpaid claims.

Sec. 4.3.2.2. Allocation of Licenses.

(a) The Tribe, along with all other Compact Tribes, may acquire licenses to use Gaming Devices in excess of the number they are authorized to use under Sec. 4.3.1, but in no event may the Tribe operate more than 2,000 Gaming Devices, on the following terms, conditions, and priorities:

(1). The maximum number of machines that all Compact Tribes in the aggregate may license pursuant to this Section shall be a sum equal to 350 multiplied by the number of Non-Compact tribes as of September 1, 1999, plus the difference between 350 and the lesser number authorized under Section 4.3.1.

(2) The Tribe may acquire and maintain a license to operate a Gaming Device by paying into the Revenue Sharing Trust Fund, on a quarterly basis, in the following amounts:

| Number of Licensed Devices | Fee Per Device Per Annum |
|---|---|
| 1-350 | $0 |
| 351-750 | $900 |
| 751-1250 | $1950 |
| 1251-2000 | $4350 |

|  |  |  |
|--|--|--|
|  |  |  |

(3) Licenses to use Gaming Devices shall be awarded as follows:

(i) First, Compact Tribes with no Existing Devices (i.e., the number of Gaming Devices operated by a Compact Tribe as of September 1, 1999) may draw up to 150 licenses for a total of 500 Gaming Devices;

(ii) Next, Compact Tribes authorized under Section 4.3.1 to operate up to and including 500 Gaming Devices as of September 1, 1999 (including tribes, if any, that have acquired licenses through subparagraph (i)), may draw up to an additional 500 licenses, to a total of 1000 Gaming Devices;

(iii) Next, Compact Tribes operating between 501 and 1000 Gaming Devices as of September 1, 1999 (including tribes, if any, that have acquired licenses through subparagraph (ii)), shall be entitled to draw up to an additional 750 Gaming Devices;

(iv) Next, Compact Tribes authorized to operate up to and including 1500 gaming devices (including tribes, if any, that have acquired licenses through subparagraph (iii)), shall be entitled to draw up to an additional 500 licenses, for a total authorization to operate up to 2000 gaming devices.

(v) Next, Compact Tribes authorized to operate more than 1500 gaming devices (including tribes, if any, that have acquired licenses through subparagraph (iv))., shall be entitled to draw additional licenses up to a total authorization to operate up to 2000 gaming devices.

(vi). After the first round of draws, a second and subsequent round(s) shall be conducted utilizing the same order of priority as set forth above. Rounds shall continue until tribes cease making draws, at which time draws will be discontinued for one month or until the Trustee is notified that a tribe desires to acquire a license, whichever last occurs.

(e) As a condition of acquiring licenses to operate Gaming Devices, a non-refundable one-time pre-payment fee shall be required in the amount of $1,250 per Gaming Device being licensed, which fees shall be deposited in the Revenue Sharing Trust Fund. The license for any Gaming Device shall be canceled if the Gaming Device authorized by the license is not in commercial operation within twelve months of issuance of the license.

Sec. 4.3.2.3. The Tribe shall not conduct any Gaming Activity authorized by this Compact if the Tribe is more than two quarterly contributions in arrears in its license fee payments to the Revenue Sharing Trust Fund.

Sec. 4.3.3. If requested to do so by either party after March 7, 2003, but not later than March 31, 2003, the parties will promptly commence negotiations in good faith with the Tribe concerning any matters encompassed by Sections 4.3.1 and Section 4.3.2, and their subsections.

SEC. 5.0 REVENUE DISTRIBUTION

Sec. 5.1. (a) The Tribe shall make contributions to the Special Distribution Fund created by the Legislature, in accordance with the following schedule, but only with respect to the number of Gaming Devices operated by the Tribe on September 1, 1999:<div align="center">

| Number of Terminals in Quarterly Device Base | Percent of Average Gaming Device Net Win |
|---|---|
| 1 - 200<br>201 – 500 | 0%<br>7% |

</div><div align="center">

## DECLARATION OF SERVICE BY MESSENGER

Case Name:   **YAKIMA DIXIE, an individual; and, CALIFORNIA VALLEY MIWOK TRIBE fka SHEEP RANCH RANCHERIA OF ME-WUK INDIANS OF CALIFORNIA, an unorganized tribe v. STATE OF CALIFORNIA, CALIFORNIA GAMBLING CONTROL COMMISSION, an Agency of the State of California, and DOES 1 through 10, inclusive**

No.:   **04AS04205**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar at which member's direction this service is made.  I am 18 years of age or older and not a party to this matter; my business address is:  1300 I Street, P.O. Box 944255, Sacramento, California  94244-2550.

