Manuel Corrales, Jr., SBN 117647
**Attorney at Law**
11753 Avenida Sivrita
San Diego, CA 92128
Phone: (858) 521-0634
Fax: (858) 521-0633

Attorney for Plaintiff
CALIFORNIA VALLEY MIWOK TRIBE

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA VALLEY MIWOK TRIBE,<br><br>              Plaintiff,<br><br>      v.<br><br>THE CALIFORNIA GAMBLING<br>CONTROL COMMISSION; and DOES<br>1 THROUGH 50, Inclusive,<br><br>              Defendants. | Case No. 08 CV 0120 BEN AJB<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>DATE:  March 10, 2008<br>TIME:   10:30 A.M.<br>COURTROOM: 3<br>LOCATION: 940 Front Street<br>                   San Diego, A 92101<br>JUDGE:  Hon. Roger J. Benitez |

Plaintiff California Valley Miwok Tribe ("Miwok Tribe" or "the Tribe" or "Plaintiff")

submits the following Memorandum of Points and Authorities in opposition to Defendant

The California Gambling Control Commission's ("the Commission") Motion to

Dismiss the Complaint.

# TABLE OF CONTENTS

I.    INTRODUCTION    ……………………………………………………..    1

II.   RELEVANT FACTUAL ALLEGATIONS    …………………………………    1

III.  DISMISSAL OF CERTAIN CLAIMS    ……………………………………    4

IV.   SUMMARY OF LAW ON RULE 12(b) MOTIONS TO DISMISS    ………………..    4

    A.    Rule 12(b)(1): Dismissal For Lack Of Subject Matter Jurisdiction    ……….    4

    B.    Rule 12(b)(6): Dismissal For Failure To State a Claim Upon Which
       Relief Can Be Granted    ……………………………………………    5

    C.    Rule 12(b)(7): Dismissal For Failure To Join A Rule 19 Party    ……………    6

V.    ARGUMENT    …………………………………………………………    7

    A.    A Ruling Granting Plaintiff's Motion To Remand Back to State
       Court Will Make Defendant's 12(b) Motions to Dismiss Moot    …………….    7

    B.    Plaintiff Has The Capacity To Sue For The Sought After
       Equitable Relief    ………………………………………………..    7

    C.    Plaintiff Is Not Seeking A Determination Of Its Status As A
       Tribe In This Action    ………………………………………….....    11

    D.    Plaintiff Merely Seeks A Judicial Determination Of The
       Commission's Duty To Pay RSTF Money To "Unorganized",
       Federally-Recognized, Non-Compact Tribes, Or Their
       Authorized Representative    ……………………………………………    12

    E.    The Compact Does Not Bar Plaintiff, A Non-Compact Tribe,
       From Suing the Commission For Equitable Relief    …………………………    13

    F.    Plaintiff's Breach Of Contract And Breach Of Fiduciary Duty
       Claims Have Been Dismissed, Making the Commission's
       "No Compensatory Damage" Argument Moot    …………………………….    15

    G.    Parties To The Tribe's Leadership Dispute Are Not
       Necessary And Dispensable Parties    ……………………………………    15

    H.    The Commission's 11th Amendment Immunity Argument Is
       Moot, In Light Of The Plaintiff's Dismissal Of The Breach
       Of Contract And Breach Of Fiduciary Duty Claims    …………………………    18

1

## **TABLE OF AUTHORITIES**

2

<u>Cases</u>                                                                                                       <u>Page No.</u>

3

<u>California Valley Miwok Tribe v. The United States</u>
4           (D.C.D.C.2006) 424 F.Supp.2d 197   ……………………………………………8, 9

5   <u>Conley v. Gibson</u> (1957)
            355 U.S. 41, 78 S.Ct. 99  …………………………………………………………….6
6

<u>Countrywide Home Loans, Inc. v. Superior Court</u>
7            (1999) 69 CA4th 785.  ………………………………………………………….. 16

8   <u>De Sole v. United States</u>
            (4th Cir. 1991) 947 F.2d 1169  …………………………………………………… 5
9

10  <u>Grupo Dataflux v. Atlas Global Group, L.P.</u>
            (2004) 541 U.S. 567, 574, 124 S.Ct. 1920  ……………………………………… …... 5
11

<u>Hammond v. Clayton</u>
12           (7th Cir. 1996) 83 F.3d 191  ……………………………………………………….6

13  <u>Hollander v. Brown</u>
            (7th Cir. 2006) 457 F.3d 688  ……………………………………………………...6
14

15  <u>HS Resources, Inc. v. Wingate</u>
            (5th Cir. 2005) 327 F.3d  432   …………………………………………………… 6
16

17  <u>Ideal Steel Supply Corp. v. Anza</u>
             (2d Cir. 2004) 373 F.3d 251 ……………………………………………………….. 6
18

19  <u>Jackson v. Birmingham Bd. Of Educ.</u>
             (2005) 544 U.S. 167, 170-71, 125 S.Ct. 1497   …………………………………… 5

20  <u>McGary v. City of Portland</u>
            (9th Cir. 2004) 386 F.3d 1259   ……………………………………………….. 6
21

22  <u>People ex rel. Lungren v. Community Development Agency</u>
             (1997) 56 CA4th 868  ………………………………………………............... 16,17
23

24  <u>Rotec Indus., Inc. v. Aecon Group, Inc.</u>
             (N.D.Ill.2006) 436 F.Supp.2d 931  …………………………………………… 6

25  <u>Sever v. Glickman</u>
            (D.Conn.2004) 298 F.Supp.2d 267, 275  ………………………………………… 6
26

