1
2
3
4
5
6
7
8  IN THE UNITED STATES DISTRICT COURT
9  FOR THE SOUTHERN DISTRICT OF CALIFORNIA
10

| | | |
|---|---|---|
| 11 CALIFORNIA VALLEY MIWOK TRIBE, | ) | No. 08-CV-0120 BEN AJB |
| 12 Plaintiff, | ) ) | TABLE OF CONTENTS TO EXHIBITS |
| 13 V. | ) ) | Date: March 10, 2008 |
| 14 THE CALIFORNIA GAMBLING CONTROL COMMISSION; AND DOES 1 THROUGH 50, 15 INCLUSIVE, | ) ) ) ) | Time: 10:30 a.m. Courtroom: 3 Judge: Hon. Roger T. Benitez |
| 16 Defendants. | ) ) | |
| 17 _____ | ) | |

18  EXHIBIT A        A1-A16

19  EXHIBIT B        B17-B20

20  EXHIBIT C        C21-C22

21  EXHIBIT D        D23-D25

22
23
24
25
26
27
28

EXHIBIT A

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

```
CALIFORNIA VALLEY MIWOK TRIBE,    :
                                  :
         Plaintiff,               :
                                  :
      v.                          :  Civil Action No. 05-0739 (JR)
                                  :
USA, et al.,                      :
                                  :
         Defendants.              :
```

**MEMORANDUM**

The California Valley Miwok Tribe, an Indian tribe "recognized and eligible for funding and services" pursuant to Section 104 of the Act of November 2, 1994, Pub. L. 103-454, 108 Stat. 4791, see 70 FR 71194, seeks declaratory and injunctive relief against what it calls federal government interference with its internal affairs. The government moves to dismiss for failure to state a claim upon which relief can be granted. Dkt. #15-1. For the reasons set forth below, the government's motion to dismiss [Dkt. #15-1] will be granted.

1.  **Background**

In 1915, a federal Indian Agent located a cluster of thirteen Miwork living on 160 acres in or near the city of Sheep Ranch, California. Dkt. #18-1 at 3. The government purchased two of the 160 acres, in trust for the Miwok, in April 1916. The two-acre parcel came to be known as "Sheep Ranch Rancheria." The number of people living there dwindled, to the point that, when

A1



EXHIBIT
A

the 1934 Indian Reorganization Act, 25 U.S.C. §§ 461-479, was adopted, the government recognized only one individual as a Tribe member. Dkt. #18-1 at 4.

In 1965, the government (i.e., the Bureau of Indian Affairs - BIA) began investigating the possibility, under the federal legislation known as the Rancheria Act, of terminating the Sheep Ranch Rancheria of Miwok Indians. P. L. 85-671, 72 Stat. 619; amended by P.L. 88-419, 78 Stat. 390.[1] A December 30, 1965 list, prepared pursuant to the Rancheria Act, named Mabel Hodge Dixie as the only Indian living on Sheep Ranch. Id. In 1966, finding no evidence that Lena Shelton, her brother Tom Hodge, her daughter Dora Shelton Mata or her two granddaughters had ever lived on the Rancheria, the government denied their claims to membership in the Tribe, conveyed Sheep Ranch to Mabel Dixie by deed, and terminated the Tribe. Id. at 5.

In 1994, Congress enacted the Federally Recognized Indian Tribe List Act of 1994, Pub. Law 103-454, and the Tribe's name was placed on the list of federally recognized tribes. Dkt. #18-1 at 8. On September 24, 1998, the Superintendent of the

---

[1]    The Rancheria Act terminated federal supervision in the State of California, and the Department of the Interior oversaw the distribution of the land and assets involved in the termination. As a result, numerous Indian land parcels in California passed out of federal ownership and were no longer held in trust for the tribes by the United States Government. See http://www.nigc.gov/nigc/documents/land/drake.jsp.

A 2

Bureau of Indian Affairs Central California Agency (BIA CCA) advised Yakima Dixie, as tribal chairman, that Yakima Dixie, Melvin Dixie, Silvia Burley,[2] Rashel Reznor, Anjelica Paulk, and Tristan Wallace "possess[ed] the right to participate in the initial organization of the Tribe." Id. The BIA letter recommended a general council form of government for the initial organization process. On November 5, 1998, by Resolution #GC-98-01, the Tribe established the tribal council. Dkt. #1 at 5.

On April 20, 1999, for reasons not explained in the record, Yakima Dixie resigned as tribal chairman. Dkt. #18-1 at 8. On May 8, 1999, the Tribe held a general election. Yakima Dixie participated in the unanimous vote to elect Silvia Burley as chairperson and to ratify the Tribe's constitution. Subsequently, he participated in several more tribal council meetings and signed several documents as vice-chairman. Dkt. #18 at 8-9. On June 25, 1999, the BIA CCA recognized Silvia Burley as tribal chairperson. Id. at 9.

