EDMUND G. BROWN JR.
Attorney General of the State of California
ROBERT L. MUKAI
Senior Assistant Attorney General
SARA J. DRAKE
Supervising Deputy Attorney General
RANDALL PINAL
Deputy Attorney General
PETER H. KAUFMAN, State Bar No. 52038
Deputy Attorney General
 110 West A Street, Suite 1100
 San Diego, CA 92101
 P.O. Box 85266
 San Diego, CA 92186-5266
 Telephone:  (619) 645-2020
 Fax:  (619) 645-2012
 Email:  peter.kaufman@doj.ca.gov

Attorneys for the California Gambling Control
Commission

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CALIFORNIA VALLEY MIWOK TRIBE,** | No. 08 CV 0120 BEN AJB |
| Plaintiff, | **DEFENDANT CALIFORNIA GAMBLING CONTROL COMMISSION'S OPPOSITION TO MOTION FOR REMAND** |
| v. | |
| **THE CALIFORNIA GAMBLING CONTROL COMMISSION; and DOES 1 THROUGH 50, Inclusive,** | Hearing:        March 10, 2008 |
| Defendants. | Time:           10:30 a.m. |
| | Courtroom:   3 |
| | Judge:          The Honorable Roger J. Benitez |

## INTRODUCTION

This suit seeks an order compelling Defendant California Gambling Control Commission ("Commission") to pay more than three million dollars from the Revenue Sharing Trust Fund ("RSTF") in the California treasury to an individual claiming to represent the California Valley Miwok Tribe ("Miwok").  The Commission removed this suit from the California courts because any judicially enforceable duty the Commission might have to make an RSTF distribution to the Plaintiff is governed by the terms of the tribal-state class III gaming compacts ("Compact")

attached as Exhibit A to the Complaint that were negotiated and executed by the State of California and 61 federally-recognized California Indian tribes pursuant to the provisions of the Indian Gaming Regulatory Act, 25 U.S.C. § 2701 et seq. ("IGRA"). The Ninth Circuit ruled in *Cabazon Band of Mission Indians v. Wilson,* 124 F.3d 1050 (9th Cir. 1997), that IGRA "confers jurisdiction on federal courts to enforce Tribal-State compacts and the agreements contained therein." *Id.* at 1056. Thus, because any Commission obligation to distribute money to the Miwok is governed by the Compact, this Court has subject matter jurisdiction over this suit under 28 U.S.C. § 1331 pursuant to the Ninth Circuit's decision in *Cabazon.*

Further, as disclosed by the Complaint itself, this case presents the contested issue over who may act on behalf of the Miwok. The Complaint affirmatively alleges that there is an ongoing leadership dispute within the Miwok. (Compl. at ¶ 15.) Moreover, the federal government has taken the position that because it does not recognize any Miwok constitution or government, no one is authorized to represent or act on behalf of the Miwok. A determination regarding who, if anyone, is entitled to represent the Miwok is an essential prerequisite to a decision in this case. Tribal status is governed by federal law. Thus, this Court has subject matter jurisdiction because an essential prerequisite to the grant of the requested relief involves resolution of an issue of federal law.

Plaintiff's remand motion argues, however, that after the post-removal dismissal of the Complaint's breach of Compact claim (Third Claim for Relief), relief is not sought under the terms of the Compact but rather under the terms of the declaratory and injunctive relief provisions of California law, (Cal. Civ. Proc. Code §§ 326 and 1060) as well as California Government Code § 12012.75. Federal court jurisdiction, however, is based on the complaint at the time of removal, not as subsequently amended. *Libhart v. Santa Monica Dairy Co.,* 592 F.2d 1062, 1065 (9th Cir. 1979). Moreover, even if that were not the case, the Complaint, on its face, makes clear that any right to obtain the requested relief stems not from independent provisions of California law but rather from State statutes that were enacted for the sole purpose of implementing the provisions of a tribal-state class III gaming compact over which federal courts have subject matter jurisdiction.

1    As the United States Supreme Court has repeatedly ruled, a case arises under federal law for

2  purposes of removal jurisdiction where "the vindication of a right under state law necessarily

3  turn[s] on" an interpretation of federal law (*Grable & Sons Metal Products, Inc. v. Darue*

4  *Engineering & Manufacturing,* 545 U.S. 308 (2005); *Franchise Tax Board of the State of*

5  *California v. Construction Laborers Vacation Trust for Southern California,* 463 U.S. 1, 9

6  (1983)) or an agreement that involves a significant federal interest (*Merrell Dow*

7  *Pharmaceuticals Inc. v. Thompson,* 478 U.S. 804, 814 n.12 (1986); *Cabazon Band of Mission*

8  *Indians v. Wilson, supra,* 124 F.3d at 1056).  In this case, despite the fact that the suit seeks relief

9  under State law, the right to that relief (a) arises solely under a contract over which federal courts

10  have jurisdiction; and (b) requires resolution of an issue of federal law—the status of the Miwok

11  and the capacity of anyone to sue on its behalf.  Thus, this Court has removal jurisdiction over

12  the Complaint.

13    Finally, prior State court proceedings between the parties involving the RSTF do not, as

14  Plaintiff suggests, compel the conclusion that this case should be resolved in State court or that

15  the State has a greater interest in the subject matter of this suit.  To the contrary, those cases

16  which were dismissed for lack of State court jurisdiction demonstrate that federal interests

17  predominate and require federal court adjudication.

