1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  ROBERT L. MUKAI
   Senior Assistant Attorney General
3  SARA J. DRAKE
   Supervising Deputy Attorney General
4  RANDALL PINAL
   Deputy Attorney General
5  PETER H. KAUFMAN, State Bar No. 52038
   Deputy Attorney General
6   110 West A Street, Suite 1100
    San Diego, CA 92101
7   P.O. Box 85266
    San Diego, CA 92186-5266
8   Telephone: (619) 645-2020
    Fax: (619) 645-2012
9   Email: peter.kaufman@doj.ca.gov

10 Attorneys for the California Gambling Control
   Commission

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CALIFORNIA VALLEY MIWOK TRIBE,**<br><br>Plaintiff,<br><br>v.<br><br>**THE CALIFORNIA GAMBLING CONTROL COMMISSION; and DOES 1 THROUGH 50, Inclusive,**<br><br>Defendants. | No. 08-CV-0120 BEN AJB<br><br>**DEFENDANT CALIFORNIA GAMBLING CONTROL COMMISSION'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>Hearing:   March 10, 2008<br>Time:      10:30 a.m.<br>Courtroom: 3<br>Judge:     The Hon. Roger T. Benitez |

**INTRODUCTION**

In its motion to dismiss ("Motion"), Defendant California Gambling Control Commission ("Commission") demonstrated that: (a) no individual or entity is authorized to file suit on behalf of the "federally-recognized" California Valley Miwok Tribe ("CVM" or "Plaintiff");[1] (b) Silvia Burley is not authorized to act on behalf of CVM; (c) CVM is not entitled to file suit to enforce the terms of the tribal-state class III gaming compacts ("Compacts") pursuant to which Plaintiff's claim for relief is based; and (d) the individuals named in the complaint that dispute Burley's leadership of CVM are necessary parties to this suit.[2]

Subsequent to the filing of the Commission's Motion, which relied, in part, upon the district court's decision in *California Valley Miwok v. U.S.,* 424 F. Supp. 2d 197 (D.D.C., 2006), the Court of Appeals for the District of Columbia Circuit decided Burley's appeal and upheld the district court's decision. *California Valley Miwok v. U.S.*, No. 06-5203, 2008 WL 398455 (D.C. Cir. Feb. 15, 2008).[3] The decision upholds the federal government's refusal to recognize the Burley faction's purported government, constitution and governing documents on the grounds that this faction's claim to tribal leadership and authority is not supported by either the consent or participation of a majority of the tribal community.

The appellate court's ruling supports the Commission's Motion. In reaching its decision, the court notes that an Indian Reorganization Act (25 U.S.C. § 461 et seq. ("IRA")) tribe's authority to hire counsel is not vested until it has been organized. *California Valley Miwok v. U.S.* at *3. It also states that Silvia Burley does not represent anything more than "a small

---

1. By the term "federally-recognized" Miwok, the Commission means the entity that was placed on the list of federally-recognized tribes by the United States Department of the Interior and that accepted the Indian Reorganization Act by election in 1938.

2. The Commission's Motion also demonstrated that the Third and Fourth Claims for Relief were barred by California's Eleventh Amendment Immunity and the express terms of the Compacts. Plaintiff's dismissal of those claims on February 1, 2008, makes that portion of the Commission's Motion moot.

3. A copy of the Westlaw opinion is attached hereto as Exhibit A and all citations herein to the opinion will be to that document.

cluster of people within the [CVM]." *Id.* at *2. Further, the court accepts without question that the Commission could appropriately refuse to distribute Revenue Sharing Trust Fund ("RSTF") monies to the CVM prior to its organization as an IRA tribe. *Id.* at *3.[4/]

In her opposition to the Commission's Motion, Silvia Burley (who purports to act in the CVM's name) ignores the appellate court's decision, even though it was filed on February 15, 2008. Her opposition maintains that despite the fact that CVM has no federally-recognized membership, constitution, or government and despite the fact it lacks the power to contract with the federal government and has no government-to-government relationship with the United States, it may nonetheless hire counsel and initiate a lawsuit and thereby bind the tribe to the outcome of this litigation. Ms. Burley also argues that she is authorized to act on the CVM's behalf with respect to the receipt of RSTF monies that Non-Compact Tribes may receive pursuant to the terms of the Compacts, even though the Director of the Pacific Region of the Bureau of Indian Affairs has taken the position that she has no authority to act on behalf of the CVM, and even though the CVM has no government capable of providing her with that authority. Further, notwithstanding the express provisions of the Compacts precluding suits by third parties to enforce any of the Compacts terms, Burley asserts that the CVM may sue to enforce the Compacts' provisions regarding payment of RSTF monies simply because Non-Compact Tribes are designated third party beneficiaries of the Compacts. Finally, Burley argues that the parties named in the Complaint that dispute Burley's claim to the authority to act on the CVM's behalf are not necessary parties because the Commission has previously paid RSTF monies to Burley on the CVM's behalf despite a challenge to Burley's leadership.

**SUMMARY OF ARGUMENT**

Because any CVM entitlement to RSTF funds is premised on its status as a federally-

---

4. While, contrary to the court's perception, the Commission has previously distributed RSTF monies to the CVM despite the fact it is not organized, the fact the appellate court accepted without question that the Commission could have refused to distribute RSTF monies because the tribe was unorganized is significant. It highlights the fact that until there is a federally-recognized government, there can be no indivdual or entity authorized to receive RSTF monies on behalf of the tribe.