On <u>October 22, 2004</u>, I served the attached **MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO THE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND/OR ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION; DECLARATION OF GARY QUALSET IN OPPOSITION TO APPLICATION FOR TEMPORARY RESTRAINING ORDER AND/OR ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION** by placing a true copy thereof to be delivered by messenger service to the following person(s) at the address(es) as follows:

Peter E. Glick
400 Capitol Mall, Suite 1100
Sacramento, CA  95814
**Attorney for Plaintiffs**

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on October 22, 2004, at Sacramento, California.

| | |
|---|---|
| S. L. Mason | _S. L. Mason_ (signature) |
| Declarant | Signature |

10093892.wpd

000023

ENDORSED

2004 OCT 22 PM 2: 30

SACRAMENTO COURTS
DEPT. #53 #54

1  BILL LOCKYER
   Attorney General of the State of California
2  ROBERT L. MUKAI
   Senior Assistant Attorney General
3  SARA J. DRAKE
   Supervising Deputy Attorney General
4  MARC A. LE FORESTIER, State Bar No. 178188
   Deputy Attorney General
5    1300 I Street, Suite 125
     P.O. Box 944255
6    Sacramento, CA 94244-2550
     Telephone: (916) 322-5452
7    Fax: (916) 322-5609

8  **Attorneys for Defendants State of California, and
   the California Gambling Control Commission**

9

10              SUPERIOR COURT OF CALIFORNIA

11                 COUNTY OF SACRAMENTO

12

13

14

15  **YAKIMA DIXIE, an individual; and,**          CASE NO. 04AS04205
    **CALIFORNIA VALLEY MIWOK TRIBE fka**
16  **SHEEP RANCH RANCHERIA OF ME-WUK**          **DECLARATION OF GARY**
    **INDIANS OF CALIFORNIA, an unorganized tribe,**  **QUALSET IN OPPOSITION**
                                                 **TO APPLICATION FOR**
17                          Plaintiffs,          **TEMPORARY**
                                                 **RESTRAINING ORDER**
18              v.                               **AND/OR ORDER TO SHOW**
                                                 **CAUSE RE PRELIMINARY**
19  **STATE OF CALIFORNIA, CALIFORNIA**          **INJUNCTION**
    **GAMBLING CONTROL COMMISSION, an**
20  **Agency of the State of California, and DOES 1**  Date:    October 27, 2004
    **through 10, inclusive,**                   Time:    2:00 p.m.
21                                               Dept:    53
                            Defendants.          Judge:   The Honorable Loren
22                                                        E. McMaster
                                                 Trial Date: Not Set
23                                               Action Filed: October 18, 2004

24      I, Gary Qualset, hereby declare:

25          1.      I am the Deputy Director of the Licensing and Compliance Division of the

26  California Gambling Control Commission ("the Commission").

27          2.      The Commission is charged with the responsibility of being the "Trustee" of the

28  Revenue Sharing Trust Fund ("RSTF") pursuant to section 4.3.2(a)(ii) of the tribal-state class III

1

Declaration of Gary Qualset

000024

gaming compacts completed between the State of California and sixty-one Indian tribes in 1999

("the 1999 Compacts").

3.    My staff and I administer the Commission's responsibilities with regard to the

RSTF, pursuant to section 4.3.2.1 of the 1999 Compacts.

4.    Pursuant to the 1999 Compacts, my staff and I ensure that quarterly payments are

made from the RSTF to eligible Non-Compact Tribes as defined in section 4.3.2(a)(i) of the 1999

Compact.

5.    RSTF payment checks are made payable to the name of the recipient Tribes rather

than to the name of an individual representative of the Tribe.

6.    The Commission relies upon the records of the United States Department of the

Interior, Bureau of Indians Affairs (BIA), to verify the tribal address of record and the recognized

tribal chairperson or authorized representative with whom the BIA is conducting government-to-

government relations on an ongoing basis.

7.    RSTF payment checks are mailed to the Tribe at its official address of record to

the attention of the Tribal Chairperson, or representative, and it has been the practice of the

Commission to mail RSTF distribution checks via United States Postal Service Priority Mail,

with signature verification service, to ensure the establishment of a record of delivery and receipt.