27  <u>SmileCare Dental Group v. Delta Dental Plan of Cal., Inc.</u>
            (9th Cir. 1996) 88 F.3d 780  …………………………………………………… 5
28

i

Strand v. Diversified Collection Serv., Inc.
   (8th Cir. 2004) 380 F.3d 316 ……………………………………………… 5

Test Masters Educ. Serv. V. Singh
   (5th Cir. 2005) 428 F.3d 559 ……………………………………..…… 5

United States v. Northern Trust Co.
   (7th Cir. 2004) 372 F.3d 886 …………………………………..…….. 6

Whisnant v. United States
   (9th Cir. 2005) 400 F.3d, 1177 ……………………………………….... 5

Xechem, Inc. v. Bristol-Myers Squibb Co.
   (7th Cir. 2004) 372 F.3d 899 ……………………………………………..6

FRCP 12(b)(1) …………………………………………………………… 4

FRCP 12(b)(6) ……………………………………………………… 4,5

FRCP 12(b)(7) …………………………………………………………… 4

FRCP 41(a)(1) …………………………………………………………… 4

FRCP 19(a) ………………………………………………………… 6, 15

Cal. Gov. Code Section 12012.75 ………………………………………… 1

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE COMPLAINT**

08 CV 0120 BEN AJB

**I.**

**INTRODUCTION**

This is a suit for equitable relief as it pertains to the Commission's duty under California State law to distribute Revenue Sharing Trust Fund ("RSTF") money to a federally recognized, <u>unorganized</u>, non-compact Indian Tribe.  Here, Plaintiff merely seeks a judicial declaration that the Commission must continue to pay it RSTF money, despite its present status of being recognized by the Bureau of Indian Affairs ("BIA") as "unorganized" due to the Tribe's ongoing Tribal leadership dispute.

The suit seeks no compensatory relief in the form of monetary damages.

**II.**

**RELEVANT FACTUAL ALLEGATIONS**

In 1994, Plaintiff was placed on the list of federally recognized tribes when Congress enacted the Federally Recognized Tribe List Act.  Plaintiff was never removed from that list.  As such, it continues to be a federally recognized Tribe.

In September of 1999, the State of California and various Indian Tribes in the State entered into what has been referred to as a "Tribal-State Gambling Compact" (hereinafter referred to as "Compact"), which enabled various "Compact" Tribes to operate gambling casinos on their reservations.

The Compact requires that the "Compact" Tribes contribute a certain percentage of their casino winnings to the State for placement in two separate funds, the Special Distribution Fund ("SDF") and the RSTF.  This dispute involves the RSTF.  The money placed in the RSTF is earmarked for Non-Compact Tribes who have less than 350 slot machines or no gambling facilities at all.  Plaintiff has no gambling casinos.

Under State law, the RSTF money is placed in the State Treasury and designated as the "Indian Gaming Revenue Sharing Trust Fund".  The Commission, a State agency, is charged with the responsibility under State law to distribute to Non-Compact Tribes, like Plaintiff, <u>in accordance with the distribution plans specified tribal-state gaming compacts</u>.  Cal. Gov. Code Section 12012.75.  The "distribution plans" under the

Compact specify the Commission's duties in paying out RSTF money to Non-Compact Tribes, like Plaintiff.

Under Section 4.3.2.1of the Compact, the Commission is to pay each Non-Compact Tribe $1.1 million per year, and if there is not enough money in the RSTF to pay each Non-Compact Tribe this amount, then the funds are to be distributed in equal shares. However, Cal. Gov. Code Section 12012.90(d) was later enacted to require the Commission to take funds from the SDF to make up any shortfall in RSTF money, i.e., so as to insure that each Non-Compact Tribe receives its full entitled share. Under Section 4.3.2.1(b) of the Compact, the Commission has <u>no discretion</u> as to how the RSTF money is to be disbursed.

In late 1999, a leadership dispute arose within the Miwok Tribe that continues to the present day. In addition, beginning in October of 2001 the Tribe and the BIA disputed how the Tribe should be "organized" with respect to a governing constitution. The dispute concerning the Tribe's constitution resulted in the Tribe suing the BIA in the U.S. District Court in Washington D.C., seeking a judicial declaration that the BIA could not interfere with the Tribe's right to establish its own constitution. The U.S. District Court, however, dismissed the Complaint, concluding that the BIA could request the Tribe to establish a constitution under certain guidelines. The U.S. District Court made no ruling on whether the Tribe was no longer "federally recognized", or whether Sylvia Burley, or anyone else, was an official representative of the Tribe.

In March of 2004(prior to the U.S. District Court suit), the BIA wrote the Miwok Tribe to advise that although it considered the Tribe to be "unorganized", it still recognized Sylvia Burley, the former Tribal Chairperson, to be the official representative of the Tribe, or otherwise a "person of authority". To date, the BIA has never withdrawn that statement, even despite the U.S. District Court's decision dismissing the Tribe's suit.

In October of 2004, a former Tribal Councilmember, Yakima Dixie, who has challenged (and continues to challenge) the Miwok Tribe leadership, sued the Commission for a Temporary Restraining Order ("TRO"), seeking to restrain the

1  Commission from further distribution of RSTF money to the Tribe via Sylvia Burley.  The

2  Commission opposed the suit, arguing that despite the Tribe being "unorganized", Sylvia

3  Burley was still considered a person of authority for the Tribe by the BIA, and therefore it

4  was obligated to continue making RSTF payments to the Tribe via Ms. Burley. (See Ex.