---

[2]    The relationship between Yakima Dixie and Silvia Burley is explained only by Mr. Dixie, a proposed intervenor whose motion to intervene is mooted by this decision. He alleges that he is the son of Mabel Hodge Dixie and the putative hereditary chief of the Tribe and BIA-recognized tribal representative, and that he was approached by Silvia Burley in 1996. Ms. Burley was a distant relative who was "tribeless." Dkt. #19 at 5. She asked that he give her and her daughters tribal status so that they could receive educational and medical benefits from the government. Mr. Dixie agreed. Id.

A 3

On July 20, 1999, the Secretary of the Interior and the Tribe entered into a "self-determination contract" that would provide funding for tribal government activities, and, on September 30, 1999, the Tribe became a "contracting Tribe" pursuant to the Indian Self Determination Act, PL 93-638. Dkt. #18-1 at 9. On October 9, 1999, the Tribe adopted an "Interim Operations Authorities and Rights Resolution." Dkt. #1 at 5.

At some time in late 1999, a leadership dispute developed within the Tribe. Apparently[3] responding to an inquiry by vice-chairperson Yakima Dixie, the superintendent of the BIA CCA office wrote on February 4, 2000 that only Tribe members over the age of 19 (Mr. Dixie, Silvia Burley, and Rashel Reznor) were entitled to participate in the organization of the Tribe, and that all issues involving tribal leadership were internal matters to be resolved by the Tribe. Dkt. #1 at 5.

Yakima Dixie apparently then made a complaint within the Tribe about his removal from tribal leadership. On February, the Tribal Council notified him that he had 30 days to initiate a review of his claims regarding his resignation. There is no record of a timely response. Dkt. #1 at 5.

On March 6, 2000, the Tribe ratified its Constitution. A March 7, 2000 letter from the Superintendent of the BIA CCA to

---

[3]    The word "apparently," which appears more than once in this opinion, reflects the state of the record.

- 4 -

A 4

Silvia Burley indicated that, as of that date, the BIA believed the Tribe's General Council to consist of Mr. Dixie, Ms. Burley, and Ms. Reznor, and stated that the leadership dispute between Mr. Dixie and Ms. Burley was an internal tribal matter.  The BIA informed the tribe that the appropriate forum for resolving the tribal leadership dispute was the Tribal General Council, and that, generally, the rights of others to participate in the governance of the Tribe should be determined by the appropriate Tribal Forum.  The BIA stated that, as a matter of federal law and policy, there was no basis for agency involvement in the leadership dispute.  Dkt. #1 at 6.

The Tribe then requested that the BIA CCA review the Tribe's Constitution, and that the BIA CCA set up a secretarial election, pursuant to the Indian Reorganization Act, 25 U.S.C. § 476, so that the Tribe could become fully "organized" under federal law.  On March 9, 2000, the BIA CCA acknowledged receipt of the Tribe's requests.  Under the Act, the BIA CCA was required to conduct the requested election no later than 180 days after the Tribe's request.  In this case, that time period would have ended on September 7, 2000 – 180 days after the BIA's acknowledgment letter.  Dkt. #1 at 6.

On March 16, 2000, the Tribe passed a resolution that Yakima Dixie had waived his right to contest his resignation as Tribal chairperson by failing to respond to the February 9

- 5 -

A 5

notice.  Dkt. #1 at 6.  A July 12, 2000 letter from the BIA CCA
to Ms. Burley recognized her as chairperson of the Tribe, with
the vice chairperson seat empty and Ms. Reznor as the
secretary/treasurer.  Dkt. #1 at 6.

On June 7, 2001, when the BIA CCA had not conducted the
secretarial election that should have been done nine months
earlier, Ms. Burley withdrew the Tribe's request.  Dkt. #15-1 at
6.  On July 18, 2001, Yakima Dixie sued the Tribe in the Eastern
District of California challenging its membership and leadership.
(The suit was dismissed in 2002.)  Dkt. #15-1 at 11.

Up to this point, the confusion that surrounded the
Miwok Tribe seems attributable to internecine squabbling among a
very small group of people.  Now, however, the BIA became active,
and its activity multiplied the confusion.  In September 2001,
the Tribe adopted a new version of its constitution, and sent it
to the BIA CCA.  On October 31, 2001, the BIA acknowledged
receipt of the Tribe's new constitution, but did not approve it,
stating:

> The Agency will continue to recognize the Tribe *as an
> unorganized Tribe* and its elected official *as an interim
> Tribal Council* until the Tribe takes the necessary steps to
> complete the Secretarial election process.

Dkt. #18-1 at 10 (emphasis added).  (A few months later, however,
the BIA CCA advised Ms. Burley that the provision in the Tribe's
PL 93-638 contract requiring the tribe to develop a tribal
constitution subject to the IRA's process would be deleted until

- 6 -

A 6

an official opinion supporting that requirement was issued.  No
such opinion has been issued.)  In November 2003, the BIA
acknowledged the existence a "government-to-government
relationship" with the Tribe through the tribal council that
Ms. Burley chaired.  In January 2004, the BIA CCA granted the
Tribe "Mature Contract Status" with the federal government, Dkt.
#18-1 at 10.  In February 2004, the Tribe provided a new copy of
its Constitution to the BIA, not for review, but only for the
BIA's records.