18                                **ARGUMENT**

19                                    **I.**

20  **UNDER *CABAZON*, THIS COURT HAS SUBJECT MATTER JURISDICTION
    OVER ANY SUIT SEEKING TO ENFORCE THE TERMS OF A TRIBAL-**
21  **STATE CLASS III GAMING COMPACT OR TO ENFORCE AN
    OBLIGATION THAT ORIGINATES IN A COMPACT**

22

23    In *Cabazon Band of Mission Indians v. Wilson, supra,* 124 F.3d 1050, the Ninth Circuit

24  ruled that federal courts have subject matter jurisdiction over suits seeking enforcement of the

25  terms of tribal-state class III gaming compacts, as well as obligations that originate on the basis

26  of a compact.  *Id.* at 1056.  In reaching this conclusion, the court reasoned as follows in citing

27  the United States Supreme Court's decision in *Merrell Dow Pharmaceuticals Inc. v. Thompson,*

28  *supra,* 478 U.S. at 814 n.12:

1      [T]he Supreme Court recognized that "[s]everal commentators have suggested that our
2   § 1331 decisions can best be understood as an evaluation of the nature of the federal interest
    at stake." The Court noted "the importance of the federal issue in federal-question
3   jurisdiction". The district court recognized the federal interest at stake here and the
    importance of the enforcement of Tribal-State compacts in the federal courts:

4           It would be extraordinary were the statute to provide jurisdiction to
            entertain a suit to force the State to negotiate a compact yet provide no
5           avenue of relief were the State to defy or repudiate that very compact.
            Such a gap in jurisdiction would reduce the elaborate structure of IGRA
6           to a virtual nullity since a state could agree to anything knowing that it
            was free to ignore the compact once entered into. IGRA is not so
7           vacuous.

8   [Citation to district court order, omitted.] We agree that Congress, in passing IGRA, did
    not create a mechanism whereby states can make empty promises to Indian tribes during
9   good-faith negotiations of Tribal-State compacts, knowing that they may repudiate them
    with immunity whenever it serves their purpose. IGRA necessarily confers jurisdiction
10  onto federal courts to enforce Tribal-State compacts and the agreements contained therein.

11         Our conclusion is bolstered by IGRA's express authorization of a compact to provide
    remedies for breach of contract. 25 U.S.C. § 2710(d)(3)(C)(v). This provision invites the
12  tribe and the state to waive their respective immunities and consent to suit in federal court.
    By envisioning the enforcement of a compact and any contractual obligations assumed
13  pursuant to a compact in federal court, IGRA necessarily confers jurisdiction to the federal
    courts.

14  *Id.*

15      **A.   Cabazon Is Applicable to Any Tribal-State Compact Entered Into Pursuant to
            IGRA not Just the Compact at Issue in That Case**
16

17      Plaintiff attempts to distinguish the holding in *Cabazon* by arguing that it is limited to

18  tribal-State compacts entered into prior to 1999 (Pl.'s Mem. in Supp. of Mot. Remand ("Mem.")

19  at 5) and that "[n]owhere in the [Compact] is there any mandate that the present dispute, or any

20  dispute, be determined in a federal court." (*Id.*)

21      The holding in *Cabazon* is not limited to the specific compact at issue in that case and, in

22  fact, this Court in *Rincon Band of Mission Indians v. Schwarzenegger,* No. CV-04-01151 TJW,

23  found, in ruling upon issues involving the Compact, that 25 U.S.C. § 2710(d)(7)(A)(ii) "confers

24  federal court jurisdiction over disputes arising between two parties to a specific gaming

25  Compact." (Order Granting Defs.' Mot. to Dismiss, at 9, Sept. 21, 2004), attached hereto as Ex.

26  A.)

27      **B.   The Compact Does not Provide the Parties With a Choice of Forums**

28      Further, contrary to Plaintiff's contention, the Compact does not provide the parties with a

choice of forums.  In this regard, the Compact provides, in section 11.2.1, subdivision (c) that if a party seeks a declaration that the Compact has been "materially breached," it is to bring that action in federal court. (Compl., Ex. A. at 40 " [e]ither party may bring an action in federal court . . . for a declaration that the other party has materially breached this Compact.")  This section further provides that, it is only if the "federal court determines that it lacks jurisdiction over such an action" that the action may be brought in State court.  (*Id.*)  Under *Cabazon* and this Court's decision in *Rincon*, however, federal courts have jurisdiction over breach of compact suits. Thus, there is no basis for State court jurisdiction.  While section 9.4 of the Compact provides a waiver of sovereign immunity for actions brought in federal or State court, that section must be understood in light of the specific provisions for a declaratory relief action for breach of Compact set forth in section 11.2.1 subdivision (c), which provides that breach of Compact suits are to be filed in federal court unless that court were to determine it lacked subject matter jurisdiction.

## II.

**WHERE THE VINDICATION OF A RIGHT UNDER STATE LAW NECESSARILY TURNS ON AN INTERPRETATION OF FEDERAL LAW OR AN OBLIGATION CREATED BY FEDERAL LAW AND ADJUDICATION DOES NOT THREATEN TO UPSET A CONGRESSIONALLY APPROVED BALANCE OF FEDERAL AND STATE JUDICIAL RESPONSIBILITIES, DISTRICT COURTS HAVE JURISDICTION PURSUANT TO 28 U.S.C. § 1331**

Plaintiff's motion for remand to State court is premised on the notion that simply because the Complaint (after Plaintiff's post-removal dismissal of a claim for relief based on breach of the Compact) only alleges a violation of a State statute and seeks relief pursuant to provisions of California law, this case does not arise under the laws of the United States.  (Mem. at 3.)

Federal court jurisdiction, however, is based on the complaint at the time of removal—not as subsequently amended.  *Libhart v. Santa Monica Dairy Co.,* 592 F.2d 1062, 1065 (9th Cir. 1979).  At the time it was removed, the Complaint alleged a breach of the Compact.  Thus, the Court has jurisdiction on that basis alone.