Case No. 08-CV-0120 BEN AJB

2

recognized tribe, the CVM may not sue for the performance of any obligations due it on the basis of its federally-recognized status until such time as it has a federally-recognized membership, constitution, and government. Governments that are not recognized by the United States have no capacity to file suit, as that government, in the courts of the United States.[5/] *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione,* 937 F.2nd 44, 48 (2nd Cir. 1991). In this regard, Burley confuses recognition of the CVM as a tribe with the United States' recognition of its government. The United States may recognize that a country exists but not choose to recognize the government that purports to control that nation's territory or people. *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 410-11 (1964). It is government recognition not tribal recognition that controls a tribe's ability to file suit to obtain benefits due a federally-recognized tribe.

The United States does not recognize any CVM government with which it has a government-to-government relationship. *California Valley Miwok v. U.S., supra,* 424 F. Supp. 2d at 201. Likewise, the official position of the Bureau of Indian Affairs before the Board of Indian Appeals of the Department of the Interior is that Silvia Burley is not recognized by the federal government as having the capacity to act on behalf of the federally-recognized CVM. (Commission Req. for Judicial Notice, Ex. 2.) Thus, neither Silvia Burley nor the entity she purports to represent has any capacity to sue on behalf of the federally-recognized CVM or to receive any funds due the CVM on the basis of its federally-recognized status.

Even if Burley had the capacity to sue on behalf of the federally-recognized CVM, the CVM has no right to enforce the terms of the Compacts that provide for the disbursement of RSTF funds to Non-Compact Tribes. Though third party beneficiaries generally have the right to enforce the terms of the agreements providing them that status, they may not do so when the

---

5. In this regard, though suits seeking acknowledgment of tribal status have been filed in the name of a tribe and allowed to proceed on that basis where there was no challenge to the tribe's capacity to sue (*e.g., California Valley Miwok v. U.S., supra*), the court recognized, nonetheless, that the suit was not by the tribe but rather by a "small cluster of people" within the tribe. *Id.* at 2. Individuals may sue to attain tribal status, but they cannot sue as the tribe to obtain benefits due the tribe on the basis of its status as a tribe.

express terms of the agreement preclude them from suing. In this case, the Compacts, in a section entitled "Third Party Beneficiaries," preclude enforcement of "any of [their] terms" by a third party. Thus, mere third party beneficiary status does not confer upon a Non-Compact Tribe the right to file suit to enforce any of the Compacts' terms. Further, to the extent there is any ambiguity with regard to this preclusion, that ambiguity must be resolved in favor of the State and the protection of the State's sovereign powers. *United States v. Winstar Corporation,* 518 U.S. 839, 878-79 (1996) (ambiguous term in a contract will not be construed to surrender a sovereign power).

The individuals named in the Complaint that either claim leadership of the CVM or are "interfering" with Burley's attempts to lead it have a direct financial interest in this action. By definition, CVM funds belong to the tribe and anyone claiming membership in the tribe has an obvious interest in those funds and to whom they are distributed. Contrary to Plaintiff's belief, what makes these individuals necessary parties is not the fact that there is a leadership dispute but rather that there is a dispute in this case over who is entitled to receive an RSTF distribution and the fact that these individuals who claim membership in the CVM or the right to lead the tribe have an interest in the subject matter of this action – the disbursement of RSTF funds.

## I.

**BEFORE IT MAY FILE SUIT ON THE BASIS OF ITS STATUS AS A FEDERALLY-RECOGNIZED TRIBE, THE CVM MUST HAVE A FEDERALLY-RECOGNIZED MEMBERSHIP, CONSTITUTION, AND GOVERNMENT**

Ms. Burley's opposition papers argue that mere federal recognition of the CVM provides the CVM with the ability to hire counsel and file suit to obtain any benefits due on the basis of its status as a federally-recognized tribe. Indeed, Plaintiff suggests that the district court in *California Valley Miwok v. U.S., supra,* 424 F. Supp.2d 197, accepted the idea that the CVM could sue in federal court. (Plf.'s Opp. to Def.'s Mot. to Dismiss ("Mem.") at 8.) Burley's argument confuses the CVM's status as a federally-recognized tribe with its present capacity to sue to reap the benefits of that status. This confusion perhaps accounts for Burley's total failure to respond to the cases cited in the Commission's moving papers demonstrating that before a government can sue in the courts of the United States, that government must be recognized.

1  *Klinghoffer v. S.N.C. Achille Lauro Ed Alteri-Gestione, supra,* 937 F.2d at 48; *Banco Nacional*

2  *de Cuba v. Sabbatino, supra,* 376 U.S. at 410-11.

3        In *California Valley Miwok v. U.S., supra*, 2008 W.L. 398455, the court made clear the

4  distinction between a tribe's status as a federally-recognized tribe and its ability to obtain federal

5  benefits.  The court noted in quoting from *United States v. Mazurie,* 419 U.S. 544, 557 (1975)

6  that though Indian tribes are a "'separate people possessing the power of regulating their internal

7  and social relations,'" that "[t]o qualify for federal benefits, however, tribes must meet

8  conditions set by federal law." *California Valley Miwok v. U.S., supra,* at *2.  One federal

9  benefit, is the capacity to sue in the courts of this country to obtain the benefits that may be due

10  as a result of that status.  The court of appeal stated in this regard that:

11        Once recognized, a tribe may qualify for additional federal benefits by organizing its government under the [Indian Gaming Regulatory] Act.  "[Section 476 of the Act] authorizes any tribe . . . to adopt a constitution and bylaws, subject to the approval of the Secretary of the Interior." *Kerr-McGee Corp. v. Navajo Tribe of Indians,* 471 U.S. 195, 198, 105 S.Ct. 1900, 85 L.Ed.2d 200 (1985).  Organization under § 476 vests in a tribe the power "[t]o employ legal counsel; . . . ." 25 U.S.C. § 476(e).