8.    On occasion over the past years, the Commission has been contacted by tribal

members, tribal officials, and their legal representatives to advise the Commission of internal

tribal disputes regarding a number of issues such as inappropriate use of funds, dis-enrollment of

tribal members, and other tribal government problems and membership disputes.  In many of

these instances, the Commission was requested to withhold the distribution of funds from the

RSTF to the tribe or was requested to mail the check to a different address from that on record

with the BIA.

9.    If each of these request had been honored, a substantial sum of money, running

into the millions of dollars of RSTF funds would not have been distributed in a timely manner to

an otherwise eligible tribe or may have been sent to the address of a person not authorized to

receive the funds.

<div align="center">2</div>

10.    Because of these requests, the Commission established procedures to avoid becoming involved in tribal leadership disputes and to properly carry out its duties regarding RSTF funds in a manner that would, in the vast majority of cases, allow for the proper distribution of funds as quickly as possible, while exercising due care in performing its trustee responsibilities under the 1999 Compacts.

11.    Until recently, when a tribal leadership dispute has arisen, and a BIA leadership decision has been administratively appealed, it has been the practice of the Commission to hold RSTF checks during the pendency of that appeal.

12.    Recently, the Commission determined that it should change this practice to conform to the practice of the BIA and send the RSTF funds to the Tribe via the tribal representative with whom the BIA conducts government-to-government relations on an ongoing basis, regardless of whether there is a challenge to tribal leadership.

13.    It appears to the Commission that Sylvia Burley is presently recognized as the tribal representative for the California Valley Miwok Tribe.

14.    The Commission has determined to send the checks payable to the Tribe, to the attention of Ms. Burley, based on the fact that the BIA has indicated on several occasions that the tribal representative with whom its conducts government-to-government relations is Ms. Burley. That the BIA continues to recognize Ms. Burley has been indicated on several occasions.

15.    In a March 26, 2004, letter, the BIA's Superintendent for the California Central District, Dale Risling ("Risling"), wrote to Burley as follows:

> As you know, the BIA's Central California Agency (CCA) has a responsibility to develop and maintain a government-to-government relationship with each of the 54 federally recognized tribes situated within CCA's jurisdiction. This relationship, includes among other things, the responsibility of working with the person or persons from each tribe who either are rightfully elected to a position of authority within the tribe or who otherwise occupy a position of authority within an unorganized tribe. To that end, the BIA has recognized you, as a person of authority within the California Valley Miwok Tribe.

A copy of this letter is appended to the Declaration of Chadd Everone, in Exhibit 7, which has been submitted to the Court by plaintiff Yakima Dixie.

3

16.    On August 26, 2004, Risling addressed correspondence to Burley as "Chairperson" of the California Valley Miwok Tribe. A true and accurate copy of this letter is appended hereto as Exhibit 1.

17.    Moreover, I was informed by staff that on October 18, 2004, Ray Fry, Tribal Liaison Officer of the BIA's Central California Agency, confirmed, in response to a telephonic inquiry, that "at the present time" Ms. Burley is recognized as the Tribal Chairperson.

I certify under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 22nd day of October, 2004, at Sacramento, California.

GARY QUALSET

10093971.wpd

4

Declaration of Gary Qualset

# EXHIBIT "1"



# United States Department of the Interior

BUREAU OF INDIAN AFFAIRS
Central California Agency
650 Capitol Mall, Suite 8-500
Sacramento, CA 95814

IN REPLY REFER TO
Indian Self-Determination

AUG 2 6 2004

Silvia Burley, Chairperson
California Valley Miwok Tribe
10601 Escondido Place
Stockton, California 95212

Dear Ms. Burley:

Enclosed is a fully executed duplicate of Modification No. Twelve (12) for Contract No. CTJS1T62802 (FY 04 Mature Status-Consolidated Tribal Government Program).

For future payments regarding this contract, please contact Terri Williams, Indian Self-Determination Secretary at (916) 930-3747.

Should you have any questions regarding this contract, please contact Janice Whipple-DePina, Indian Self-Determination Officer at (916) 930-3742.

Sincerely,

Dale Risling, Sr.
Superintendent

Enclosures

cc: Raymond Fry, Tribal Operations Officer, AOTR
    Carol Rogers-Davis, Tribal Operations Specialist, SAOTR