5  3 to Defendant's Request for Judicial Notice).  Yakima Dixie's request for a TRO was

6  denied, and the Commission continued to make quarterly RSTF payments to the Tribe

7  via Sylvia Burley, until August 4, 2005, two weeks after the BIA suspended the Tribe's

8  federal (PL 93-638) contract funds, after the BIA's efforts to resolve the Tribe's internal

9  leadership dispute failed and the Tribe still had no governing constitution acceptable to

10  the BIA.  Despite having suspended the Tribe's federal contract funds, the BIA continued

11  to recognize the Tribe as an "unorganized" Tribe and Sylvia Burley as its official

12  representative.

13           The Commission's decision to withhold the Tribe's RSTF money on August 4,

14  2005, was inconsistent with its previous position as highlighted in its opposition papers to

15  Yakima Dixie's TRO application.  The Commission informed the Tribe at that time that it

16  would be withholding the Tribe's RSTF money until the Tribe's leadership was firmly

17  established.  Later, in December 2005, the Commission filed an interpleader action

18  against Sylvia Burley, Yakima Dixie, and others it thought to be involved in the Tribal

19  leadership dispute, seeking to get the State Superior Court to make a determination on

20  whether the Tribe was properly organized and to resolve the Tribe's internal leadership

21  dispute.  It sought no relief with respect to its duties and responsibilities in disbursing

22  RSTF money, however.  As a result, the Commission's interpleader action was denied

23  on June 16, 2006.

24           The Commission has inexplicably decided to withhold RSTF money from Plaintiff,

25  because it is "unorganized" or otherwise because the BIA purportedly does not recognize

26  Sylvia Burley as an authorized representative of the Tribe.  However, the BIA still

27  recognizes the Tribe, even though it is "unorganized", the Tribe has never been taken off

28  of the federally recognized list of tribes pursuant to the Federally Recognized Indian

1  Tribe List Act of 1994, and the Compact does not disqualify a Non-Compact Tribe from

2  receiving RSTF money because it is "unorganized".  Indeed, the Compact does not

3  require the Commission to determine whether a Non-Compact Tribe is "organized" prior

4  to making RSTF distributions.  Moreover, the Compact specifically defines a "Tribe" as a

5  "federally-recognized Indian tribe, or an <u>authorized official</u> or agency thereof."  Under this

6  definition, the Miwok Tribe still qualifies for RSTF distributions.  Even though it may be

7  "unorganized", it still remains federally recognized, and the BIA has never withdrawn its

8  position that Sylvia Burley is an authorized representative of the Tribe.  It is for these

9  reasons that Plaintiff contends that the Commission's actions in withholding its RSTF

10  money is erroneous, and requests a judicial determination in State Court that the

11  Commission has a duty to resume those payments to Plaintiff.

12      Presently, Yakima Dixie is incarcerated in the Deuel Vocational Institution in

13  Tracy, California.

14  **III.**

15  **DISMISSAL OF CERTAIN CLAIMS**

16      After the Commission removed this case to the U.S. District Court, Plaintiff filed a

17  FRCP 41(a)(1) Notice of Dismissal of its Third Cause of Action for Breach of Contract

18  and its Fourth Cause of Action for Breach of Fiduciary Duty.  Thus, no "compensatory"

19  damages are sought.

20  **IV.**

21  **SUMMARY OF LAW ON RULE 12(b) MOTIONS TO DISMISS**

22      The Commission has moved to dismiss the Complaint pursuant to FRCP 12(b)(1),

23  12(b)(6) and 12(b)(7).  The following is a summary of the law in connection with such

24  motions in federal court.

25      **A.    Rule 12(b)(1):  Dismissal for Lack of Subject Matter Jurisdiction**

26      The Complaint is subject to dismissal under FRCP 12(b)(1), if the court lacks the

27  statutory authority to hear and decide the dispute.  This includes where there is no

28  federal question at issue, if the parties are not completely diverse, or if the amount in

1  controversy does not exceed $75,000.

2       In evaluating subject matter jurisdiction attacks, the court ordinarily construes the

3  complaint liberally, accepts all uncontroverted, well-pleaded factual allegations as true,

4  and views all reasonable inferences in plaintiff's favor.  Whisnant v. United States (9th

5  Cir. 2005) 400 F.3d, 1177, 1179.  Whether subject matter jurisdiction exists is

6  determined as of the date the lawsuit was filed.  Grupo Dataflux v. Atlas Global Group,

7  L.P. (2004) 541 U.S. 567, 574, 124 S.Ct. 1920, 1925.

8       **B.     Rule 12(b)(6):  Dismissal For Failure To State A Claim Upon Which
          Relief Can Be Granted**
9

10      A motion to dismiss for failure to state a claim has its roots in the common law

11  demurrer.  See De Sole v. United States (4th Cir. 1991) 947 F.2d 1169, 1178, fn. 13.

12  Like a common law demurrer, it tests the legal sufficiency of the allegations in the

13  complaint.

14      A claim is subject to dismissal under FRCP 12(b)(6) where it either asserts a legal

15  theory that is not cognizable as a matter of law or because it fails to state sufficient facts

16  to support a legally cognizable claim.  See SmileCare Dental Group v. Delta Dental Plan

17  of Cal., Inc. (9th Cir. 1996) 88 F.3d 780, 783.  However, when ruling on a 12(b)(6) motion

18  to dismiss, the court assumes the truth of the allegations pled in the complaint, resolves

19  all doubts and inferences in the plaintiff's favor, and views the pleadings in the light most

20  favorable to the non-moving party.  Jackson v. Birmingham Bd. Of Educ. (2005) 544 U.S.

21  167, 170-71, 125 S.Ct. 1497, 1502-03.