Enter the Native American Technical Corrections Act of
2004.  Enacted in March 2004, the statute added a new subsection
(h) to Section 16 of IRA.  26 U.S.C. § 476(h).  Subsection (h)
states:

> (h) Tribal sovereignty. Notwithstanding any other provision
> of this Act—
>
> > (1) each Indian tribe shall retain
> > inherent sovereign power to adopt governing
> > documents under procedures other than those
> > specified in this section; and
>
> > (2) nothing in this Act invalidates any
> > constitution or other governing document
> > adopted by an Indian tribe after June 18,
> > 1934, in accordance with the authority
> > described in paragraph (1).

Almost immediately after the enactment of subsection
476(h), on March 26, 2004, for reasons unexplained in the record,
the BIA advised the Tribe by letter that it still considered the
Tribe to be unorganized, and that the Tribe should only draft

- 7 -

A7

governing documents "after the greater tribal community is initially identified ... [so that] the Tribe's base and membership criteria [are] identified." **Letter of March 26, 2004; Dkt. #1 at 9-10.** That letter recognized Silvia Burley only as "a person of authority," not the head of an organized tribe.

On February 11, 2005, the Acting Assistant Secretary for Indian Affairs dismissed (as untimely) an administrative appeal that Yakima Dixie had filed more than two years earlier. The dismissal decision letter stated:

- that the BIA had rejected the Tribe's constitution;
- that the BIA did not recognize Silvia Burley as Tribal Chairperson, but as a "person of authority" within the Tribe;
- that the BIA would not recognize anyone as the Tribal Chairperson until the tribe had organized as described in the March 26, 2004 letter; and
- that the BIA did not recognize the tribal hearing process as a legitimate tribal forum.

Dkt. #18-1 at 11. It is this letter that plaintiffs now assert constituted final agency action, reviewable under the APA.

In March 2005, BIA CCA convened a series of meetings, attended by Mr. Dixie, his tribal consultants, attorneys, and prospective tribal members, and representatives of Ms. Burley (who did not participate in person). The principal subjects discussed were the identification of putative members of the Tribe; the organizational methods that the Tribe should be considering; Yakima Dixie's concerns about the current leadership's use of government PL 93-638 contract funds; and the

- 8 -

A8

Burley faction's use of non-gaming revenues.  Dkt. #31-1 at 3.
The meetings did not resolve the Tribe's leadership disputes,
and, on August 30, 2005, the Tribe "disenrolled" Yakima Dixie.

On July 19, 2005, the BIA, acting upon its February 11
letter, unilaterally suspended the Tribe's federal contract.
Dkt. #29-1 at 10.  On August 4, 2005, the California Gambling
Control Commission notified the Tribe that it would be
withholding distributions from the California Revenue Sharing
Trust Fund until such time as the tribal leadership was firmly
established.[4]  Dkt. #18-1 at 12.  On August 19, 2005, the BIA
again modified the Tribe's contract, only partially revoking the
July changes.

On October 26, 2005, Raymond Fry, BIA CCA Tribal
Operations Officer, returned a tribal resolution to Ms. Burley
without having taken the action requested in the resolution,
asserting that there was no "government-to-government"
relationship with the California Valley Miwok.  On December 5,
2005, the BIA ratified Mr. Fry's position.  Dkt. #29-1 at 9.
That same day, the Tribe received notice that the State of

_____

[4]    The California Indian Gambling Revenue Sharing Trust Fund
provides fixed payments, on a quarterly basis, to non-gaming
tribes within the state of California.  Each non-gaming tribe
receives $1.1 million per year, distributed on a quarterly basis.
In the event that the fund has insufficient monies to make
payments in that amount, available funds are distributed to the
tribes in equal shares, on a per-tribe basis.  See
http://www.cgcc.ca.gov/rstfi/funddist.pdf.

A9

California had filed an interpleader in California Superior Court in order to determine the Tribe's leadership for Trust Fund payment purposes. Id. at 10.

2.  **The Complaint**

The Tribe alleges that, at least since June 25, 1999, the BIA has recognized its government, its documents, and its chairperson, Silvia Burley, and that the BIA is now trying to reverse that position. The Tribe seeks declaratory and injunctive relief affirming that it possesses the "inherent authority" to adopt the governing documents outside of the Indian Reorganization Act, pursuant to 25 U.S.C. § 476(h); that the documents the Tribe has adopted are valid, governing documents; and that the Tribe has lawfully organized pursuant to its inherent sovereign authority. The plaintiffs argue that the letter from the Acting Assistant Secretary for Indian Affairs to Yakima Dixie on February 11, 2005 was, under 25 C.F.R. § 2.6(c), "final for the department, and effective immediately," and thus reviewable in this court under the APA as "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §§ 704, 706.[5]

---

[5]    For the purposes of this opinion only, the court accepts that the letters of February 11, 2005 and March 26, 2004 were final agency actions.

A10

3.    **Analysis**

         Congress has delegated to the Secretary of the Interior

broad authority over "public business relating to ... Indians."