In addition, however, even though a complaint alleges only state law violations and seeks relief under a state statute, it may nonetheless "arise under the laws of the United States" for

1   purposes of federal district court subject matter jurisdiction "if vindication of a right under state

2   law necessarily turned on some construction of federal law." *Grable & Sons Metal Products,*

3   *Inc. v. Darue Engineering & Mfg., supra,* 545 U.S. 308; *Franchise Tax Board of the State of*

4   *California v. Construction Laborers Vacation Trust for Southern California, supra,* 463 U.S. 1;

5   *Smith v. Kansas City Title & Trust Co.,* 255 U.S. 180 (1921); *Hopkins v. Walker,* 244 U.S. 486

6   (1917).  As the Supreme Court held in *Grable*:

7           [F]ederal question jurisdiction will lie over state-law claims that implicate
            significant federal issues. [Citation omitted.]  The doctrine captures the
8           commonsense notion that a federal court ought to be able to hear claims
            recognized under state law that nonetheless turn on substantial questions of
9           federal law, and thus justify resort to the experience, solicitude, and hope of
            uniformity that a federal forum offers on federal issues [citation omitted].
10

11   *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg., supra,* 545 U.S. at 312.  To

12   qualify under this basis for federal question jurisdiction, the *Grable* Court explained that a case

13   must meet specific standards.  First, "federal jurisdiction demands not only a contested federal

14   issue, but a substantial one, indicating a serious federal interest in claiming the advantages

15   thought to be inherent in a federal forum." *Id.* at 313.  Second, even if a question is contested

16   and substantial, the assumption of federal court jurisdiction must be "consistent with

17   congressional judgment about the sound division of labor between state and federal courts

18   governing the application of § 1331." *Id.* at 313-14.  At issue in this inquiry is whether the

19   acceptance of federal question jurisdiction will herald "a potentially enormous shift of

20   traditionally state cases into federal courts." *Id.* at 319.

21           This case easily meets the *Grable* standards.  First, Plaintiff's right to relief depends upon

22   an interpretation of an obligation created by federal law (a tribal-state class III gaming compact

23   that is the centerpiece of IGRA's class III gaming process).  In order to grant relief, the Court

24   must determine whether, under the Compact, a Non-Compact Tribe has the right to judicially

25   enforce the Compact's provisions.  Further, the Court must determine whether—even if the

26   Miwok were entitled to judicial enforcement of the Compact's provisions—federal law permits

27   Plaintiff to act on the Miwok's behalf.  Both questions are contested in this case and both are

28   essential to the resolution of this suit.

1       Second, judicial resolution of a complaint such as this does not threaten to upset a

2   congressionally approved balance of federal and state judicial responsibilities.  The Ninth Circuit

3   has already found that Congress intended for federal courts to have subject matter jurisdiction

4   over tribal-state compact disputes.  *Cabazon Band of Mission Indians v. Wilson, supra,* 124 F.3d

5   at 1056.

6       Moreover, the State statute at issue, California Government Code § 12012.75 was enacted

7   in the same legislation in which the Compact was ratified (Cal. Stats. 1999, Ch.874, § 2, A.B.

8   No. 1385).  Thus, the statute upon which Plaintiff relies has no independent State law existence,

9   but rather has as its sole purpose implementation of the State's duties and responsibilities under

10  the Compact.  In this regard, Government Code § 12012.75 fulfills the State's Compact

11  obligation to establish a fund (the RSTF) in the State Treasury, as called for in Compact section

12  4.3.2(a)(ii) (Compl., Ex. A, at 22), out of which the Commission is to make payments to eligible

13  tribes.  Further, this section specifically states that the RSTF has been created "for the purpose of

14  making distributions to non-compact tribes, in accordance with distribution plans specified in

15  tribal-state gaming compacts."  Cal. Gov't Code § 12012.75.  Thus, California Government

16  Code § 12102.75 creates no new obligation on the part of the State, but rather only provides a

17  mechanism for carrying out the State's Compact obligations.  As a result, because there is no

18  distinction between the State's obligation under California Government Code § 12012.75 and its

19  obligation under the Compact, a suit under section 12012.75 is the same as a suit under the

20  Compact and this Court has jurisdiction over an action brought pursuant to section 12012.75 for

21  the same reason it has jurisdiction over a suit brought under the Compact—because the

22  obligation has its genesis in a federal law, IGRA.

23      Finally, the California courts have already found they lack jurisdiction to rule on the issues

24  in this case.  Thus, the assumption of federal court jurisdiction in this instance will not create a

25  conflict with the California judiciary.  The issue of the distribution of RSTF payments to the

26  Miwok was the subject of State court litigation in two separate instances and in both cases the

27  California court dismissed the complaint for want of jurisdiction.  The first action was initiated

28  by Yakima Dixie, who claims to be the Miwok's hereditary chieftan and the person the federal

government should recognize as the individual authorized to act on behalf of the Miwok. In that action, Mr. Dixie sought an injunction barring the Commission from making RSTF payments to Silvia Burley, pending the federal government's resolution of the Miwok leadership dispute. The California Superior Court for Sacramento County ruled that it had no jurisdiction over a tribal leadership dispute because such jurisdiction resided in the federal government. (See, the court's minute order and January 7, 2005, dismissal order attached as Exhibit 1 to the Commission's Req. for Jud. Not. in Supp. of Opp. to Mot. for Remand filed concurrently herewith.)

In the second action, the Commission brought an interpleader action seeking a declaration as to whom it was obligated to make RSTF distributions under the Compact. Ms. Burley filed a demurrer to the complaint on the ground that the State court lacked subject matter jurisdiction because it would require a determination by the court as to which person—Ms. Burley or Mr. Dixie—was authorized to act on behalf of the Miwok. The court accepted Ms. Burley's argument and ruled that:

> it is an inescapable conclusion that the relief sought by the Commission would compel the Court to determine which individual, or individuals, constitute the lawful governmental representatives of [sic] Tribe, if at all. That determination, based upon the Commission's "practice," requires the federal government to "recognize" a government of the Tribe. This Court has no jurisdiction to make either determination. Instead, those decisions lie entirely within the exclusive jurisdiction of the BIA, the federal government, or the federal courts.