15  *Id.* at *3 (second brackets in original).  Thus, absent organization, a tribe has no authority to hire

16  counsel to sue as the federally-recognized tribe.  While, in *California Valley Miwok,* at both the

17  district and appellate court levels, Burley sued, in the name of the tribe, to obtain the right to a

18  federal benefit such as approval of a tribal membership, constitution, and government, no

19  challenge was raised to her capacity to sue in the tribe's name.  Thus, the issue was not presented

20  for adjudication.  However, the appellate court in *California Valley Miwok, supra,* made clear

21  that, even though the issue was not raised by the United States, it was Silva Burley that was

22  suing the federal government for a declaration that the tribe was organized (albeit in the tribe's

23  name) and chose to refer to the plaintiff in that case as Burley rather than the CVM because "we

24  refer to Burley rather than 'CVM' or 'the tribe' because we are mindful that there is an ongoing

25  leadership dispute between Burley and former tribal chairman Yakima Dixie." *Id.* at * 6, n.1.

26        Finally, Plaintiff concedes that it does not have the capacity to contract with the federal

27  government. (Mem. at 10.)  That lack of capacity exists because the CVM has no federally-

28  recognized government.  The lack of a federally-recognized government also precludes the CVM

from hiring counsel. 25 U.S.C. § 476(e). Without a government to act on its behalf or an attorney authorized to represent the tribe, the CVM has no capacity to litigate in its own name.

## II.

## BURLEY HAS NO AUTHORITY TO ACT ON THE CVM'S BEHALF

The official position of the Bureau of Indian Affairs before the Board of Indian Appeals of the Department of the Interior is that Silvia Burley is not recognized by the federal government as having the capacity to act on behalf of the federally-recognized CVM. (Commission Req. for Jud. Not., filed herein on January 31, 2008 Ex. 2.) Further, both the appellate court in *California Valley Miwok v. U.S., supra,* 2008 WL 398455, and the district court in *California Valley Miwok v. U.S., supra,* 424 F. Supp. 2d 197, necessarily concluded, in upholding the federal government's refusal to approve the Burley faction's proposed CVM governing documents, that Burley did not represent the CVM. The appellate court stated, in this regard, that Burley was merely acting on behalf of a "small cluster of people" within the CVM. *California Valley Miwok v. U.S., supra,* 2008 WL 398455, at *2. The district court similarly accepted the federal government's position that Burley did not represent the tribe when it noted that:

> At the inception of this suit, Ms. Burley and her two daughters were seeking approval of a tribal constitution that conferred tribal membership upon only them and their descendants [when the tribe's potential membership could exceed 250 people and where the more people that became members the less money would be available for each member].

*California Valley Miwok v. U.S., supra,* 424 F. Supp. 2d at 203 n.7.

In her opposition papers, Burley argues that, notwithstanding these facts, the Commission "has pointed to no evidence that the BIA has stated that it no longer considers Ms. Burley as the Tribe's official representative." (Mem. at 11.) In this regard, she argues that the pleading filed on behalf of the Pacific Regional Director of the Bureau of Indian Affairs (Commission Req. for Judicial Notice, Ex. 2) in which the Director states that the Bureau "no longer contracts with Silvia Burley as a person of authority on behalf of the Tribe [and that] Burley lacks authority to act on the Tribe's behalf" is "purely argumentative and cannot be considered as fact" and is "not an official statement of policy from the BIA." (Mem. at 10.) Burley, however, cites no authority

for the proposition that a pleading filed on behalf of the Bureau of Indian Affairs is not the "official" position of the Bureau. The credibility of her position is severely compromised by her acceptance of the Bureau's letters to her as constituting "the official position" of the Bureau while rejecting as "official" a pleading filed with an official tribunal in a case in which she is a party. Moreover, Burley fails to reconcile her concession that she is unable to execute a contract with the federal government on the CVM's behalf because the CVM is not organized (Mem. at 10) with her claim that she is the authorized CVM representative for purposes of entering into a contract with an attorney to represent the tribe in litigation. Plainly, if Burley cannot execute contracts with the federal government because the CVM has no federally-recognized government, she cannot, for the same reason, execute a contract with an attorney to represent the CVM in litigation.

## III.

**NON-COMPACT TRIBES HAVE NO RIGHT TO ENFORCE ANY TERM OF THE COMPACTS**

The Compacts, in section 15.1, entitled "Third Party Beneficiaries," provide that:

> Except to the extent expressly provided under this Gaming Compact, this Gaming Compact is not intended to, and shall not be construed to, create any right on the part of a third party to bring an action to enforce any of its terms.

In her opposition papers, Burley argues that a provision in the Compacts providing that Non-Compact Tribes "shall be deemed third party beneficiaries of this and other compacts identical in all material respects" (Compacts § 4.3.2(a)(i), Compl., Ex. A at 7) constitutes an express exemption from the prohibition in the Compacts against enforcement of any term of the Compacts by third parties. (Mem. at 14.) This contention is devoid of merit.