22      In ruling on a motion to dismiss for failure to state a claim, the court reads the

23  allegations in the complaint liberally, and will dismiss only when the pleadings show on

24  their face "some insuperable bar to relief".  Strand v. Diversified Collection Serv., Inc. (8th

25  Cir. 2004) 380 F.3d 316.  Such dismissals are disfavored and are not routinely granted.

26  Test Masters Educ. Serv. V. Singh (5th Cir. 2005) 428 F.3d 559,570.  To this end, a claim

27  will only be dismissed under Rule 12(b)(6) if it appears beyond doubt that the pleader

28  can prove no set of facts in support of the claim that would entitle the pleader to relief.

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE COMPLAINT**

1  Conley v. Gibson (1957) 355 U.S. 41, 78 S.Ct. 99.

2      Neither will the court dismiss a claim under Rule 12(b)(6) merely because the

3  court doubts the pleader's allegations or suspects that the pleader will ultimately not

4  prevail at trial.  See Ideal Steel Supply Corp. v. Anza (2d Cir. 2004) 373 F.3d 251, 264.

5  Indeed, the courts are particularly hesitant to dismiss at the pleading stage those claims

6  advancing novel legal theories, reasoning that the claims could be better examined

7  following development of the facts through discovery.  See McGary v. City of Portland

8  (9th Cir. 2004) 386 F.3d 1259, 1270.

9      Lastly, plaintiffs need not anticipate the defendants' likely defenses, nor attempt to

10  preemptively " plead around" them in the complaint.  See Hollander v. Brown (7th Cir.

11  2006) 457 F.3d 688.  The viability of plaintiff's claims is not dependent upon whether the

12  defendant has a defense.  See United States v. Northern Trust Co. (7th Cir. 2004) 372

13  F.3d 886, 888.  Thus, plaintiff's failure to "plead around" a likely defense is typically not a

14  proper basis for dismissal.  See Xechem, Inc. v. Bristol-Myers Squibb Co. (7th Cir. 2004)

15  372 F.3d 899, 901.

16          **C.      Rule 12(b)(7):  Dismissal For Failure To Join A Rule 19 Party**

17      A case will be dismissed if there is an absent party under Rule 19, without whom

18  relief cannot be granted or whose interest in the dispute is of such a nature that to

19  proceed without that party could prejudice that party or others.  See Hammond v.

20  Clayton (7th Cir. 1996) 83 F.3d 191, 195.

21      The courts are hesitant to dismiss for failure to join absent parties, and will not do

22  so on a vague possibility that unjoined persons may have an interest in the litigation.

23  See Sever v. Glickman (D.Conn.2004) 298 F.Supp.2d 267, 275.  In ruling on a Rule

24  12(b)(7) motion to dismiss, the court is to apply the standards  of Rule 19(a) to determine

25  whether joinder is essential and, if so, whether the factors of Rule 19(b) make dismissal

26  appropriate.  See HS Resources, Inc. v. Wingate (5th Cir. 2005) 327 F.3d  432, 439.  The

27  court will also accept plaintiff's allegations as true in ruling on the motion, and will draw

28  all reasonable inferences in the plaintiff's favor.  See Rotec Indus., Inc. v. Aecon Group,

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE COMPLAINT**

1 | Inc. (N.D.Ill.2006) 436 F.Supp.2d 931, 933.

2 | **V.**

3 | **ARGUMENT**

4 | **A.  A RULING GRANTING PLAINTIFF'S MOTION TO REMAND BACK TO**
5 | **STATE COURT WILL MAKE DEFENDANT'S 12(b) MOTIONS TO DISMISS MOOT**

6 | Plaintiff has pending a motion to remand this case back to State Court on the

7 | grounds that there is no federal question at issue.  If the court grants the motion, then the

8 | Commission's motion to dismiss on various grounds will be moot.  In this regard, the

9 | Court should rule on the motion to remand first.

10 | **B.  PLAINTIFF HAS THE CAPACITY TO SUE FOR THE SOUGHT AFTER EQUITABLE RELIEF**

11 |
12 | **1.  The Defendant's Claim Of Lack Of Subject Matter Jurisdiction Is Inconsistent With Its Removal Petition**

13 | When the Commission removed this case to the U.S. District Court, it claimed that

14 | federal question jurisdiction exists, because the Tribal Compact forming the basis of the

15 | Commission's duties is governed by federal law.  While Plaintiff disagrees with that

16 | contention, the point is that the Commission now asserts in its motion to dismiss that the

17 | Court lacks subject matter jurisdiction, because the Miwok Tribe is not federally

18 | recognized, and that the Compact bars 3rd party  claims for compensatory damages (See

19 | pg. 2 of Defendant's Motion to Dismiss, paragraphs 1 and 2).

20 | These contentions are not only inconsistent with the Commission's position on

21 | removal, but they are factually and legally erroneous.

22 | Plaintiff agrees that this Court does not have jurisdiction, but only in the context of

23 | opposing the original removal action.  No federal question is at issue, since the Plaintiff

24 | only seeks declaratory and injunctive relief with respect to the Commission's duty under

25 | State law to distribute to Plaintiff its RSTF money.

26 | ///

27 | ///

28 | ///

**2.  The U.S. District Court In Washington D.C. Has recognized Plaintiff As Having The Capacity To Sue**

In its Decision, the U.S. District Court in <u>California Valley Miwok Tribe v. The United States</u> (D.C.D.C.2006) 424 F.Supp.2d 197, stated:

> "The California Valley Miwok Tribe, an Indian Tribe 'recognized and eligible for funding and services' pursuant to Section 104 of the Act of November 2, 1994,…seeks declaratory and injunctive relief against what it calls federal government interference with its internal affairs…."