43 U.S.C. § 1457.[6] At the core of this authority is a

responsibility to ensure that Secretary deals only with a tribal

government that actually represents the members of a tribe.  As

early as 1942, when the government still held lands in trust for

many tribes, the Supreme Court stated that the Department had a

duty to conduct business only with lawfully-constituted governing

bodies who represent the tribal membership.

> In carrying out its treaty obligations with the Indian
> tribes, the Government ... has charged itself with moral
> obligations of the highest responsibility and trust. Its
> conduct, as disclosed in the acts of those who represent it
> in dealings with the Indians, should therefore be judged by
> the most exacting fiduciary standards. Payment of funds at
> the request of a tribal council which, to the knowledge of
> the Government officers charged with the administration of
> Indian affairs and the disbursement of funds to satisfy
> treaty obligations, was composed of representatives
> faithless to their own people ... would be a clear breach of
> the Government's fiduciary obligation.

Seminole Nation v. United States, 316 U.S. 286, 296-97 (1942).

         The IRA charges the Secretary, broadly, with

supervising tribal elections and ensuring their fundamental

integrity, Shakopee Mdewakanton Sioux (Dakota) Community v.

Babbitt, 107 F.3d 667, 670 (8th Cir. 1997), and sections of the

_____

[6]    In turn, the Secretary has delegated this responsibility to
the BIA and the Principal Deputy Assistant Secretary - Indian
Affairs. Dkt. #18-12 at 1.

A 11

IRA require that tribal actions reflect the will of a majority of the tribal community – whether or not they choose to organize under the IRA procedures. <u>See</u> 25 U.S.C. §§ 476(a)(1), 478. The fair and full participation of tribal members is critical to the legitimacy of any constitutional reform. <u>Morris v. Andrus</u>, 640 F.2d 404, 415 (D.C. Cir. 1981). A judge of this court has chastised the Department of the Interior when it was "derelict in [its] responsibility to ensure that the Tribe make its own determination about its government consistent with the will of the Tribe." <u>Ransom v. Babbitt</u>, 69 F. Supp. 2d 141, 153 (D.D.C. 1999).

In plaintiffs' submission, subsection 476(h) was added to free Indian tribes from the onerous organization requirements BIA had put in place to implement § 476(a)-(g). BIA's response, however, is that while subsection 476(h) does give Indian tribes more procedural flexibility, it does not relieve BIA of the duty to ensure that the interests of all tribe members are protected during organization and that governing documents reflect the will of a majority of the Tribe's members. BIA thus defends its refusal to recognize the California Valley Miwok Tribe as an organized tribe on the ground that the Tribe has failed to take necessary steps to protect the interests of its potential members. Dkt. #15-1 at 28.

- 12 -

A12

The legislative history of subsection 476(h) is limited, see Dkt #15-1 at 25, and of considerably less help than the canons of statutory interpretation.  A statute is to be read as a whole, Massachusetts v. Morash, 490 U.S. 107, 115 (1989), since the meaning of statutory language, plain or not, depends on context, King v. St. Vincent's Hosp., 502 U.S. 215, 221 (1991).  Courts presume that Congress knows the law when it enacts a statute, Garrett v. United States, 471 U.S. 773, 793-94 (1985).  When a specific section and a general section conflict, the specific section controls; courts "must be 'reluctant to treat statutory terms as surplusage' in any setting," Duncan v. Walker, 533 U.S. 167, 174 (2001) (internal citation omitted).

These rules teach that subsection 476(h)'s references to documents adopted by a tribe must be understood as references to documents that have been "ratified by a majority vote of the adult members," as required by subsection 476(a).  Subsection 476(h) did not repeal the provisions of subsection 476(a), nor will it be construed to repeal or water down the protections afforded by the IRA when tribes organize: notice, a defined process, and minimum levels of tribal participation.[7]

---

[7]    The factual subtext of this litigation illuminates the importance of these protections.  At the inception of this suit, Ms. Burley and her two daughters were seeking approval of a tribal constitution that conferred tribal membership upon only them and their descendants.  See Dkt. #15-1 at 5.  The Tribe received approximately $400,000 in federal funds last year, and could receive $600,000 this year.  Because the Tribe is also a

A 13

4.    **Conclusion**

Plaintiffs's claim of government interference in the internal affairs of the Tribe depends entirely on their reading of subsection 476(h), which, as I have explained, is erroneous. The first count of plaintiffs' complaint, asserting a "violation" of 25 U.S.C. § 476(h), thus fails to state a claim upon which relief can be granted.  The second count, asserting arbitrary, capricious, or unlawful agency action under the Administrative Procedure Act, also depends upon plaintiffs' reading of subsection 476(h) – nothing arbitrary or capricious has been pointed to in the briefs – and also fails to state a claim.[8]  The additional counts added by plaintiffs' proposed second supplemental complaint, Dkt. #34-2, are derivative of plaintiffs'

---

non-gaming California tribe, the California Gambling Control Commission, a state agency, makes additional payments to the tribe from the California Revenue Sharing Trust Fund (CRSTF). Dkt. #18-5; Dkt. #18-9.  CRSTF payments are made on a per-tribe basis – the amount does not change based on the number of tribe members – and amounted to about $1 million last year.  The Tribe now proposes a revised constitution that includes non-Burley descendants, and it has submitted a list of 29 possible members, but the government estimates that the greater tribal community, which should be included in the organization process, may exceed 250 members.  <u>See</u> Dkt. #15-2 at 2.  As H.L. Mencken is said to have said: "When someone says it's not about the money, it's about the money."