(See, the court's June 16, 2006, minute order, item 14 and Aug. 1, 2006, judgment of dismissal attached as Exhibit 2 to the Commission's Req. for Jud. Not. in Supp. of Opp. to Mot. for Remand, filed concurrently herewith.)

## CONCLUSION

On the basis of the foregoing, the Commission respectfully requests that this Court deny Plaintiff's motion for remand to the California Superior Court for the County of San Diego on the grounds that the Court has federal question jurisdiction over this action because it requires an interpretation of a Compact over which the Court has subject matter jurisdiction pursuant to *Cabazon Band of Mission Indians v. Wilson, supra,* 124 F.3d at 1056, and because a necessary prerequisite to an award of relief will require a determination under federal law of Plaintiff's

1  capacity to sue on behalf of the Miwok.  The Court's exercise of jurisdiction over this case is

2  consistent with Congress' determination of the proper allocation of judicial responsibilities

3  between the state and federal courts in that Congress intended that the federal courts adjudicate

4  disputes involving tribal-state class III compacts and is also appropriate under the Compact

5  because California courts have twice ruled that they lack jurisdiction over the issues at the heart

6  of this proceeding.

7         Dated:  February 25, 2008

8                                 Respectfully submitted,

9                                 EDMUND G. BROWN JR.
                                  Attorney General of the State of California

10                                ROBERT L. MUKAI
                                  Senior Assistant Attorney General

11                                SARA J. DRAKE
                                  Supervising Deputy Attorney General

12

13

14                                /s/ Peter H. Kaufman
                                  PETER H. KAUFMAN

15                                Deputy Attorney General
                                  Attorneys for the California Gambling Control Commission

16

17

18  bobsara edited miwok opp to remand.wpd
    SA2008300115

19

20

21

22

23

24

25

26

27

28

# Exhibit "A"

FILED

04 SEP 21 AM 9:14

U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____ DEPUTY

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

RINCON BAND OF LUISENO
MISSION INDIANS OF THE
RINCON RESERVATION, aka
RINCON SAN LUISENO BAND OF
MISSION INDIANS, aka RINCON
BAND OF LUISENO INDIANS,

                    Plaintiff,

v.

ARNOLD SCHWARZENEGGER,
Governor of California; WILLIAM
LOCKYER, Attorney General of
California, STATE OF CALIFORNIA

                    Defendants.

CASE NO. 04-CV-1151 W (WMc)

ORDER GRANTING
DEFENDANTS'
MOTION TO DISMISS

    Defendants Arnold Shwarzenegger, William Locker, and the State of California ("Defendants") move for an order dismissing this action pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6), and 12(b)(7). Plaintiff Rincon Band of Mission Indians ("Plaintiff")

- 1 -

ER 059

04cv1151w

1  opposes. All parties are represented by counsel. For the reasons set forth below, the
2  Court **GRANTS** Defendants' motion to dismiss pursuant to Fed. R. Civ. Pro. 12(b)(7)
3  for failure to join a necessary and indispensable party.

4  I.  <u>BACKGROUND</u>

5  In mid-1997, California voters approved Proposition 5. This statutory initiative
6  directed the State to enter into Tribal-State gaming compacts with each qualified tribe
7  that so requested.  Shortly thereafter, a union challenged Proposition 5's
8  constitutionality.  On August 23, 1999 the California Supreme Court declared
9  Proposition 5 unconstitutional.  <u>Hotel Employees and Restaurant Employees Int'l</u>
10 <u>Union v. Davis</u> 21 Cal. 4th 585 (1999).

11 On September 10, 1999 former California Governor Gray Davis entered into
12 Tribal-State Compacts with approximately 57 federally recognized California Indian
13 tribes - including Rincon. These 57 materially identical Compacts allowed the Tribes
14 consistent with the Indian Gaming Regulatory Act ("IGRA"), to engage in what is
15 known as Class III gaming: slot machines, as well as banked and percentage card games.
16 In order for these Compacts to become effective, voters had to approve Proposition 1A,
17 a voter initiative to amend the California Constitution and address the California
18 Supreme Court's concerns in the <u>Hotel Employees</u> case.

19 The California Legislature eventually ratified the Compacts. <u>See</u> Cal. Gov't
20 Code §12012.25. On March 7, 2000 California voters approved Proposition 1A. This
21 initiative amended the California Constitution to allow the Governor to "negotiate and
22 conclude compacts, subject to ratification by the Legislature, for the operation of slot
23 machines and for the conduct of lottery games and banking and percentage card games
24 by federally recognized Indian tribes on Indian land in California in accordance with
25 federal law." CAL. CONST. Art IV, § 19 (f). The United States Secretary of the
26 Interior approved the Compacts. On May 16, 2000 the Compacts were published in
27 the Federal Register and became effective.

28

1    Section 4.3.3 of the Compacts expressly states that either the Tribe or the State
2 may request to renegotiate the Compacts on the following matters: (1) the number of
3 authorized gaming devices; (2) revenue sharing with non-gaming tribes; (3) the revenue
4 sharing trust fund; and (4) the allocation of gaming device licenses. All renegotiation
5 requests under this section had to be made between March 7 and March 31, 2003.
6 During this period, several Tribes - including Plaintiff Rincon - requested
7 renegotiations.

8    In October 2003, the California electorate recalled Governor Gray Davis and
9 elected Arnold Schwarzenegger as Governor.    Shortly thereafter, Governor
10 Schwarzenegger reiterated the previous administration's interest in negotiating
11 amended Compacts. To that end, the Governor appointed former California Court of
12 Appeals Justice Daniel Kolkey to conduct these renegotiations. In early June 2004
13 Rincon met with Mr. Kolkey to renegotiate their compact. While both parties dispute
14 the nature and tone of the negotiations, it is undisputed that those renegotiation efforts
15 have not yielded an amended Compact. In contrast, five tribes - the amici curiae in this
16 case (hereinafter "the five tribes") - successfully negotiated amended Compacts with the
17 State.