The mere designation of Non-Compact Tribes as third party beneficiaries, without more, does not establish that they are entitled to enforce the Compacts' terms. Section 4.3.2(a)(i) does not state, for example, that Non-Compact Tribes are third party beneficiaries that may sue to enforce the terms of the Compacts with regard to the distribution of RSTF monies, notwithstanding the prohibition against suits by third parties to enforce the terms of the Compacts in section 15.1. Likewise, though third party beneficiaries are generally entitled to sue

to enforce the terms of an agreement created for their benefit, as demonstrated in the Commission's moving papers (Commission's Mem. at 12-13), a third party beneficiary's right to enforce a contract for its benefit may be abrogated by the terms of the contract. *Martinez v. Socoma Companies, Inc.*, 11 Cal. 3d 394, 401-02 (1974); Restatement (Second) of Contracts § 304(b). Section 15.1 of the Compacts plainly abrogates a third party beneficiary's right to sue to enforce any term of the Compacts and nothing in section 4.3.2(a)(i) restores that right.

Moreover, if there were any doubt on that question, that doubt must be resolved against a Non-Compact Tribe under the rule enunciated in *United States v. Winstar Corporation, supra,* 518 U.S. at 878-79 where the court held that:

> a contract with a sovereign government will not be read to include an unstated term exempting the other contracting party from the application of a subsequent sovereign act (including an Act of Congress), nor will an ambiguous term of a grant or contract be construed as a conveyance or surrender of sovereign power.

As noted in the Commission's moving papers, the compacting tribes as well as the State did not wish to provide Non-Compact Tribes with the ability to litigate the Compacts terms because they did not wish to allow Non-Compact Tribes the opportunity to file suit to prevent the State and a tribe from modifying the provisions of the RSTF through a compact amendment, as might be the case under California law, if Non-Compact Tribes were deemed third party beneficiaries with the right to enforce the terms of the Compacts. (Commission's Mem. at 13.)

Read in the light of *Winstar, supra,* nothing in Compacts section 4.3.2(a)(i) expressly provides that Non-Compact Tribes are third party beneficiaries that are entitled to sue to enforce the terms of the Compacts notwithstanding the prohibition against third party suits set forth in Compact section 15.1.

**IV.**

**ALL PUTATIVE MEMBERS OF AN UNORGANIZED TRIBE HAVE AN INTEREST IN LITIGATION BROUGHT TO OBTAIN TRIBAL FUNDS**

Though Burley admits that the CVM is unorganized and though the federal government recognizes no CVM government capable of representing the tribe, she argues, nonetheless, that putative members of the CVM lack a sufficient interest in monies it is claimed are due and owing

1  the tribe to be deemed necessary parties to this action. Her argument, in this regard, relies upon
2  the fact that during the period when the federal government recognized a CVM government with
3  Burley as its leader, the Commission distributed RSTF monies to Burley, even though there was
4  a challenge to the legitimacy of the Burley government and her leadership of the CVM. Burley's
5  argument also rests upon a California case interpreting the California rule with respect to
6  necessary parties and the public interest exception to the joinder of parties deemed necessary and
7  indispensable.
8     Burley's position is propelled by no rational force.
9     The fact that the Commission distributed RSTF monies to Burley when she was the head
10 of a CVM government recognized by the United States despite a challenge to the legitimacy of
11 that government and her leadership is not comparable to the situation in this case where there is
12 no federally-recognized government and one of the issues to be resolved in this case is who is
13 entitled to receive RSTF monies on behalf of the CVM. Previously, the Commission did not
14 dispute Burley's entitlement to the receipt of RSTF monies on behalf of the CVM because the
15 federal government maintained a government-to-government relationship with her government
16 and recognized her authority to act on behalf of the tribe. That, however, is not the case today.
17 Now, after the federal government withdrew its recognition of Burley's government and her
18 authority to act on behalf of the tribe, there is a dispute over who is entitled to receive RSTF
19 distributions on behalf of the CVM. The existence of that dispute between the parties to this
20 action provides all putative members of the tribe with an interest in the outcome of the
21 proceedings and, therefore, makes them necessary parties. Plainly, a suit by a small cluster of a
22 tribe to money claimed to be due the tribe as a whole is a suit that affects the interests of every
23 putative member of that tribe. It is clear that neither the Commission nor Burley can adequately
24 represent the interests of those putative members and that the possibility exists of inconsistent
25 judgments if all putative members are not joined in this action.
26    Furthermore, *People ex rel. Lungren v. Community Development Agency,* 56 Cal. App.
27 4th 868 (1974), has no application to this case. First, the court in that state court proceeding was
28 not construing Rule 19 of the Federal Rules of Procedure. Second, the case turned on the

1  application of the public interest exception to the joinder of a necessary and indispensable party
2  under California law.  Here, the public interest exception has no application because Burley is
3  suing out of her own personal interest or, at best, the financial interest of a tribe.

## CONCLUSION

For these reasons and those previously expressed in the Commission's moving papers, it is respectfully requested that the Court dismiss all remaining claims for relief without leave to amend.