424 F.Supp.2d at 197.  At no time did the U.S. government move to dismiss the Miwok Tribe's complaint, because the Tribe purportedly lacked the capacity to sue.  In its Decision, the U.S. District Court made no mention or ruling that the Tribe had no capacity to sue, even though the Decision contains a factual rendition on how the Tribe reached the point of being recognized by the BIA as "unorganized", because of the Tribe's dispute with the BIA over its constitution and the ongoing Tribal leadership dispute.  Instead, the U.S. District Court began its written Decision with the undisputed observation that the Tribe filed suit as a Tribe that was "recognized and eligible for funding and services" under federal law.

The Commission relies heavily on the U.S. District Court's Decision in advancing various theories in its Motion to Dismiss.  Indeed, the Commission has made it clear in its brief that one of the main reasons it has decided to withhold RSTF money from the Plaintiff, is because of the U.S. District Court's Decision.  Thus, the Commission should be estopped from arguing the Plaintiff lacks the capacity to sue in this lawsuit, while at the same time trying to reap the benefits of a ruling on Plaintiff's prior lawsuit where the Plaintiff's capacity to sue was never challenged, but was instead established.

**3.  Plaintiff's Breach Of Contract Damage Claims Have Been Dismissed**

The Commission further argues that Plaintiff has no capacity to sue for breach of contract or compensatory damage claims, because the Compact does not permit such claims.  This is no longer a valid argument, because the Plaintiff has dismissed its

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE COMPLAINT**
08 CV 0120 BEN AJB

1   Breach of Contract and Breach of Fiduciary Duty claims.  As stated, Plaintiff's suit is for

2   equitable relief with respect to the Commission's duties to disburse RSTF money under

3   the facts in this case.

### 4.  The Federal Government Has Never Withdrawn Its Recognition Of The Miwok Tribe

6          Pointing to the U.S. District Court Decision, the Commission argues that because

7   the federal government purportedly does not recognize the Tribe as "organized", the

8   Plaintiff lacks the capacity to sue.  It further argues that Plaintiff further lacks the capacity

9   to sue, because the federal government has rejected Sylvia Burley as a person of

10  authority for the Tribe, based upon a letter dated December 14, 2007 from the BIA

11  (Defendant's Ex. 2 for Req. for Judicial Notice).  These contentions are without merit and

12  a misreading of both the U.S. District Court's Decision and the BIA letter of December

13  14, 2007.

14         The U.S. District Court in Miwok, supra, made no ruling or determination that the

15  Miwok Tribe was not federally recognized.  Nor did it rule that the Tribe had no

16  government-to-government relationship with the federal government.  Its Decision was

17  limited to whether the Tribe in its suit had a legally cognizable claim for "federal

18  government interference with its internal affairs".  No other issue was before the Court at

19  that time.

20         As stated, the Miwok Tribe is a federally recognized Tribe, not because of what

21  the BIA says about it.  Rather, it is a recognized Tribe by virtue of it having been placed

22  on the "Federally Recognized Indian Tribe List Act of 1994".  (See page 2 of Decision,

23  attached as Plaintiff's Exhibit).  The Commission has not shown that the federal

24  government has ever removed the Tribe from that list.

25         The Commission then points to a letter dated December 14, 2007 from the BIA to

26  Sylvia Burley, returning her application for the Tribe for P.L. 93-638 money, i.e., federal

27  contract money.  (Defendant's Ex. 2).  It also attaches an appellant brief from an attorney

28  from the BIA, wherein the attorney argues that the December 14, 2007 letter from the

- 9 -

BIA to Burley "makes it clear" that Burley is not the Tribe's official representative. (Defendant's Ex. 1). The appellant brief (Defendant's Ex. 1) is, however, purely argumentative and cannot be considered as fact. It lack proper foundation and is hearsay. Moreover, the appellate counsel's statements are not an official statement of policy from the BIA. Indeed, the December 14, 2007 letter from the BIA doesn't say that the BIA does not consider Burley anymore as a person of authority for the Miwok Tribe.

The December 14, 2007 letter from the BIA only says that the BIA could not accept the application for 638 funding for the Tribe, because the Tribe was not "organized". It stated:

> "…[C]onsideration to <u>contract</u> federal funds to operate Bureau of Indian authorized programs will only be given to an application submitted by [a] federally recognized tribe <u>with a recognized governing body</u>…

> Because we do not recognize any current governing body for the California Valley Miwok Tribe, we are unable to accept the proposal for the above stated reason…" (Emphasis added).

The Commission's interpretation of this letter is strained at best. The letter says nothing about Ms. Burley having no authority to act for the Tribe.

As shown by this letter, disbursement of P.L. 93-638 federal funds requires (at least according to the BIA) that the recipient Tribe be organized. Being merely federally recognized is apparently not sufficient. While the Miwok Tribe is indeed federally recognized, it presently suffers from being unorganized. It is a federally recognized, "unorganized" Tribe, with Silvia Burley as its representative. However, according to the BIA, in order for the Tribe to receive 638 funding, it must be organized. The reason for this obviously is because the Tribe must enter into a contract with the BIA for such funding. (<u>See</u> Letter of December 14, 2007 from BIA, first paragraph: "…we are returning your application to <u>contract</u> FY 2008 funding from the Bureau of Indian Affairs, under P.L. 93-638…"). No such requirement exists with respect to RSTF money under California State law. Indeed, Non-Compact Tribes do not have to enter into a contract each year, or at all, in order for them to receive RSTF money. It is for this reason that

- 10 -

the Commission cannot refuse to continue RSTF disbursements to the Tribe because the Tribe is not organized.  That may be a purported reason for the BIA not to contract with the Tribe for 638 funding, but it cannot be the reason for the Commission to withhold RSTF money.  The standards and requirements are entirely separate and different.  The source of funding for 638 funding is federal, whereas the source of funding for RSTF money is the California State Treasury.  "Apples and oranges".