[8]    The government's motion is to dismiss for lack of jurisdiction or failure to state a claim.  Dkt. #15-1.  Summary judgment would be available on plaintiff's APA claim, <u>see, e.g.</u>, <u>Judicial Watch, Inc. v. United States Dep't of Commerce</u>, 34 F. Supp. 2d 28, 46 (D.D.C. 1998), but, since the only issue being decided is one of statutory interpretation, dismissal is appropriate.

- 14 -

A 14

subsection 476(h) theory and would also fail to state a claim if leave to file them were granted.[9]  Defendant's motion to dismiss will be **granted**.


                                        JAMES ROBERTSON
                                United States District Judge

_____

[9]      Leave to file will be denied.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CALIFORNIA VALLEY MIWOK TRIBE,  :
                        :
      Plaintiff,      :
                        :
     v.               :   Civil Action No. 05-0739 (JR)
                        :
USA, *et al.*,           :
                        :
      Defendants.     :

### ORDER

For the reasons stated in the accompanying memorandum, the plaintiffs' motion to file a second supplemental complaint [Dkt. #34] and motion for preliminary injunction [Dkt. #29] are **denied.** Defendant's motion to dismiss [Dkt. #15] is **granted.**   The case is dismissed.

JAMES ROBERTSON
United States District Judge

A 16

EXHIBIT B

1

2

3

4

5

6

7

8          IN THE UNITED STATES DISTRICT COURT

9        FOR THE SOUTHERN DISTRICT OF CALIFORNIA

10

11   CALIFORNIA VALLEY MIWOK TRIBE,        )   No. 08-CV-0120 BEN AJB
                                           )
12                    Plaintiff,           )   TABLE OF CONTENTS TO EXHIBITS
                                           )
13        V.                               )   Date:        March 10, 2008
                                           )   Time:        10:30 a.m.
14   THE CALIFORNIA GAMBLING CONTROL       )   Courtroom:   3
     COMMISSION; AND DOES 1 THROUGH 50,    )   Judge:       Hon. Roger T. Benitez
15   INCLUSIVE,                            )
                                           )
16                    Defendants.          )
                                           )
17   _____)

18   EXHIBIT A            A1-A16

19   EXHIBIT B            B17-B20

20   EXHIBIT C            C21-C22

21   EXHIBIT D            D23-D25

22

23

24

25

26

27

28

1  BILL LOCKYER
   Attorney General of the State of California
2  ROBERT L. MUKAI
   Senior Assistant Attorney General
3  SARA J. DRAKE
   Supervising Deputy Attorney General
4  MARC A. LE FORESTIER, State Bar No. 178188
   Deputy Attorney General
5  1300 I Street, Suite 125
   P.O. Box 944255
6  Sacramento, CA 94244-2550
   Telephone: (916) 322-5452
7  Fax: (916) 322-5609

8  Attorneys for Plaintiff California Gambling
   Control Commission

9

**FILED**
**ENDORSED**

2005 DEC 28  PM 3:22

LEGAL PROCESS #12

10                SUPERIOR COURT OF CALIFORNIA

11                   COUNTY OF SACRAMENTO

12

13  CALIFORNIA GAMBLING CONTROL        CASE NO. 05AS05385
    COMMISSION,
14
                            Plaintiff,
15
         v.                            **FIRST AMENDED**
16                                     **COMPLAINT IN INTERPLEADER**

17  SYLVIA BURLEY; YAKIMA DIXIE;
    MELVIN DIXIE; DEQUITA BOIRE; and
18  VELMA WHITEBEAR,

19                           Defendants.

20

21

22  Plaintiff California Gambling Control Commission ("Plaintiff") alleges as follows:

23     1.    Plaintiff is the California Gambling Control Commission, an agency of the State of

24  California, vested with jurisdiction over all persons or things having to do with the operation of

25  gambling establishments within the State of California. Plaintiff also has responsibilities defined

26  by certain tribal-state class III gaming compacts completed between the State of California and

27  various California Indian tribes, under which the Plaintiff is identified as "the State Gaming

28  Agency."

1                                                    First Amended

**EXHIBIT**

**B**

B 17

02/03/2008  23:27    310-577-3210                    SANDERS BELL LLP                    PAGE  03/13

2.   Plaintiff is informed and believes and thereon alleges, that Defendant Sylvia Burley ("Burley") is an individual who claims to be a person of authority within the government of the California Valley Miwok Tribe, and who claims a right to receive disputed funds, described more fully in the paragraphs below.

3.   Plaintiff is informed and believes and thereon alleges, that Defendant Yakima Dixie ("Yakima Dixie") is an individual who claims to be a person of authority within the government of the California Valley Miwok Tribe, and who claims a right to receive disputed funds, described more fully in the paragraphs below.