18    On June 21, 2004 Governor Shwarzenegger executed amendments to those five
19 tribes' Compacts.  Most notably, the amended Compacts would eliminate the 2000
20 operating Gaming Device limit. Under the new Compacts, the five tribes would be able
21 to operate unlimited slot machines, with increased license fees per machine at certain
22 threshold levels. In exchange for this increased slot machine allotment, the five tribes
23 would agree to make annual payments to the State for 18 years to securitize a $3 billion
24 dollar State-issued bond, with additional payments thereafter.  On July 1, 2004 the
25 California Legislature ratified those Compacts. The Secretary of the Interior must still
26 approve the amended Compacts before they become effective.

27    On June 9, 2004 Plaintiff commenced this federal action, alleging that the five
28 amended Compacts unconstitutionally impair Plaintiff's Tribal-State Compact. Plaintiff

1  also claims that the State's bad faith negotiations, coupled with their failure to meet

2  and confer, breached multiple Compact obligations.

3      On June 28, 2004 Plaintiff sought a temporary restraining order, expedited

4  discovery, and a preliminary injunction. By order dated July 7, 2004 this Court denied

5  Plaintiff's injunction request. On July 26, 2004 Defendants filed this motion to dismiss

6  all claims pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6) and 12(b)(7).

7      II.  <u>LEGAL STANDARD</u>

8      A district court has the authority to dismiss a complaint for failure to join a

9  necessary and indispensable party. FED. R. CIV. P. 12(B)(7), FED. R. CIV. P. 19.

10      Rule 19 analysis requires three steps. First, the district court must "determine if

11  an absent party is 'necessary.'" <u>Quileute Indian Tribe v. Babbitt</u> 18 F.3d 1456, 1458

12  (9th Cir. 1994) (*citing* FED. R. CIV. P. 19(a)). Second, "[i]f a party is deemed to be

13  necessary, the court must then determine if the party can be joined." <u>Id.</u> "If the party

14  cannot be joined, the court finally must determine whether the party is indispensable

15  so that in 'equity and good conscience' the action should be dismissed." <u>Id.</u> (internal

16  citations omitted). If the party (1) is necessary, (2) cannot be joined, and (3) is

17  indispensable, then dismissal is warranted. <u>See id.</u>; <u>see also</u> <u>American Greyhound</u>

18  <u>Racing Inc. V. Hull</u>, 305 F.3d 1015, 1022 (9th Cir. 2002).

19      Rule 15(a) allows the court to freely grant leave to amend pleadings when justice

20  so requires. FED. R. CIV. P. 15(a). If a court determines that an unnamed party is in

21  fact necessary and indispensable, it is within the district court's "sound discretion" to

22  allow an amended pleading that adds the necessary parties. <u>See, e.g.</u>, <u>Grand Light &</u>

23  <u>Supply v. Honeywell</u>, 771 F.2d 672, 680 (2nd Cir. 1985). If a necessary and

24  indispensable party cannot be joined, however, even an amended pleading cannot save

25  the complaint from dismissal.

26  //

27  //

28

### III.   DISCUSSION

Having reviewed the parties' moving papers and the applicable law, the Court grants Defendants' motion to dismiss pursuant to Federal Rules 12(b)(7) and 19. Plaintiff failed to join the five tribes, and the five tribes are necessary and indispensable parties. All federal claims regarding the amended 2004 Compacts are hereby dismissed. As to the remaining claims arising under state law, the court declines to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

### A.   PLAINTIFF FAILED TO JOIN NECESSARY AND INDISPENSABLE PARTIES

The disputed 2004 Compacts were executed by Defendants and five federally recognized Indian tribes, none of which are named in this lawsuit. Since the Compacts were signed, the California Legislature has ratified the Compacts and they are presently before the Secretary of Interior for final approval. Plaintiff Rincon, also a federally recognized Indian tribe, seeks through this lawsuit to invalidate all five Compacts. Among other things, Plaintiff seeks to have the five tribes' Compacts declared illegal, and enjoin their implementation.

Although not expressly named in this lawsuit, the five tribes have appeared before this Court as *Amici Curiae* (hereinafter "amici" or "the five tribes") and submitted additional briefing. According to Defendants, Rule 19 mandates that Plaintiff join the five tribes as named parties to this lawsuit based on their "necessary and indispensable" status. Plaintiff cannot do this, however, because each tribes' sovereign immunity prevents it from being named as a party absent consent. All tribes currently present as *amici* have expressly stated they will neither waive their immunity nor consent to this federal lawsuit.

By order dated July 7, 2004 this Court denied Plaintiff injunctive relief based primarily on Plaintiff's failure to join necessary and indispensable parties under Rule 19. It is well settled that Rule 19's primary purpose affords unnamed necessary and indispensable parties the opportunity to join a lawsuit that could have a potentially detrimental effect on their legal interests. Providing the opportunity for affected parties

to present their arguments in court is a long standing principle of due process. See Mullane v. Central Hanover Bank and TrustCo., 339 U.S. 306, 314 (1950).

For the reasons explained more thoroughly below, this Court finds that the presently named Defendants are not adequate legal representatives of the five tribes. The five tribes should have "an opportunity to present their objections" as parties in this matter. Id. Moreover as noted in the order dated July 7, 2004 this Court maintains its holding that the five tribes are necessary and indispensable parties to this action that cannot be joined due to tribal sovereign immunity. Therefore, this case shall be dismissed insofar as no federal claims remain.

### 1.    THE FIVE TRIBES ARE "NECESSARY"

Rule 19(a) provides that parties are necessary if

> (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (I) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claims interest.