Dated: March 3, 2008

Respectfully submitted,

EDMUND G. BROWN JR.
Attorney General of the State of California

ROBERT L. MUKAI
Senior Assistant Attorney General

SARA J. DRAKE
Supervising Deputy Attorney General

RANDALL PINAL
Deputy Attorney General


/s/Peter H. Kaufman
PETER H. KAUFMAN
Deputy Attorney General
Attorneys for the California Gambling Control Commission

Reply to Plaintiff's Opp.to.Def.MTD.wpd
SA2008300115

# EXHIBIT "A"

Westlaw.
--- F.3d ----
--- F.3d ----, 2008 WL 398455 (C.A.D.C.)
(Cite as: --- F.3d ----)

Page 1

**H**
**California Valley Miwok** Tribe v. U.S.
C.A.D.C.,2008.
Only the Westlaw citation is currently available.
United States Court of Appeals,District of Columbia Circuit.
**CALIFORNIA VALLEY MIWOK** TRIBE f/k/a Sheep Ranch of Me-Wuk Indians of California, Appellant
v.
UNITED STATES of America, et al., Appellees.
No. 06-5203.

Argued Oct. 12, 2007.
Decided Feb. 15, 2008.

**Background:** Members of Indian tribe brought action on behalf of tribe challenging Secretary of the Interior's refusal to approve tribal constitution, seeking declaration that tribe was organized pursuant to Indian Reorganization Act. The United States District Court for the District of Columbia, Robertson, J., 424 F.Supp.2d 197, granted government's motion to dismiss. Members appealed.

**Holdings:** The Court of Appeals, Griffith, Circuit Judge, held that:

(1) Secretary had authority under the Act to refuse to approve constitution, and

(2) any error in district court's denial of members' motions for leave to file supplemental claims was harmless.

Affirmed.

[1] Indians 209 €=0

209 Indians
Indian tribes are unique aggregations possessing attributes of sovereignty over both their members and their territory; they are a separate people possessing the power of regulating their internal and social relations.

[2] Indians 209 €=0

209 Indians
To qualify for federal benefits, Indian tribes must meet conditions set by federal law, and the most important condition is federal recognition.

[3] Federal Courts 170B €=0

170B Federal Courts
Court of Appeals reviews the grant of a motion to dismiss de novo.

[4] Federal Courts 170B €=0

170B Federal Courts
Court of Appeals reviews district court's denial of leave to file supplemental claims for abuse of discretion.

[5] Indians 209 €=0

209 Indians
Secretary of the Interior had authority, under Indian Reorganization Act provision that each Indian tribe shall retain inherent sovereign power to adopt governing documents under procedures other than those specified in the Act, to refuse to approve tribal constitution on grounds that constitution did not enjoy support from majority of tribe's membership. 25 U.S.C.A. § 476(h).

[6] Federal Civil Procedure 170A €=0

170A Federal Civil Procedure
Any error by district court in denying motions for leave to file supplemental claims was harmless, in action brought by members of Indian tribe on behalf of tribe which challenged Secretary of the Interior's refusal to approve tribal constitution, since no fact development had occurred in case, and members could file supplemental claims in a new cause of action. Fed.Rules Civ.Proc.Rules 15(d),

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----  
--- F.3d ----, 2008 WL 398455 (C.A.D.C.)  
**(Cite as: --- F.3d ----)**

Page 2

61, 28 U.S.C.A.

Appeal from the United States District Court for the District of Columbia (No. 05cv00739).
Phillip Eugene Thompson argued the cause for appellant. With him on the briefs were Johnine Clark and Sonya Anjanette Smith-Valentine.
Mark R. Haag, Attorney, U.S. Department of Justice, argued the cause for appellees. With him on the brief were James Merritt Upton and Katherine J. Barton, Attorneys.
Tim Vollmann argued the cause and filed the brief for amicus curiae Yakima K. Dixie in support of appellees.

Before GRIFFITH, Circuit Judge, and EDWARDS and WILLIAMS, Senior Circuit Judges.

Opinion for the Court filed by Circuit Judge GRIFFITH.

GRIFFITH, Circuit Judge.
  *1 Since the days of John Marshall, it has been a bedrock principle of federal Indian law that every tribe is "capable of managing its own affairs and governing itself."*Cherokee Nation v. Georgia,* 30 U.S. (5 Pet.) 1, 16, 8 L.Ed. 25 (1831); *see also Worcester v. Georgia,* 31 U.S. (6 Pet.) 515, 559, 8 L.Ed. 483 (1832) (stating that tribes are "distinct, independent political communities, retaining their original natural rights"). But tribes that want federal benefits must adhere to federal requirements. The gateway to some of those benefits is the Indian Reorganization Act of 1934 ("the Act"), which requires tribes to organize their governments by adopting a constitution approved by the Secretary of the Interior ("Secretary").*See*25 U.S.C. § 476.

  This case involves an attempt by a small cluster of people within the **California Valley Miwok** tribe ("CVM") to organize a tribal government under the Act. CVM's chairwoman, Silvia Burley, and a group of her supporters adopted a constitution to govern the tribe without so much as consulting its membership. The Secretary declined to approve the constitution because it was not ratified by anything close to a majority of the tribe. Burley and her supporters-in CVM's name-then sued the United States, claiming that the Secretary's refusal was unlawful and seeking a declaration that CVM is organized pursuant to 25 U.S.C. § 476.[FN1]Because we conclude that the Secretary lawfully refused to approve the proposed constitution, we affirm the district court's dismissal of Burley's claim. Burley also argues that the district court erred in denying her motions for leave to file supplemental claims for relief. We conclude that any such error was harmless.

I.