As stated more fully below, the Tribe's status as "unorganized" does not disqualify it from RSTF disbursements.  Indeed, the Commission has admitted as much in its prior pleading in opposing Yakima Dixie's TRO.  It paid out these moneys to Sylvia Burley as the Tribe's authorized or "official" representative.  It has pointed to no evidence that the BIA has stated that it no longer considers Ms. Burley as the Tribe's official representative.  According to the Compact, the Commission must distribute the accumulated RSTF money to Ms. Burley, whether or not the Tribe is "organized", as long as it can be shown that Ms. Burley remains as the Tribe's representative.  (See Section 2.21 of Compact:  "'Tribe' means a federally-recognized Indian tribe, or an authorized official or agency thereof").  The Compact does not require that the Tribe be organized in order to qualify for RSTF money.

### C.    PLAINTIFF IS NOT SEEKING A DETERMINATION OF ITS STATUS AS A TRIBE IN THIS ACTION

#### 1.    The Defendant has Misrepresented The Holding In The U.S. District Court Decision In "Miwok v. USA"

In an effort to bring in a res judicata argument where none exists, the Commission makes several misstatements in its moving papers.  With respect to the U.S. District Court Decision  in "Miwok v. USA", the Commission falsely asserts that the Court "upheld the federal government's determination that [Sylvia] Burley and her government did not represent the Miwok and that ruling is now on appeal." (pg. 8, lines 23-24 of Defendant's P/A's).  It then goes on to argue:

> "A decision in that case will have res judicata effect on issues
> regarding the  status of Burley's government and her capacity
> to represent the Miwok because res judicata bars relitigation in a
> subsequent proceeding of all issues that were raised or that could
> have been raised in a prior proceeding  between the parties…."

(Ibid. at lines 26-28, and line 1, page 9).  A quick and cursory review of that Decision will reveal that the U.S. District Court made no such holding or finding.

Moreover, nowhere in the Complaint in this case does the Plaintiff seek a judicial determination concerning its status as a Tribe.  That is simply not what this case is about.

### 2.  Plaintiff's Complaint Focuses Solely On The Commission's Duty Under State Law To Distribute RSTF Money To Plaintiff

As stated, the main thrust of Plaintiff's lawsuit is for equitable relief in the form of a judicial declaration of Plaintiff's rights to RSTF money and the Commission's duties to distribute such funds to the Plaintiff, as well as an injunction restraining the Commission from withholding these moneys and compelling distribution.  There are no other issues to be decided.

Specifically, Plaintiff does not ask the Court to make a judicial determination of its Tribal status.   The Commission had made that mistake previously, when it filed an interpleader action.  The State Superior Court dismissed that suit, because, instead of seeking a judicial determination of its duties with respect to disbursement of the RSTF funds, the Commission only sought a judicial determination of the Tribe's status as a federally recognized tribe, and who was authorized to represent it.  (See Minute Order on Ruling dismissing the Commission's interpleader action, Plaintiff's Ex. 3).  The Plaintiff is not doing so here, however.

### D.  PLAINTIFF MERELY SEEKS A JUDICIAL DETERMINATION OF THE COMMISSION'S DUTY TO PAY RSTF MONEY TO "UNORGANIZED", FEDERALLY-RECOGNIZED, NON-COMPACT TRIBES, OR THEIR AUTHORIZED REPRESENTATIVE

It is undisputed that Plaintiff is a federally-recognized tribe.  The Commission has

1  admitted it is.  (See the Declaration of Gary Qualset, Defendant's Ex.3, Appendix).  The

2  U.S. District Court in "Miwok v. USA" concluded it was in its Decision (See 1st paragraph

3  of the Decision).  The BIA has never withdrawn its recognition of the Tribe.  Most

4  importantly, the Tribe remains on the "Federally Recognized Indian Tribe List Act of

5  1994", and has never been taken off of that list.

6         The dispute here centers around the Commission's mistaken belief that it cannot

7  continue paying Plaintiff RSTF money, because the Tribe is not "organized" and thus

8  purportedly not entitled to federal  P.L. 93-638 contract money from the BIA.  While that

9  may be the purported standard for the BIA in granting 638 federal contract money to

10  various Indian Tribes, that is not the standard for the Commission to be guided by in

11  distributing RSTF money from the State Treasury.  The Compact contains no provision

12  requiring a Non-Contract Tribe to be "organized" as a condition for entitlement to RSTF

13  money.  Indeed, Non-Compact Tribes are not required to enter into a contract with the

14  Commission or the State to get RSTF money.  The Plaintiff seeks a judicial declaration

15  that the Commission must release its withheld RSTF money to the Tribe via Sylvia

16  Burley, the Tribe's authorized representative, in the same manner as it has been doing

17  before.

18         **E.    THE COMPACT DOES NOT BAR PLAINTIFF, A NON-COMPACT
               TRIBE, FROM SUING THE COMMISSION FOR EQUITABLE RELIEF**

19

20         The Commission argues that the Compact bars the Plaintiff from enforcing the

21  Compact as a third-party beneficiary.  This contention is misleading.

22         Section 4.3.2(a)(i) specifically provides in pertinent part as follows:

23              "…Non-Compact Tribes shall be deemed third party beneficiaries of
               this and other compacts identical in all material respects…."