4.   Plaintiff is informed and believes and thereon alleges, that Defendant Melvin Dixie ("Melvin Dixie") is an individual who claims to be a person of authority within the government of the California Valley Miwok Tribe, and who claims a right to receive disputed funds, described more fully in the paragraphs below.

5.   Plaintiff is informed and believes and thereon alleges, that Defendant Dequita Boire ("Boire") is an individual who claims to be a person of authority within the government of the California Valley Miwok Tribe, and who claims a right to receive disputed funds, described more fully in the paragraphs below.

6.   Plaintiff is informed and believes and thereon alleges, that Defendant Velma Whitebear ("Whitebear") is an individual who claims to be a person of authority within the government of the California Valley Miwok Tribe, and who claims a right to receive disputed funds, described more fully in the paragraphs below.

7.   The California Valley Miwok Tribe ("CVMT") (fka Sheep Ranch Rancheria of Mi-Wuk Indians) is a federally recognized Indian tribe, and Plaintiff is informed and believes, and thereon alleges, that at present CVMT has few members, no recognized or functioning tribal government, and does not conduct tribal gaming activities.

8.   The tribal-state class III gaming compacts completed between the State of California and various federally-recognized California Indian Tribes in 1999, and at other times ("Compacts"), continue in effect, and provide for the creation and maintenance of a Revenue Sharing Trust Fund ("RSTF"), under which fund California Indian tribes that either do not

2

B 18

1  engage in casino-style gambling at all, or do so only on a limited basis ("Non-Compact Tribes"),

2  are entitled to a share of revenue from California Indian tribes engaged in larger-scale casino

3  operations. CVMT is a Non-Compact Tribe within the meaning of the 1999 Compacts. An

4  exemplar of the 1999 Compacts is attached to this complaint at Exhibit A, and is incorporated by

5  reference here. The RSTF provisions are contained in section 4.3.2 of the 1999 Compacts.

6      9.   The Compacts provide that Non-Compact Tribes are entitled to receive up to $1.1

7  Million annually in distributions from the RSTF.

8      10.  Plaintiff is identified by the Compacts as a limited "Trustee" of the RSTF, and in that

9  role is required to make RSTF distributions to Non-Compact Tribes, but has "no discretion with

10  respect to the use or disbursement of the trust funds." (Compacts, § 4.3.2.1, subd. (b).) The

11  Compacts provide that Plaintiff's sole authority "shall be to serve as a depository of the trust

12  funds and to disburse them on a quarterly basis to Non-Compact Tribes." (Compacts, § 4.3.2.1,

13  subd. (b).)

14      11.  Plaintiff is now in possession of approximately SEVEN HUNDRED EIGHTY-EIGHT

15  THOUSAND and ONE DOLLARS and 99 CENTS (U.S. $ 788,001.99) ("RSTF Money"),

16  derived from the RSTF, which is to be distributed to CVMT.

17      12.  Burley, Yakima Dixie, Melvin Dixie, Boire and Whitebear have made conflicting

18  claims to leadership of the Tribe's government, and to distributions from the RSTF, including the

19  RSTF Money, on the Tribe's behalf.

20      13.  Plaintiff is informed and believes, and thereon alleges, that the federal Department of

21  the Interior, Bureau of Indian Affairs ("BIA"), does not recognize any tribal government of the

22  CVMT, does not recognize any individual with authority to represent the CVMT for general

23  purposes, and at present does not conduct government-to-government relations with the CVMT.

24      14.  It is Plaintiff's practice to make RSTF distributions to the federally recognized

25  government of each recipient Non-Compact Tribe.

26      15.  Plaintiff lacks knowledge and authority to determine the validity of the defendants'

27  conflicting claims to control of the CVMT's government, or to the authority to represent it, and

28  so cannot determine to whom the RSTF monies should be distributed, on behalf of the CVMT.

B19

16. Plaintiff claims no interest in the RSTF Money, or in future RSTF distributions to which the CVMT will be entitled under the terms of the Compacts, except that it seeks a determination of whether and to whom the RSTF Money should be distributed.

17. Concurrently with the filing of the original complaint in this action on December 5, 2005, Plaintiff deposited the RSTF Money with clerk of this Court pursuant to Code of Civil Procedure, section 386, subdivision (c).

18. Plaintiff has incurred costs and reasonable attorney's fees in connection with these proceedings, and may incur additional costs and fees hereafter.

WHEREFORE Plaintiff prays for judgment as follows:

1. That defendants and each of them be ordered to interplead and litigate their claims to receive the RSTF Money, and future RSTF distributions, on behalf of the CVMT;

2. That Plaintiff be discharged from liability to each of the defendants, if any, with respect to the RSTF money;

3. That Plaintiff be permitted to deposit future RSTF distributions to the CVMT with the clerk of this Court, until the defendants resolve this litigation, or until further Order of this Court.