FED. R. CIV. P. 19(a). Here, the Court finds that the five tribes satisfy Rule 19(a)(2)(i)'s requirements for two reasons. First, the five tribes have an interest "relating to the subject of this action." Indeed, the five tribes' interest - their recently ratified 2004 Compacts with Defendants - is the *subject* of this lawsuit. Second, this suit's disposition unquestionably impairs the five tribes' ability to protect that interest. Plaintiff concedes that it seeks to invalidate the five tribes' Compacts. Because this litigation concerns the five tribes' Compacts, and may impair or impede those Compacts, the five tribes are necessary parties.

In response, Plaintiff contends that the five tribes are not necessary because the State adequately represents the five tribes' interests. However, the Ninth Circuit has unequivocally held that a Governor cannot adequately represent the interests of absent tribes, even though both may wish to uphold the legality of a Compact or agreement. American Greyhound 305 F.3d at 1023, fn. 5. The Ninth Circuit continued, "the State

- 6 -    **ER 064**    04cv1151w

1  and the tribes have often been adversaries in disputes over gaming, and the State owes

2  no trust duty to the tribes." Id.

3       Plaintiff attempts to distinguish the facts of American Greyhound from the

4  current matter. Plaintiff argues that joinder of absent tribes was necessary in American

5  Greyhound because the Compacts at issue had not yet concluded negotiations. Since

6  the Compacts in the current matter have already been ratified, Plaintiff contends there

7  is no potential for adversity between the State and the five tribes.

8       The Court finds Plaintiff's suggested distinction unpersuasive. That the five

9  tribes' 2004 Compact negotiations have concluded does not lessen their separable legal

10 interests in the renegotiated Compacts. As the Ninth Circuit held in Shermoan v.

11 United States, "it is the party's *claim* of a protectable interest that makes its presence

12 necessary." 982 F.2d 1312, 1317 (9th Cir. 1992). Multiple parties' mere contract

13 formation does not automatically create identical legal interests. To the contrary,

14 contracts create separate and distinct interests that each party independently possesses

15 and will seek to protect.

16      In this case the Court need not speculate on potential adverse Compact interests

17 between the State and the five tribes. The State does not (and cannot) adequately

18 represent the five tribes' interests. American Greyhound, 305 F.3d at 1023. Indeed,

19 the Tribal-State Compacts' preamble expressly acknowledges the Tribes' and State's

20 contentious past. (*See Compact Preamble* at D). Further, the five tribes as *amici* in this

21 matter, have put forth legal arguments regarding Compact enforceability different than

22 the State's arguments regarding the same. The five tribes adamantly assert their

23 sovereign immunity from suit, seek Rule 19(c) dismissal, and stress the divergent

24 interests of the State and the five tribes. Each of these arguments is given a cursory

25 mention, if any, by the State's dismissal pleadings here.. Compare, *Amici Curiae Brief*

26 *of the Pala Band of Mission Indians, et al.* At 3-8, with *Defendants' Memorandum in*

27 *Support of Motion to Dismiss*, at 8-11. Despite Plaintiff's contentions, the State is not

28 "vigorously defending" the five tribes' interests. Quite the opposite, these adverse

interests make the five tribes "necessary" parties under Rule 19(a)(2) and the Court so finds as a matter of law.

## 2.    THE FIVE TRIBES CANNOT BE JOINED

Having established that the five tribes are necessary parties, the Court must now determine whether they can be joined. For the same reasons mentioned in the order dated July 7, 2004 – this Court finds that the five tribes' sovereign immunity prevents joinder.

"Indian tribes have long been recognized as possessing the common-law immunity from suit traditionally enjoyed by sovereign powers." Santa Clara Pueblo v. Martinez 436 U.S. 49, 58 (1978) (internal citations omitted); see also, Kiowa Tribe of Oklahoma v. Manufacturing Technologies, Inc., 523 U.S. 751, 754 (1998). While tribes may waive their sovereign immunity, "such waivers must be 'expressly unequivocal' and cannot be implied." Quileute Indian Tribe, 18 F.3d at 1459. (quoting Santa Clara, 436 U.S. at 58).

In this case, the five *amici* tribes have not waived their sovereign immunity. In fact, the 1999 Compacts expressly *prevent* joinder. Compact Section 9.4 (3) only allows sovereign immunity waiver if:

> No person or entity other than the Tribe and the State is party to the action, unless failure to join a third party would deprive the court of jurisdiction; provided that nothing herein shall be construed to constitute a waiver of the sovereign immunity of either the Tribe or the State in respect to any such third party.

Compact, Sec. 9.4(3) The Compact's express language limits sovereign immunity waivers to court actions between the State and the Tribe.

Plaintiff no longer argues that the five tribes waived their immunity through the 1999 Compacts. See Plaintiffs Memorandum in Opposition to State's Motion to Dismiss, at 10. Plaintiff now contends that Congress has waived tribal sovereign immunity for the five tribes by enacting IGRA.

**ER 066**

- 8 -

25 U.S.C. § 2710(d)(7)(A)(ii) states:

> The United States District Courts shall have jurisdiction over...any cause of action initiated by a State or Indian tribe to enjoin a class III gaming activity located on Indian lands and conducted in violation of any Tribal-State compact entered into under paragraph (3) that is in effect.

Plaintiff argues that 25 U.S.C. § 2710(d)(7)(A)(ii) permits Plaintiff to join "any necessary tribes in this suit, as it is seeking to enforce, by way of injunction, the terms of its Tribal-State gaming compact." <u>See</u> Plaintiff's Opposition, at 10. The Court respectfully disagrees.

This Court finds that the language of 25 U.S.C. § 2710(d)(7)(A)(ii) confers federal court jurisdiction over disputes arising between two parties to a specific gaming Compact. Nothing in IGRA confers federal jurisdiction or waives tribal immunity from claims of *third-party tribes* seeking to invalidate another tribe's Compact with the State. <u>Id.</u> To hold otherwise would allow any third party to unilaterally attack legitimate state gaming compacts with any Indian tribe.