  [1][2] Indian tribes are "unique aggregations possessing attributes of sovereignty over both their members and their territory; they are a separate people possessing the power of regulating their internal and social relations."*United States v. Mazurie,* 419 U.S. 544, 557, 95 S.Ct. 710, 42 L.Ed.2d 706 (1975) (internal quotation marks and citations omitted). To qualify for federal benefits, however, tribes must meet conditions set by federal law. The most important condition is federal recognition, which is "a formal political act confirming the tribe's existence as a distinct political society, and institutionalizing the government-to-government relationship between the tribe and the federal government."COHEN'S HANDBOOK OF FEDERAL INDIAN LAW § 3.02[3], at 138 (2005 ed.). The federal government has historically recognized tribes through treaties, statutes, and executive orders, but it does so today primarily by a standardized application process administered by the Secretary. *See generally*25 C.F.R. pt. 83; *see also id.* § 83.7 (listing the factors the Secretary must consider when deciding whether to recognize a tribe). Among the federal benefits that a recognized tribe and its members may claim are the right to receive financial assistance under the Snyder Act, *see*25 U.S.C. § 13 (authorizing the Secretary to "direct, supervise, and expend" funds for a range of purposes including health and education), and the right to operate gaming facilities under the Indian

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----  
--- F.3d ----, 2008 WL 398455 (C.A.D.C.)  
**(Cite as: --- F.3d ----)**

Page 3

Gaming Regulatory Act, see 25 U.S.C. §§ 2701 et seq.[FN2]

*2 Once recognized, a tribe may qualify for additional federal benefits by organizing its government under the Act. "[Section 476 of the Act] authorizes any tribe ... to adopt a constitution and bylaws, subject to the approval of the Secretary of the Interior."*Kerr-McGee Corp. v. Navajo Tribe of Indians,* 471 U.S. 195, 198, 105 S.Ct. 1900, 85 L.Ed.2d 200 (1985). Organization under § 476 vests in a tribe the power "[t]o employ legal counsel; to prevent the sale, disposition, lease, or encumbrance of tribal lands, interests in lands, or other tribal assets without the consent of the tribe; and to negotiate with the Federal, State, and local governments." 25 U.S.C. § 476(e). And some governmental benefits may flow only to tribes organized under the Act. For example, in this case the California Gaming Control Commission-which distributes an annual payment to all non-gaming tribes in the state-suspended CVM's allotment of approximately $1 million when it learned that CVM was unorganized.[FN3]

Section 476 of the Act provides two ways a tribe may receive the Secretary's approval for its constitution. The first is, in effect, a safe harbor. Section 476(a) says:

Any Indian tribe shall have the right to organize for its common welfare, and may adopt an appropriate constitution and bylaws, and any amendments thereto, which shall become effective when-

(1) ratified by a majority vote of the adult members of the tribe or tribes at a special election authorized and called by the Secretary under such rules and regulations as the Secretary may prescribe; and

(2) approved by the Secretary pursuant to subsection (d) of this section.

25 U.S.C. § 476(a). Pursuant to subsection (a)(1), the Secretary has promulgated several rules governing special elections. *See generally* 25 C.F.R. pt. 81. Compliance with these rules is a prerequisite for the Secretary's approval of a proposed constitution. Among other things, the rules define voter eligibility, *id.* § 81.6, create tribal-election boards, *id.* § 81.8, establish voting districts, *id.* § 81.9, describe voter-registration procedures, *id.* § 81.11, stipulate conditions for election notices, *id.* § 81.14, set poll opening and closing times, *id.* § 81.15, and describe the criteria for ballots, *id.* § 81 .20. According to subsection (d)(1), once shown that the proposed constitution is the product of the § 476(a) process, the Secretary "shall approve the constitution [ ] within forty-five days after the election unless the Secretary finds that the proposed constitution [is] contrary to applicable laws." 25 U.S.C. § 476(d)(1).[FN4]

Section 476(h) provides a second way to seek the Secretary's approval for a proposed constitution. Unlike the extensive procedural requirements of § 476(a), under § 476(h) a tribe may adopt a constitution using procedures of its own making:

Notwithstanding any other provision of this Act each Indian tribe shall retain inherent sovereign power to adopt governing documents under procedures other than those specified in this section[.]

*3 25 U.S.C. § 476(h)(1). But this greater flexibility in process comes with a cost. Section 476(h) does not provide a safe harbor. As discussed in detail in Part III, the central issue in this case is the extent of the Secretary's power to approve a constitution under this section.

**II.**

CVM is a federally recognized Indian tribe. *See* Indian Entities Recognized and Eligible to Receive Services from the United States Bureau of Indian Affairs, 70 Fed.Reg. 71,194, 71,194 (Nov. 25, 2005). It has a potential membership of 250,[FN5] but its current tribal council-led by Burley-was handpicked by only a tiny minority.[FN6] This case is the latest round of sparring between Burley and the federal government over whether the tribe is organized under the Act. Burley's efforts to organize the tribe began in 2000 when, pursuing the safe harbor

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----
--- F.3d ----, 2008 WL 398455 (C.A.D.C.)
**(Cite as: --- F.3d ----)**

Page 4

procedure of § 476(a), she and a group of her supporters adopted a constitution and requested the Secretary to call an election for its ratification. Section 476(c) required the Secretary to call an election on the proposed constitution within 180 days. For reasons not apparent from the record, the Secretary never called the election. Rather than press the matter, Burley withdrew her request for a vote on the constitution.

A second effort to organize came in 2001, when Burley's group adopted a new constitution for the tribe. This time, Burley bypassed the § 476(a) process and instead sent the constitution directly to the Secretary for approval. The Secretary informed her that the constitution was defective and the tribe still unorganized.