24

25         Section 15.1 then reads as follows:

26              "Third Party Beneficiaries.  Except to the extent expressly provided
               under this Gaming Compact, this Gaming Compact is not intended to,

27              and shall not be construed to, create any right on the part of a third
               party to bring an action to enforce any of its terms. (Emphasis added).

28

- 13 -

1  The right to enforce any of the terms of the Compact is limited to the State, the Compact

2  Tribes, and the Non-Compact Tribes as third party beneficiaries under Section

3  4.3.2(a)(i).

4        Suit is limited to equitable relief, in the form of injunctive and declaratory relief,

5  and specific performance. (<u>See</u> Section 9.4(a)(2) of Compact).

6        The bar to third party suits under Section 15.1 of the Compact, does not extend to

7  Non-Compact Tribes seeking payment of RSTF money under Section 4.3.2, because

8  Section 15.1 specifically provides:  "Except to the extent expressly provided under this

9  Gaming Compact…"  Section 4.3.2 is one of those exceptions, thus permitting Plaintiff to

10  sue the Commission for declaratory relief with respect to the Tribe's entitlement to RSTF

11  money.

12        The Plaintiff, by virtue of its dismissal of its breach of Contract and Breach of

13  Fiduciary Duty claims, no longer seeks (and really never did seek) compensatory

14  damages.  Thus, by its own terms, the Compact permits the Plaintiff, a Non-Compact

15  Tribe, deemed to be a third-party beneficiary under Section 4.3.2 of the Compact, to sue

16  <u>for equitable relief</u> to enforce the terms of the Compact.  However, here Plaintiff is not

17  technically doing that, even though it is entitled to do so.  Instead, Plaintiff is suing for

18  equitable relief <u>against the Commission</u>, seeking a judicial determination of the

19  Commission's duties regarding disbursement of RSTF money. The terms of the Compact

20  are indirectly implicated, because they serve as a basis for the Commission's duties.

21  Having the Plaintiff categorized as a third-party beneficiary is more of an effort to provide

22  Non-Compact Tribes with standing to obtain equitable relief with respect to the RSTF

23  money.

24        The Plaintiff is not attempting to enforce the Compact to obtain monetary or

25  compensatory damages.

26  ///

27  ///

28  ///

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE COMPLAINT**

08 CV 0120 BEN AJB

**F.    PLAINTIFF'S BREACH OF CONTRACT AND BREACH OF FIDUCIARY DUTY CLAIMS HAVE BEEN DISMISSED, MAKING THE COMMISSION'S "NO COMPENSATORY DAMAGE" ARGUMENT MOOT**

Since the Plaintiff has dismissed its Breach of Contract and Breach of Fiduciary Duty claims, the Commission's argument in Section III of its brief is moot.

As stated, the Compact permits the Plaintiff to sue for third-party <u>equitable relief</u>, but not for third-party <u>compensatory damages</u>.  (<u>See</u> Sections 15.1, 4.3.2(a)(i), and 9.4(a)(2)).

**G.    PARTIES TO THE TRIBE'S LEADERSHIP DISPUTE ARE NOT NECESSARY AND INDISPENSABLE PARTIES**

**1.   <u>The Commission Has Already Admitted That Its Decision To Distribute RSTF Money Should Not Be Affected By The Present Tribal Leadership Dispute</u>**

The Commission argues that parties to the Tribal leadership dispute need to be joined as "necessary and indispensable parties" under Rule 19, because purportedly these "other parties claim a right to represent the Miwok [Tribe] and, hence claim a right to distributions from the RSTF", citing paragraphs 7 and 50 of the Complaint. (Defendant's P/A's, pg. 14, lines 5-6). This contention is without merit and a gross misreading of the Plaintiff's Complaint.

Nowhere in paragraphs 7 or 50, or <u>anywhere</u> in the Complaint, is there any allegation that certain individuals involved in the Tribal leadership dispute are claiming a right to distribution from the RSTF.  The Commission's representation in that regard is completely false.

In addition, the Commission falsely asserts that "the complaint alleges that certain DOE defendants have also claimed leadership of the Miwok[Tribe]." (Defendant's P/A's, pg. 14, lines 20-21).

Moreover, the Commission has already previously admitted in Court papers that its decision to distribute RSTF money to the Plaintiff should not, and cannot, be affected by the present Tribal leadership dispute.  In a sworn declaration, Gary Qualset, the then Deputy Director of the Licensing and Compliance Division of the Commission, stated in

1  2004 as follows:

2                                               ***

3        Until recently, when a tribal leadership dispute has arisen, and a BIA
       leadership decision has been administratively appealed, it has been the
4       practice of the Commission to hold RSTF checks during the pendency of
       the appeal.
5
          Recently, the Commission determined that it should change this
6       practice to conform to the practice of the BIA and send the RSTF funds to
       the Tribe via the tribal representative with whom the BIA conducts
7       government-to-government relations on an ongoing basis, regardless of
       whether there is a challenge to tribal leadership.
8
          It appears to the Commission that Sylvia Burley is presently
9       recognized as the tribal representative for the California Valley Miwok
       Tribe.
10

11  (Declaration of Gary Qualset, pg. 3, paragraph 11-13, Defendant's Ex. 3).