4. That Plaintiff be awarded costs and reasonable attorney's fees to be paid to Plaintiff from the funds deposited with the Court clerk as described above; and

5. For such other and further relief as the Court deems just and proper.

Dated: December 28, 2005

Respectfully submitted,

BILL LOCKYER
Attorney General of the State of California
ROBERT L. MUKAI
Senior Assistant Attorney General
SARA J. DRAKE
Supervising Deputy Attorney General

MARC A. LE FORESTIER
Deputy Attorney General
Attorneys for the CVMT

B20



1

2

3

4

5

6

7

8    IN THE UNITED STATES DISTRICT COURT

9    FOR THE SOUTHERN DISTRICT OF CALIFORNIA

10

11  CALIFORNIA VALLEY MIWOK TRIBE,        )   No. 08-CV-0120 BEN AJB
                                          )
12              Plaintiff,                )   TABLE OF CONTENTS TO EXHIBITS
                                          )
13          V.                            )   Date:        March 10, 2008
                                          )   Time:        10:30 a.m.
14  THE CALIFORNIA GAMBLING CONTROL       )   Courtroom:   3
    COMMISSION; AND DOES 1 THROUGH 50,    )   Judge:       Hon. Roger T. Benitez
15  INCLUSIVE,                            )
                                          )
16              Defendants.               )
                                          )
17  ─────────────────────────────────    )

18  EXHIBIT A              A1-A16

19  EXHIBIT B              B17-B20

20  EXHIBIT C              C21-C22

21  EXHIBIT D              D23-D25

22

23

24

25

26

27

28

EXHIBIT C

Filed By:

The motion of Silvia Burley ("Burley") to quash service of summons issued upon the First Amended Complaint of California Gambling Control Commission ("Commission") is denied.

Burley's motion is based upon the premise that she is named in the action solely in her capacity as a person of authority over the California Valley Miwok Tribe ("Tribe"), and in that capacity, she is entitled to the sovereign immunity held by the Tribe. Commission disputes this claim, arguing that Burley is named simply as a private individual who has made a competing claim to the subject fund. Specifically, Commission argues that "because there is no recognized tribal government or representative with authority to represent the Tribe for general purposes, none of the defendants could be acting in an official representative capacity.

With this admission by Commission, and having no evidence that the service of summons was otherwise procedurally defective, Burley was properly

This minute order is immediately effective. A formal order pur
Rules of Court, rule 391 is not necessary, and further notice of this r
required.

**EXHIBIT**

_C_



| Item 14 | 05AS05385 | CALIFORNIA GAMBLING CONTROL COMM VS. SYLVIA BURLEY ET AL |

Nature of Proceeding:  Demurrer

Filed By:

The demurrer of Silvia Burley ("Burley") to the First Amended Complaint (FAC) of California Gambling Control Commission ("Commission") is sustained without leave to amend.

Burley demurs upon two related grounds: (1) the interpleader action necessarily requires a determination of the "federally recognized government" of the California Valley Miwok Tribe ("Tribe") and the authorized representative thereof - a determination over which this Court lacks subject matter jurisdiction and is otherwise unsettled with the federal government; and (2) since Burley is named in the action solely as a private individual (not an official representative of Tribe) with no potential claim of right to the subject fund, the complaint fails to state a cause of action as against her. Burley's demurrer is sustained upon both grounds.

Commission alleges that it is the Commission's "practice to make RSTF distributions to the federally recognized government of each recipient Non-Compact Tribe." (FAC, p.3:24-25.) Commission alleges that the U.S. Department of Interior, Bureau of Indian Affairs ("BIA") "does not recognize any tribal government of the [Tribe], does not recognize any individual with authority to represent the [Tribe] for general purposes, and at present does not conduct government-to-government relations with the [Tribe]." (FAC, p.3:20-23.) Commission asserts no interest in the subject fund except for its statutory and Compact obligation to act as trustee over the fund, and to distribute it to eligible recipient Indian tribes "without delay." (Gov't Code section 12012.90(d).) Thus, the Commission states that its interpleader action "seeks a judicial determination of which, if any, of the various interested parties it named as

defendants is entitled to the RSTF monies deposited with the court." (Opp. p.3:13-14.)

Based upon these allegations, it is an inescapable conclusion that the relief sought by Commission would compel the Court to determine which individual, or individuals, constitute the lawful governmental representatives of Tribe, if at all. That determination, based upon the Commission's "practice," requires the federal government to "recognize" a government of the Tribe. This Court has no jurisdiction to make either determination. Instead, those decisions lie entirely within the exclusive jurisdiction of the BIA, the federal government, or the federal courts.

As an alternative, Commission suggests that the Court may function as a warehouse, in perpetuity, for the subject funds until the federal government, or the Tribe, finally achieve a "federally recognized government." This is not the proper role of the Court, or the interpleader process.