The five *amici* tribes are immune from suit, and sovereign immunity has not been waived by IGRA. Plaintiff contends that this Court should grant leave "to make any necessary amendment" to the complaint if the five tribes are deemed necessary, pursuant to Fed. R. Civ. P. 15(a). (<u>See</u> *Plaintiff's Opposition*, at 4, fn 4). However, allowing amendment would be an exercise in futility. The five tribes, as *amici* in this case, have expressly stated their intention to assert their sovereign immunity in this matter. They will not voluntarily submit to this Court's jurisdiction. The five tribes will not - and cannot - be joined as parties.

### 3.    THE FIVE TRIBES ARE INDISPENSABLE

The Court has therefore found that the five *amici* tribes are necessary, and cannot be joined. All that remains to decide is whether they are indispensable.

Rule 19(b) requires the Court to consider four factors in determining whether a party is indispensable. "The district court is directed to balance the following factors: (1) prejudice to any party or to the absent party; (2) whether relief can be shaped to

04cv1151w

1  lessen prejudice; (3) whether an adequate remedy, even if not complete, can be
2  awarded without the absent party; and (4) whether there exists an alternative forum
3  Quileute Indian Tribe, 18 F.3d at 1460. The Ninth Circuit has "consistently applie[d]
4  the four-part test to determine whether Indian tribes are indispensable parties.
5  Confederated Tribes of Chehalis Indian Reservation v. Luhan, 928 F.2d 1496, 1499
6  (9th Cir. 1991) (citations omitted).

7      Turning to the first factor, the prejudice to the five tribes "stems from the same
8  legal interest that make [the tribes] a necessary party to the action." Quileute Indian
9  Tribe, 18 F.3d at 1460 (citing Confederated Tribes, 928 F.2d at 1499) (noting that Rule
10 19(b)'s prejudice test is essentially the same as Rule 19(a)'s legal interest test).
   Accordingly, the five tribes would be prejudiced by this action.
11
12     The second factor asks whether the relief can be "shaped" to lessen the prejudice.
13 See Fed. R. Civ. P. 19(b) (referring to the "shaping of relief"). The simple answer is no.
14 If Plaintiff was successful in this suit, the five *amici* tribes would lose not only their
15 unlimited slot machine gaming Compacts, but also the ability to negotiate those types
16 of Compacts in the future. Just as the Ninth Circuit stated in Quileute, "[n]o partial
17 remedy can be fashioned that would not implicate those interests or would eliminate
   the prejudice to the [tribes]." 18 F.3d at 1460.
18
19     The third factor - whether adequate relief is available in the five tribes' absence -
20 also falls in the five *amici* tribes' favor for two reasons. First, any form of injunctive
21 relief would prejudice both the five tribes and the State. See Dawavendewa v. Salt
22 River Proj. Agr. Imp. & Power Dist., 276 F.3d 1150, 1162 (9th Cir. 2002) (concluding
23 that the prejudice to both Salt River Project and Navajo Nation rendered relief
24 inadequate). Second, the Court's order would not preclude tribes located outside the
25 Southern District of California from seeking to renegotiate their slot machine
26 allotment. Those Compacts, if challenged, could present multiple conflicting district
   court decisions. Plaintiff's claims here do not address these problems, and are therefore
27 inadequate.
28

1    Plaintiff contends that the five tribes are not truly "absent" from the current
2  matter, since they have presented themselves to the Court as *amici*. Plaintiff argues that
3  the five tribes' submission of an *amicus* brief equates them with actual parties in this
4  case, making the five tribes neither necessary nor indispensable. Plaintiff's argument,
5  while creative, is mistaken. While *amicus* briefs serve as a medium to present issues to
6  the Court's attention, *amici* are not substitutes for actual parties. In <u>Wichita &</u>
7  <u>Affiliated Tribes of Oklahoma v. Hodel</u>, the D.C. Circuit held:

8      If the opportunity to brief an issue as a non-party were enough to
       eliminate prejudice, non-joinder would never be a problem since the court
9      could always allow the non-joinable party to file amicus briefs. Being a
       party to a suit carries with it significant advantages beyond the amicus'
10     opportunities, not the least of which is the ability to appeal an adverse
11     judgment.
12

13  788 F.2d 765, 775 (D.C. Cir. 1986). This Court agrees. The five tribes are a necessary
14  and absent party, regardless of their current presence as *amici*.
15    The final Rule 19(b) factor focuses on an alternative forum. Defendants argue
16  that Plaintiff does have an alternative forum. They suggest that Plaintiff may voice its
17  objections to the Secretary of the Interior, and seek redress before she approves or
18  rejects the ratified Compacts. Whether this constitutes an alternative forum is largely
19  irrelevant. Even if Plaintiff had no alternative forum, the "lack of an alternative forum
20  does not automatically prevent dismissal of a suit." <u>Quileute</u>, 18 F.3d at 1460. Indeed,
21  the Ninth Circuit has dismissed several cases based on an absent, indispensable Indian
22  tribe even though the Plaintiff lacked an alternative forum. See <u>Salt River Project</u>, 276
23  F.3d at 1162 (listing cases), <u>Turley v. Eddy</u>, 70 Fed. Appx. 934 (9th Cir. 2003)
24  (unpublished), <u>Rosales v United States</u>, 73 Fed. Appx. 913 (9th Cir. 2003)
25  (unpublished), <u>American Greyhound</u>,305 F.3d at 1025. Thus, while this factor may
    arguably fall in Plaintiff's favor, it is not dispositive here.
26    In summary, the five *amici* tribes are necessary and indispensable parties to this
27  litigation. Those same give tribes are immune from suit, and have not consented to be
28  sued. See <u>Kiowa Tribe</u>, 523 U.S. at 754. Therefore, absent a public rights exception,

- 11 -    **ER 069**

1   Defendants' motion to dismiss must be granted.

2     **4.  THE PUBLIC RIGHTS EXCEPTION DOES NOT APPLY**

3     Despite this Court's order dated July 7, 2004 which denied injunctive relief and
4 explicitly declined to find a Rule 19 public rights exception, Plaintiff seeks to revive this
5 failing argument yet again. <u>See</u> Plaintiff's Opposition, at 9. Once again, this Court does
6 not find a Rule 19 public rights exception.