Perhaps relying on the old adage, Burley made a third attempt in early 2004. Meanwhile, Congress passed the Native American Technical Corrections Act, which added § 476(h). The Secretary then responded to Burley by rejecting her proposed constitution and explaining that she would need to at least attempt to involve the entire tribe in the organizational process before the Secretary would give approval:

> Where a tribe that has not previously organized seeks to do so, [the Secretary] also has a responsibility to determine that the organizational efforts reflect the involvement of the whole tribal community. We have not seen evidence that such general involvement was attempted or has occurred with the purported organization of your tribe.... To our knowledge, the only persons of Indian descent involved in the tribe's organization efforts, were you and your two daughters.

Letter from Dale Risling, Sr., Superintendent, United States Department of the Interior, Bureau of Indian Affairs-Cent. Cal. Agency, to Silvia Burley (Mar. 26, 2004).

Burley, in CVM's name, then sued the United States for its failure to recognize the tribe as organized. She also twice motioned for leave to file supplemental claims for relief. The district court dismissed the original complaint for failure to state a claim and also denied the motions for leave.

[3][4] We review the grant of a motion to dismiss *de novo. Broudy v. Mather,* 460 F.3d 106, 116 (D.C.Cir.2006). Although Burley initially filed two claims for relief-one under § 476(h) of the Act and the other under the Administrative Procedure Act ("APA"), 5 U.S.C. § 704-we review only the APA claim because § 476(h) offers no private cause of action. We review the denial of leave to file supplemental claims for abuse of discretion. *Hall v. CIA,* 437 F.3d 94, 101 (D.C.Cir.2006).

### III.

*4 [5] The Burley faction has chosen not to repeat its effort to organize under § 476(a). Instead, it has tried to organize under § 476(h). Burley argues that, under § 476(h), the Secretary had no choice but to approve the proposed constitution. The Secretary reads § 476(h) to allow her to reject any constitution that does not "reflect the involvement of the whole tribal community." We consider the question within the framework of *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). The Secretary's legal interpretation did not come in either a notice-and-comment rulemaking or a formal adjudication, the usual suspects for *Chevron* deference. We nonetheless believe that *Chevron*-rather than *Skidmore v. Swift & Co.,* 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944)-provides "the appropriate legal lens through which to view the legality of the Agency interpretation," *Barnhart v. Walton,* 535 U.S. 212, 222, 122 S.Ct. 1265, 152 L.Ed.2d 330 (2002), because of the "interstitial nature of the legal question" and the "related expertise of the Agency," *id.* We must therefore determine whether Congress has spoken directly to the issue. If it has not, we must defer to the agency's interpretation as long as it is reasonable. *Chevron,* 467 U.S. at 842-43. We hold that the Secretary's interpretation is a permissible one. [FN7]

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----
--- F.3d ----, 2008 WL 398455 (C.A.D.C.)
(Cite as: --- F.3d ----)

Page 5

Burley asserts that § 476(h) unambiguously requires the Secretary to approve any constitution adopted under that provision. In Burley's view, the Secretary has no role in determining whether a tribe has properly organized itself to qualify for the federal benefits provided in the Act and elsewhere. That cannot be. Although the sovereign nature of Indian tribes cautions the Secretary not to exercise freestanding authority to interfere with a tribe's internal governance, the Secretary has the power to manage *"all* Indian affairs and [ ] *all* matters arising out of Indian relations."* 25 U.S.C. § 2 (emphases added).[FN8] We have previously held that this extensive grant of authority gives the Secretary broad power to carry out the federal government's unique responsibilities with respect to Indians. *See Udall v. Littell,* 366 F.2d 668, 672 (D.C.Cir.1966) ("In charging the Secretary with broad responsibility for the welfare of Indian tribes, Congress must be assumed to have given [her] reasonable powers to discharge it effectively."); *see also United States v. Eberhardt,* 789 F.2d 1354, 1359 (9th Cir.1986) (noting that § 2 serves "as the source of Interior's plenary administrative authority in discharging the federal government's trust obligations to Indians"). The exercise of this authority is especially vital when, as is the case here, the government is determining whether a tribe is organized, and the receipt of significant federal benefits turns on the decision.

The Secretary suggests that her authority under § 476(h) includes the power to reject a proposed constitution that does not enjoy sufficient support from a tribe's membership. Her suggestion is reasonable, particularly in light of the federal government's unique trust obligation to Indian tribes. *See Seminole Nation v. United States,* 316 U.S. 286, 296, 62 S.Ct. 1049, 86 L.Ed. 1480 (1942) (noting "the distinctive obligation of trust incumbent upon the Government in its dealings with" tribes). A cornerstone of this obligation is to promote a tribe's political integrity, which includes ensuring that the will of tribal members is not thwarted by rogue leaders when it comes to decisions affecting federal benefits. *See id.* at 297 ("Payment of funds at the request of a tribal council which, to the knowledge of the Government officers charged with the administration of Indian affairs ..., was composed of representatives faithless to their own people and without integrity would be a clear breach of the Government's fiduciary obligation."); *Seminole Nation v. Norton,* 223 F.Supp.2d 122, 140 (D.D.C.2002) (noting that the Secretary "has the responsibility to ensure that [a tribe's] representatives, with whom [she] must conduct government-to-government relations, are valid representatives of the [tribe] *as a whole")* (emphasis added).