12          **2.    The Commission's Duty To Disburse RSTF Money Has Nothing
              To Do With The Merits Of The Tribal Leadership Dispute**
13

14          As shown, the Compact does not bar the Plaintiff from receiving RSTF funds

15  because it is "unorganized".  So long as it is a federally-recognized Tribe with an official

16  representative, it is entitled to RSTF money, and the Commission has no discretion to

17  withhold such funding, where such facts are established.  In addition, nothing in the

18  Compact bars a Non-Compact Tribe from receiving RSTF funds, because of an existing

19  Tribal leadership dispute.

20          As stated, Plaintiff's suit focuses on the Commission's duty to disburse RSTF

21  money to Non-Compact Tribes who are "unorganized".  It does not seek to enforce the

22  terms of the Compact for money damages, nor does it seek to resolve a Tribal

23  leadership dispute.  Accordingly, the parties to the present Tribal leadership dispute are

24  not "necessary and indispensable parties" under Rule 19.  See People ex rel. Lungren v.

25  Community Development Agency (1997) 56 CA4th 868.

26          The provisions in California's Compulsory Joinder Statute, CCP Section 389, are

27  derived from Rule 19 of the FRCP.  As a result, California State Courts look to federal

28  precedents in resolving joinder disputes.  Countrywide Home Loans, Inc. v. Superior

1   Court (1999) 69 CA4th 785, 792.  Such State Court cases are therefore helpful in

2   resolving joinder disputes in federal court, where remand is likely for improper removal.

3        The case of Community Redevelopment Agency, is instructive.  There, a certain

4   redevelopment agency for Palm Springs, California ("Agency") contracted with the Agua

5   Caliente Band of Cahuilla Indians ("Tribe") to sell certain land in Palm Springs to the

6   Tribe to build gambling casinos, in exchange for a share of the gambling proceeds.

7   Because the contract essentially prevented the State from exercising complete civil and

8   criminal jurisdiction over the transferred land and casino operations, the State Attorney

9   General filed a complaint to set aside the contract.

10        The Agency in Community Redevelopment Agency, supra, aligning itself with the

11  interests of the Tribe, demurred, and argued that the Tribe was a necessary and

12  indispensable party to the "contract".  It argued because of the Tribe's sovereign

13  immunity status, the action had to be dismissed.  The Court of Appeal rejected this

14  contention and reversed the trial court's judgment of dismissal for nonjoinder of the

15  Tribe.  It held that while the Tribe was a "necessary" party (because the suit was to set

16  aside a contract to which it was a party), "equity and good conscience" dictated that it

17  was not an indispensable party.  The Court reasoned that the Tribe was not prejudiced

18  by nonjoinder, largely because the sought after relief only addressed the scope of the

19  Agency's authority (in entering into such contracts and putting public land beyond the

20  reach of the State's police power), and thus would only incidentally impact or adjudicate

21  the Tribe's interests.  Moreover, public policy or "the interest of the public" weighed in the

22  Court's decision, in light of the Agency's attempt to "permanently relinquish [the State's]

23  interest in property within its control."  56 CA4th at 883.

24        Similarly, plaintiff's sought-after relief merely addresses the duty of the

25  Commission to disburse RSTF money.  It has nothing to do with any Tribal leadership

26  dispute.  Neither does Plaintiff's suit seek a determination of the Tribe's status.

27        For these reasons, the parties to the Tribe's present leadership dispute are not

28  necessary or indispensable parties.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE COMPLAINT

**3**  **The Plaintiff Has Not Alleged That Other Persons In The Tribal Leadership Dispute Are Making Competing Claims To The Withheld RSTF Funds**

As stated, Plaintiff  has not alleged in the Complaint that anyone involved in the Tribal leadership dispute is making competing claims for the RSTF money, so as to make them necessary and indispensable parties.

**H.**  **THE COMMISSION'S 11TH AMENDMENT IMMUNITY ARGUMENT IS MOOT, IN LIGHT OF THE PLAINTIFF'S DISMISSAL OF THE BREACH OF CONTRACT AND BREACH OF FIDUCIARY DUTY CLAIMS**

The Commission's 11th Amendment immunity argument in Section V of its brief, is premised upon a claim for compensatory or monetary damages.  However, since Plaintiff has withdrawn its Breach of Contract and Breach of Fiduciary Duty claims, this argument is now moot.

**VI.**

**CONCLUSION**

For the foregoing reasons, the Commission's motion to dismiss should be denied.


DATED:  February 20, 2008          s/ Manuel Corrales, Jr.

Manuel Corrales, Jr.
Attorney for Plaintiff
The California Valley Miwok Tribe

- 18 -

1

<u>**CERTIFICATE OF SERVICE**</u>

2

3     **Case Name:**          **California Valley Miwok Tribe v. California Gambling Control**
                              **Commission**
4
      **Court:**              **United States District Court, Southern District,**
5                             **Case No. 08-CV-0120 BEN AJB**

6

7     I Declare:  On **February 20, 2008**, I electronically filed the following documents:

8
              1.  **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE**
9                 **COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**

10

11    <u>**ELECTRONIC MAIL NOTICE LIST**</u>
      I have caused the above-mentioned document(*s) to be electronically served on the
12    following person(s) who are currently on the list to receive e-mail notices for this case:

13               Peter.Kaufman@doj.ca.gov

14

15    <u>**MANUAL NOTICE LIST**</u>
      The following are those who are **not** on the list to receive e-mail notices for this case
16    (who therefore require manual noticing):

17               NONE

18    I declare under penalty of perjury under the laws of the State of California and the
      United States of America the foregoing is true and correct, and that this declaration was
19    executed on **February 20, 2008,** at San Diego, California.

20      __Manuel Corrales, Jr.____                    _____s/ Manuel Corrales, Jr.___

21          Declarant                                      Signature

22

23

24

25

26

27

28

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE COMPLAINT**
08 CV 0120 BEN AJB