Commission also contends that the Court has jurisdiction over this matter because the Court may avoid the "impermissible intrusion into issues of tribal self-governance" and "properly limit the scope of the litigation to the Commission's responsibilities and obligations related to distribution of the RSTF monies." (Opp. p.5:23-25.) However, the FAC does not seek such relief. The FAC does not seek a declaration of Commission's responsibilities and obligations as to the RSTF. Commission does not contend that there is a dispute over its legal obligations and responsibilities. Commission does not argue that there is a legitimate dispute that it may distribute the RSTF monies to someone or some entity other than the "federally recognized government" of the Tribe. Instead, Commission seeks a declaration of who or what constitutes the "federally recognized government" of the Tribe. Again, that declaration cannot issue from this Court.

Furthermore, Commission has admitted that it named Burley as a private individual, not as an official representative of the Tribe. Since Commission alleges that its trusteeship of the fund requires it to disburse the fund only to the "federal recognized government" of the Tribe, Burley could not be a proper recipient of the fund in her individual capacity under any circumstance.

Requests for judicial notice are denied.

This minute order is immediately effective. A formal order pursuant to California Rules of Court, rule 391 is not necessary, and further notice of this ruling is not required.

Item 15   **05AS05385     CALIFORNIA GAMBLING CONTROL COMM VS. SYLVIA BURLEY ET AL**

Nature of Proceeding:  Miscellaneous Motion

Filed By:

The motion of California Gambling Control Commission ("Commission") for discharge of liability from interpleader action pursuant to Code of Civil Procedure section 386, is denied.

Commission has not established that this Court has jurisdiction to adjudicate the named defendants' alleged competing claims to the deposited fund.

C22

1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                FOR THE SOUTHERN DISTRICT OF CALIFORNIA

10

11   CALIFORNIA VALLEY MIWOK TRIBE,      )   No. 08-CV-0120 BEN AJB
                                         )
12                      Plaintiff,       )   TABLE OF CONTENTS TO EXHIBITS
                                         )
13        v.                             )   Date:        March 10, 2008
                                         )   Time:        10:30 a.m.
14   THE CALIFORNIA GAMBLING CONTROL     )   Courtroom:   3
     COMMISSION; AND DOES 1 THROUGH 50,  )   Judge:       Hon. Roger T. Benitez
15   INCLUSIVE,                          )
                                         )
16                      Defendants.      )
                                         )
17   _____)

18   EXHIBIT A              A1-A16

19   EXHIBIT B              B17-B20

20   EXHIBIT C              C21-C22

21   EXHIBIT D              D23-D25

22

23

24

25

26

27

28

EXHIBIT D

3/2008  23:27    310-577-3210    SANDERS BELL LLP    PAGE  10/13

# COPY

**FILED ENDORSED**

05 AUG -1 AM 10: 17

SACRAMENTO COURTS
DEPT. #53

1

2

3

4

5

6

7

8

9              SUPERIOR COURT OF CALIFORNIA

10                COUNTY OF SACRAMENTO

11

12  **CALIFORNIA GAMBLING CONTROL**              CASE NO. 05AS05385
    **COMMISSION,**

13                              Plaintiff,       **JUDGMENT OF DISMISSAL**

14          v.

15
    **SYLVIA BURLEY; YAKIMA DIXIE;**
16  **MELVIN DIXIE; DEQUITA BOIRE; and**
    **VELMA WHITEBEAR,**

17

18                              Defendants.



**EXHIBIT**

D

19          This case came on regularly for hearing on June 16, 2006, upon the demurrer of

20  defendant Silvia Burley, in Department 53 of the above named Court, the Honorable Loren E.

21  McMaster, presiding.  Plaintiff was represented by Deputy Attorney General Christine M.

22  Murphy.  Defendant Silvia Burley was represented by her attorney, Karla D. Bell, and all the

23  other named defendants were represented by their attorney Peter Glick.

24          The Court having heard and considered the arguments of the parties, oral and

25  written, concluded the Court did not have jurisdiction over Plaintiff Gambling Control

26  Commission's interpleader action, ordered that the funds deposited with the Court by way of the

27  interpleader action be returned to the Gambling Control Commission, and granted Defendant

28  Silvia Burley's demurrer, without leave to amend.

                                1

D 23

Judgment of Dismissal

1    NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED

2    that Plaintiff California Gambling Control Commission's First Amended Complaint in

3    Interpleader is dismissed.

4

5    Dated: July ___, 2006

6    HONORABLE STEVEN H. RODDA
     Judge of the Superior Court

7

8    **APPROVED AS TO FORM:**

9    Dated: July 1⁊, 2006    LAW OFFICES OF KARLA D. BELL

10

11    By: _____

12    KARLA D. BELL
     Attorney for Defendant Silvia Burley

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

Judgment of Dismissal

D24

1         NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED

2    that Plaintiff California Gambling Control Commission's First Amended Complaint in

3    Interpleader is dismissed.

4

5    Dated: July ___, 2006               LOREN E. McMASTER

6        AUG - 1 2006              HONORABLE    LOREN E. McMASTER
                                 Judge of the Superior Court

7

8    **APPROVED AS TO FORM:**

9    Dated: July ___, 2006        LAW OFFICES OF KARLA D. BELL

10

11

12             By:_____
                  KARLA D. BELL
13                 Attorney for Defendant Silvia Burley

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                            2

                                  Judgment of Dismissal

D 25