7     The public rights exception "permits litigation to proceed in the absence of
8 necessary and indispensable parties when it transcends the private interests of the
9 participants and seeks to vindicate a public right." <u>American Greyhound</u>, 305 F.3d at
10 1026. Plaintiff has not demonstrated a significant public interest in the current matter
11 that would warrant the disregard of Rule 19. In rejecting the plaintiff's public rights
12 argument, the Ninth Circuit in <u>American Greyhound</u> stated the following (almost as
   if it were dealing with the case at bar):

13         In the present case, the effect of the district court's injunction is not merely
14         to require adherence to certain procedures in entering or extending gaming
15         compacts with the tribes; it is to prevent new compacts or the extension of
         existing ones. The plaintiffs sought this injunction to avoid competitive
16         harm to their own operations. The general subject of gaming may be of great
17         public interest, but the rights in issue between the plaintiffs in this case, the
18         tribes and the state are more private than public.

19 <u>Id.</u> This Court overwhelmingly agrees. This case centers exclusively on *Plaintiff's*
20 attempt to prevent other tribes' casinos from expanding, thereby protecting itself from
21 "competitive harm." These rights are private in nature, not public. The public rights
22 exception clearly does not apply.

23     The Court recognizes that dismissal of this matter severely limits Plaintiff's ability
24 to obtain relief. However, The Ninth Circuit's position on tribal sovereign immunity
25 is clear. In <u>Turley</u>, the Ninth Circuit recently upheld a dismissal under Rule 19 for
26 failing to join CRIT, a necessary party that could not be joined due to sovereign
27 immunity. In remarkably similar circumstances as those arising here, the Ninth Circuit
28 held, "[t]he Plaintiff may have difficulty obtaining relief if the case is dismissed, but

when tribal sovereign immunity is at stake, that factor has little weight." 70 Fed. Appx. 934 (9th Cir. 2003) (unpublished). Similarly, in Rosales, the Ninth Circuit recently held "the tribes' interest in maintaining their sovereign immunity outweighs the plaintiffs' interest in litigating their claims." 73 Fed. Appx. 913 (9th Cir. 2003) (unpublished) (citing American Greyhound, 305, F.3d 1015, 1025 (9th Cir. 2002)). While this Court acknowledges the aforementioned authority remains unpublished, the Court notes the decisions' sound reasoning as another reason to justify dismissal here.

Because the five *amici* tribes are necessary and indispensable parties, and Plaintiff has failed to establish a viable public rights exception, Defendants' motion to dismiss pursuant to Rule 12(b)(7) is **GRANTED**.

B.    COURT DECLINES SUPPLEMENTAL JURISDICTION

By dismissing all Plaintiff's claims regarding the 1999 Compacts and IGRA, the Court has disavowed itself of federal question subject matter jurisdiction. The remaining issues and claims (if any) all arise under state, not federal law. See Gila River Indian Community v. Henningham, Durham and Richardson 626 F.2d 708, 714 (9th Cir. 1980) ("we can discern no reason in the present action to extend the reach of the federal common law to cover all contracts entered into by Indian tribes. Otherwise the federal courts might become a small claims court for all such disputes.").

Even assuming this Court were to reach the merits of Plaintiff's remaining claims arising under state law, the Court declines to adjudicate those claims in federal court and declines to exercise supplemental jurisdiction potentially attaching thereto. 28 U.S.C. § 1367; see, e.g., Haynie v. County of Los Angeles, 339 F.3d 1071, 1078 (9th Cir. 2003) (holding "the district court may decline to hear supplemental claims if it has dismissed the claims over which it has original jurisdiction or for "other compelling reasons.")

//

//

**ER 071**

- 13 -

04cv1151w

IV.    CONCLUSION AND ORDER

In light of the foregoing, the Court **GRANTS** Defendants' motion to dismiss pursuant to Rules 12(b)(7) and 19 for failure to join a necessary and indispensable party. (Doc. No. 22-1). The Court declines supplemental jurisdiction over all remaining claims potentially arising under state law. 28 U.S.C. § 1367. The Clerk of Court shall close the district court case file and terminate this action as to all parties and claims.

**IT IS SO ORDERED.**

DATE: September 21, 2004    _____

HON. THOMAS J. WHELAN
United States District Court
Southern District of California

CC:    ALL PARTIES

HON. WILLIAM MCCURINE, UNITED STATES MAGISTRATE JUDGE

- 14 -    **ER 072**    04cv1151w

## CERTIFICATE OF SERVICE

Case Name:   **California Valley Miwok Tribe v. California Gambling Control Commission**

Court:   **United States District Court, Southern District, Case No. 08-CV-0120 BEN AJB**

I declare:

On **February 25, 2008**, I electronically filed the following document(s):

    1.    **DEFENDANT CALIFORNIA GAMBLING CONTROL COMMISSION'S OPPOSITION TO MOTION FOR REMAND;**

    2.    **DECLARATION OF PETER H. KAUFMAN IN SUPPORT OF REQUEST FOR JUDICIAL NOTICE; AND**

    3.    **REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANT CALIFORNIA GAMBLING CONTROL COMMISSION'S  OPPOSITION TO MOTION FOR REMAND**

## Electronic Mail Notice List
I have caused the above-mentioned document(s) to be electronically served on the following person(s), who are currently on the list to receive e-mail notices for this case:

mannycorrales@yahoo.com

## Manual Notice List
The following are those who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing):

NONE

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on **February 25,  2008**, at San Diego, California.

Roberta L. Matson
_____
Declarant

_____
Signature

SA2008300115
80207486.wpd