*5 The sensibility of the Secretary's understanding of § 476(h) is especially apparent in a case like this one. Although CVM, by its own admission, has a potential membership of 250, only Burley and her small group of supporters had a hand in adopting her proposed constitution. This antimajoritarian gambit deserves no stamp of approval from the Secretary. As Congress has made clear, tribal organization under the Act must reflect majoritarian values. *See* 25 U.S.C. § 476(a) (requiring majority vote by tribe for adoption of a constitution); *id.* § 476(b) (requiring majority vote by tribe for revocation of a constitution); *id.* §§ 478, 478a (requiring majority vote by tribe in order to exclude itself from the Act). And as we have previously noted, tribal governments should "fully and fairly involve the tribal members in the proceedings leading to constitutional reform." *Morris v. Andrus,* 640 F.2d 404, 414 (D.C.Cir.1981). Because the Secretary's decision not to approve Burley's proposed constitution was permissible, we affirm the dismissal of Burley's claim.

[6] Burley also argues that the district court abused its discretion by denying her motions for leave to file supplemental claims. *See* FED.R.CIV.P. 15(d). Any such error was harmless. *See* FED.R.CIV.P. 61. Because there has been no fact development in this case, no harm is done by requiring Burley to file her supplemental claims in a new cause of action. *See* 6A CHARLES ALAN

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----  
--- F.3d ----, 2008 WL 398455 (C.A.D.C.)  
**(Cite as: --- F.3d ----)**

Page 6

WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 1506, at 197 (2d ed.1990) (noting that "when joinder will not promote judicial economy or the speedy disposition of the dispute between the parties, refusal to allow the supplemental pleading is entirely justified").

For the foregoing reasons, the judgment of the district court is

*Affirmed.*

> FN1. Throughout, we refer to Burley rather than "CVM" or "the tribe" because we are mindful that there is an ongoing leadership dispute between Burley and former tribal chairman Yakima Dixie. Both claim to represent the tribe, and Dixie filed an amicus brief in this case in support of the United States. We pass no judgment on that dispute.

> FN2. According to the government, Burley wishes to build and operate a casino for CVM. Government's Brief at 10-11.

> FN3. The stakes for CVM may be raised even higher if California's gaming tribes expand their casinos, as news reports suggest they are planning to do. *See The New Indian Wars,* ECONOMIST, Nov. 29, 2007.

> FN4. "[A]pplicable laws" means "any treaty, Executive order or Act of Congress or any final decision of the Federal courts which are applicable to the tribe, and any other laws which are applicable to the tribe pursuant to an Act of Congress or by any final decision of the Federal courts." Act of Nov. 1, 1988, Pub.L. No. 100-581, § 102(1), 102 Stat. 2938, 2939.

> FN5. This figure was offered by the tribe itself in separate litigation. *See* Complaint for Injunctive and Declaratory Relief at 1, **California Valley Miwok Tribe v. United States,** No. 02-0912 (E.D.Cal. Apr. 29, 2002). We take judicial notice of that document. *See Veg-Mix, Inc. v. U.S. Dep't of Agric.,* 832 F.2d 601, 607 (D.C.Cir.1987).

> FN6. In 1999, the Secretary recognized Burley as CVM's chairperson. The Secretary also entered into a "self-determination contract" with the tribe under the Indian Self-Determination Act. *See* 25 U.S.C. § 450f. Pursuant to that contract, the tribe received funds for the development of its government. Subsequently, however, the Secretary modified her stance and recognized CVM's leadership only on an interim basis, pending the tribe's organization effort. Burley does not challenge this change.

> FN7. We recognize that we typically do not apply full *Chevron* deference to an agency interpretation of an ambiguous statutory provision involving Indian affairs. In the usual circumstance, "[t]he governing canon of construction requires that 'statutes are to be construed liberally in favor of the Indians, with ambiguous provisions interpreted to their benefit.'" *Cobell v. Norton,* 240 F.3d 1081, 1101 (D.C.Cir.2001) (quoting *Montana v. Blackfeet Tribe of Indians,* 471 U.S. 759, 766, 105 S.Ct. 2399, 85 L.Ed.2d 753 (1985)). "This departure from the *Chevron* norm arises from the fact that the rule of liberally construing statutes to the benefit of the Indians arises not from the ordinary exegesis, but 'from principles of equitable obligations and normative rules of behavior,' applicable to the trust relationship between the United States and the Native American people." *Id.* (quoting *Albuquerque Indian Rights v. Lujan,* 930 F.2d 49, 59 (D.C.Cir.1991)). Here, however, the Secretary's proposed interpretation does not run against any Indian

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----
--- F.3d ----, 2008 WL 398455 (C.A.D.C.)
(Cite as: --- F.3d ----)

Page 7

tribe; it runs only against one of the contestants in a heated tribal leadership dispute, *see supra* note 1. In fact, as we later explain, the Secretary's interpretation actually advances "the trust relationship between the United States and the Native American people." Therefore, adherence to *Chevron* is consistent with the customary Indian-law canon of construction.

FN8. This grant of authority was initially lodged in the Secretary of War. *See* Act of July 9, 1832, ch. 174, § 1, 4 Stat. 564. It was eventually transferred to the Secretary of the Interior in 1849. *See* Act of Mar. 3, 1849, ch. 108, § 5, 15 Stat. 228.

C.A.D.C.,2008.
California Valley Miwok Tribe v. U.S.
--- F.3d ----, 2008 WL 398455 (C.A.D.C.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.